# EXHIBIT E

**quinn emanuel** trial lawyers | silicon valley
555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: (650) 801-5000 FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5020**

WRITER'S INTERNET ADDRESS
**toddbriggs@quinnemanuel.com**

December 10, 2007

*VIA EMAIL*

Nate Bruno
Sheppard Mullin LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111

Re:  *Quantum Corporation v. Riverbed Technology, Inc.* (No. C 07-4161 WHA)

Dear Nate:

We have reviewed Quantum's responses to (1) Riverbed's First Set of Interrogatories and (2) Riverbed's First Set of Requests for Production and have found numerous deficiencies. These deficiencies are discussed below. Our review is continuing and we will inform you if we learn of any additional deficiencies.

## QUANTUM'S RESPONSES TO RIVERBED'S FIRST SET OF INTERROGATORIES (NOS. 1 THROUGH 8)

Interrogatory No. 3: Interrogatory No. 3 requests that Quantum identify "*every* instance where Quantum has contacted any third party regarding the '810 patent, including the name and address of each third party and the circumstances surrounding the contact." Rather than identifying all instances of contact, Quantum appears to have improperly limited its response to identifying only the *initial* contact with third parties regarding the '810 patent. For example, prior to the initiation of this lawsuit, Quantum contacted Riverbed on several occasions regarding the '810 patent, but Quantum's response only lists a "February of 2007" contact. Riverbed requests that Quantum supplement its response to include every instance of contact by Quantum, Rocksoft, or ADIC.

Nate Bruno, Esq.
December 10, 2007
Page 2 of 5

Quantum also failed to provide a full description of the circumstances surrounding each contact. Quantum merely identified company names and the individuals contacted, and gave only a broad, generalized statement of the purpose of the communication. The date was not provided for a vast majority of the identified instances of contact. This is a partial and inadequate response to Riverbed's request for the "circumstances surrounding the contact." Riverbed requests that Quantum fully and completely provide the circumstances surrounding *each* contact, including to the extent possible how the contact was made, by what means of communication the contact was made, when the contact was made (day, month, and year), the purpose(s) of the contact, the subject matter of the contact, and the result(s), if any, of the contact.

In addition to the foregoing, Riverbed requests confirmation that Hewlett Packard is the only third party to be contacted by Rocksoft regarding the '810 patent and that no third parties were contacted by ADIC regarding the '810 patent. If any such contacts have been omitted, please supplement the response to disclose those contacts.

Riverbed requests that Quantum supplement its response to this interrogatory to address the foregoing deficiencies as soon as possible, but no later than December 17, 2007.

Interrogatory No. 4: Interrogatory No. 4 contains highlighted portions that are virtually unreadable when the document is viewed on a computer screen in PDF format or when the document is printed and viewed. Will you please provide a supplemental response that does not include the highlighting and refrain from highlighting in this manner going forward.

Interrogatory No. 5: Interrogatory No. 5 requests that Quantum "[i]dentify each Patented Product . . .." "Patented Product" is defined in Riverbed's First Set of Interrogatories as "any product developed, manufactured, marketed, offered for sale or sold Quantum, ADIC, Rocksoft, or Data Domain that practices at least one claim of the '810 Patent, including all products that incorporate . . . Quantum's Data Deduplication technology . . .."

Quantum's response identifies three products: the DXi 3500 disk-based backup appliance, the DXi 5500 disk-based backup appliance, and the StorNext Storage Manager Data Reduction software. This response appears to be incomplete. Riverbed is aware of at least one other product, the DXi 7500 disk-based backup appliance, that incorporates Quantum's data deduplication technology, and thus meets the definition of "Patented Product." Quantum's website explicitly states that "[t]he DXi7500 is the Enterprise disk backup solution that integrates data de-duplication and replication technology. . .."

Quantum's response also makes no mention of Rocksoft, ADIC or Data Domain products. Please confirm that none of these companies "developed, manufactured, marketed, offered for sold or sold" any Patented Product or supplement your response to this Interrogatory to identify each Patented Product. Publicly available documents and documents produced by Quantum in this action indicate that additional Patented Products exist. For example, QU 000217 (a document produced last week by Quantum) suggests that Rocksoft may have developed products

Nate Bruno, Esq.
December 10, 2007
Page 3 of 5

incorporating "blocklets.fw" and "blocklp1.fw" software modules and that these software modules practice claims of the '810 patent.

Interrogatory No. 5 also requests that Quantum identify "the date each Patented Product was first sold in the United States, and whether each Patented Product *was marked* pursuant to 35 U.S.C § 287." In responding to this interrogatory, Quantum stated only that each of the identified products is "currently" marked. This response is inadequate. As the interrogatory is framed in the past tense, the interrogatory clearly calls for the marking status as of the first date of sale of the product or, if the product was not marked at that time, the first date the product was marked.

Riverbed requests that Quantum supplement its response to this interrogatory to address the foregoing deficiencies as soon as possible, but no later than December 17, 2007.

Interrogatory Nos. 6 and 7: In responding to Interrogatories Nos. 6 and 7, Quantum references certain communications allegedly made during a meeting between Jonathan Otis of Quantum and Eric Wolford of Riverbed. Providing this information in a discovery response directly violates the "Settlement Communication Confidentiality / Inadmissibility / Undiscoverability Agreement" signed by Jonathan Otis on September 4, 2007, whereby Quantum agreed:

> "that any and all discussions, communications, and related activities between [Quantum and Riverbed] (whether orally or in writing) regarding any attempted resolution of the dispute, including but not limited to those taking place at face to face meetings between the parties' representatives, **shall be entirely confidential, undiscoverable and inadmissible**. . . ."

Riverbed does not take this violation lightly and is considering seeking recourse for this action. As an initial matter, Riverbed requests that Quantum immediately cure its violation of the agreement by removing any mention of any communications, meetings, or discussions that are covered by the agreement in a supplemental response to this interrogatory. Riverbed further requests that Quantum confirm in writing that it will not disclose in any discovery response or court filing any information subject to this agreement in the future.

Interrogatory No. 8: Interrogatory No. 8 requests all facts supporting any contention by Quantum that it has standing to sue for infringement of the '810 Patent. Quantum responded to this interrogatory pursuant to Federal Rule of Civil Procedure 33(d) by producing documents with Control Numbers QU 000214 to QU 000226. These documents only show an assignment of the '810 Patent from Trustus Pty Limited, the original assignee of the patent, to Rocksoft Limited and a license of the '810 Patent from A.C.N. Pty Limited to Quantum Corporation. This response is incomplete and inadequate to show standing as it does not demonstrate a complete chain of title or transfer of rights from Trustus to Quantum.

Riverbed requests that Quantum supplement its response to this interrogatory to address the foregoing deficiencies as soon as possible, but no later than December 17, 2007.

Nate Bruno, Esq.
December 10, 2007
Page 4 of 5

**QUANTUM'S RESPONSES TO RIVERBED'S FIRST SET OF REQUESTS FOR PRODUCT (NOS. 1-76).**

Production of Responsive Documents: Riverbed is presently ready, willing, and able to receive and to inspect documents. Quantum, however, does not indicate in its responses whether it will produce responsive documents or will make those documents available for inspection. If you intend to make any documents available for inspection, please let us know immediately so that we can make arrangements to inspect those documents. If you intend to produce documents, please let us know when that production will commence and when it will be completed.

Production of Rocksoft, ADIC and Ross Williams Documents: It is unclear from your responses whether you will be searching for and producing responsive documents from Rocksoft, ADIC, and Ross Williams. It is our understanding that Rocksoft and ADIC documents are in Quantum's possession, custody or control. Please confirm whether you are searching for all responsive documents in the files of Rocksoft, ADIC and Ross Williams.

Privileged documents: Please confirm that all documents that are responsive to any requests but withheld on a basis of privilege will be included on Quantum's privilege log and that, for each such document, any request to which the document is responsive will be clearly identified on the privilege log.

Objections that Requests are Premature (Request Nos. 4, 5, 6, 30, 65, 66): Quantum objected to these six requests on the basis that the requests are premature in light of the Patent Local Rules. If Quantum is refusing to search for these documents at this time or is withholding documents based on this objection, please let us know immediately.

Request Nos. 4, 5, 9, 11, 21-29, 31, 32, 34-37, 39, 53-57, 65: Quantum objected to these requests on the basis that at least some of the responsive documents are publicly available, and thus equally accessible to Riverbed. If Quantum is refusing to search for these documents at this time or is withholding documents based on this objection, please let us know immediately.

Request No. 30: This request seeks documents relating to the '810 Patent. Despite claiming to have undertaken a "reasonable and diligent search," Quantum did not agree to produce any documents in response to this request, and asserted a variety of objections. Quantum's objections are improper and its response is incomplete. The information sought relating to the "novelty, patentability, validity, enforceability, [and] enforceable scope of the '810 Patent" is clearly relevant to the parties' claims and/or defenses. Accordingly, Riverbed requests a full and complete production of all responsive documents. Please let us know immediately if Quantum will continue to maintain its objections to this request.

Request No. 74: This request seeks documents relating to policies, strategies, plans and practices regarding patents. Despite claiming to have undertaken a "reasonable and diligent search," Quantum did not agree to produce any documents in response to this request, and asserted a

Nate Bruno, Esq.
December 10, 2007
Page 5 of 5

variety of objections. Quantum's objections are improper and its response is incomplete. The information sought is clearly relevant to the parties' claims and/or defenses. Accordingly, Riverbed requests a full and complete production of all responsive documents. Please let us know immediately if Quantum will continue to maintain its objections to this request.

Request No. 75: This request seeks documents relating to Quantum's, ADIC's, and Rocksoft's document retention policies. Despite claiming to have undertaken a "reasonable and diligent search," Quantum did not agree to produce any documents in response to this request, and asserted a variety of objections. Quantum's objections are improper and its response is incomplete. Document retention policies are clearly relevant. For example, they may indicate whether documents relevant to this litigation were improperly destroyed. Accordingly, Riverbed requests a full and complete production of all responsive documents or a confirmation that Quantum does not have in its possession, custody or control any documents relating to such document retention policies. Please let us know immediately if Quantum will continue to maintain its objections to this request.

We expect Quantum to address all of the deficiencies and issues raised in this letter by December 17, 2007. If you have any questions, we are available to meet and confer this week.

Very Truly Yours,

*[signature: Todd Briggs]*

Todd Briggs