# EXHIBIT F



**SHEPPARD MULLIN**
SHEPPARD MULLIN RICHTER & HAMPTON LLP
ATTORNEYS AT LAW

Four Embarcadero Center | 17th Floor | San Francisco, CA 94111-4106
415-434-9100 office | 415-434-3947 fax | www.sheppardmullin.com

Writer's Direct Line: 415-774-2984
nbruno@sheppardmullin.com
Our File Number: 16HC-132982

December 17, 2007

*VIA E-MAIL AND U.S. MAIL*

Todd Briggs Esq.
Quinn Emanuel LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Direct: (650) 801-5020
Fax: (650) 801-5100

Re: *Quantum Corporation v. Riverbed Technology, Inc*, C07-04161-WHA –
**Quantum's Response to Letter Dated December 10, 2007**

Dear Todd:

We received your letter dated December 10, 2007 discussing Quantum's responses to Riverbed's first sets of interrogatories and document requests. This letter constitutes Quantum's response to the issues raised in your letter, and is part of Quantum's ongoing efforts to meet and confer regarding the above-mentioned sets of discovery served by Riverbed.

**QUANTUM'S RESPONSES TO RIVERBED'S FIRST SET OF INTERROGATORIES**

**Interrogatory No. 3:**

The precise text of this interrogatory is as follows: "Identify every instance where Quantum has contacted any third party *regarding the '810 patent*, including the name and address of each third party and the circumstances surrounding the contact." (Emphasis added.) The call of this question is directed only toward obtaining information about contacts between Quantum and third parties in which the purpose of the contact was specifically to discuss the '810 patent itself. The only such contacts directly regarding the '810 patent were efforts by Quantum to license the '810 patent, as indicated in Quantum's original response. Quantum reported on each of these contacts in the first section of its response, and that list of five companies with whom contact was made "regarding the '810 patent" is already exhaustive.

Furthermore, the clear intent of the question as worded is only to obtain information on <u>initial</u> contacts, not to request and exhaustive history of every communication between Quantum and a third party following the initial contact regarding the '810 patent. If

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs. Esq.
December 17, 2007
Page 2

Riverbed intended to ask for information regarding all communications and discussions between Quantum and third parties regarding the '810 patent, it should have worded its interrogatory using those descriptive terminologies. Despite Quantum's reasonable interpretation of this interrogatory as referring only to initial contacts, Quantum will provide a supplemental response that attempts to describe every instance Quantum contacted the five third parties specifically regarding the '810 patent described in its original responses, and that further describes the circumstances surrounding those contacts.

Out of an abundance of good faith, Quantum's original response also described as well as possible the contacts Quantum has had with third parties about software that happens to incorporate the technology of the '810 patent. These contacts were regarding software, not regarding the '810 patent, as Quantum specifically pointed out in its original response. As such, they fall outside of the scope of the question. Quantum provided this information only as an effort to be more forthcoming with discovery than even necessary because the contacts were tenuously related to the '810 patent. It was not necessary for Quantum to do so, and it is not appropriate for Riverbed to demand more. Not only are contacts regarding software outside the sphere of the interrogatory, but for Quantum to provide the further information Riverbed now demands regarding all circumstances surrounding each of these contacts would be unduly burdensome and oppressive in the amount of time and resources it would require to try to track down and compile all that information from the various necessary sources. Quantum will leave the information in its supplemental response, but will not provide any further information as to these contacts regarding software. Should Riverbed seek further information, it should serve a new interrogatory that asks for the information (which Quantum can then evaluate for reasonableness) or take a deposition of the appropriate person(s).

Finally, to the best of Quantum's knowledge, Hewlett Packard was the only company to be contacted by Rocksoft regarding the '810 patent. As for ADIC, there was a brief period of time between ADIC's acquisition of Rocksoft and Quantum's acquisition of ADIC in which ADIC may have carried on communications with Hewlett Packard initiated originally by Rocksoft. Quantum will add the appropriate information to its supplemental response.

Quantum will provide a supplemental response to Riverbed's Interrogatory No. 3 by December 24, 2007.

**Interrogatory No. 4:**

Quantum will provide a supplemental response by December 24, 2007 that lightens the highlighting of the confidential information so it is more easily legible, and will use the lighter form of highlighting in the future.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs. Esq.
December 17, 2007
Page 3

**Interrogatory No. 5:**

This interrogatory reads as follows: "Identify each Patented Product, the date each Patented Product was first sold in the United States, and whether each Patented Product was marked pursuant to 35 U.S.C. § 287."

You have asked why the DXi 7500 was not included in Quantum's response. The interrogatory asks about products that have been sold and how they were marked. Quantum interpreted this interrogatory to refer to products that have actually been shipped. The DXi 7500 is a product that Quantum has developed and is offering for sale, but no DXi 7500 products have actually shipped or been invoiced. Accordingly, the DXi 7500 does not fall within the scope of the interrogatory. However, Quantum will supplement its interrogatory response to explain the information in this paragraph regarding the DXi 7500.

As to whether Rocksoft, ADIC, or Data Domain has "developed, manufactured, marketed, offered for sale, or sold" any Patented Product as defined by Riverbed, Quantum is in the process of researching this issue and will incorporate any further responsive information into its supplemental response if necessary.

As to marking, Quantum will provide the marking status of each product listed in its supplemental response as of the date of first sale of the product.

Quantum will provide a supplemental response to this interrogatory by December 24, 2007.

**Interrogatory Nos. 6-7:**

Quantum will provide supplemental responses to these interrogatories by December 24, 2007 that eliminate reference to meeting between Jonathan Otis and Eric Wolford. The inclusion of information subject to the parties' "Settlement Communication Confidentiality/ Inadmissibility/ Undiscoverability Agreement" was inadvertent, and Quantum will of course endeavor in the future to not disclose in any discovery response or court filing any information subject to the parties' agreement.

**Interrogatory No. 8:**

Quantum is investigating further and will provide a supplemental response to this interrogatory by December 24, 2007 that further explains the chain of title or transfer of rights in the '810 Patent from Trustus Pty Limited to Quantum.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs. Esq.
December 17, 2007
Page 4

## QUANTUM'S RESPONSES TO RIVERBED'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

### Production of Responsive Documents

On December 13, 2007, we provided a letter to your firm entitled "Document Productions by Ross Williams and Electronic Productions by the Parties." The letter proposes that we meet and confer to agree on a date range and list of search terms to use when collecting electronically stored information for production. Additionally, we propose that searches of individual desktop and laptop computers (aside from searches of centralized servers or document management systems) only be required of the persons named in the parties' amended initial disclosures. This seems like a reasonable way to capture the information relevant to the parties claims and defenses in a practical and efficient manner. Amar Thakur, Mauricio Flores, and I stand ready to meet and confer with your team on this issue so the parties can proceed with our mutual collections and productions, but we have not yet heard anything from you. Please provide us with a time you would like to discuss this issue so we can arrange a mutual collection and production plan.

### Production of Rocksoft, ADIC, and Ross Williams Documents

Quantum considers documents maintained by Rocksoft and ADIC to be within its possession, custody, or control, and will be able to collect and produce such documents once we agree on an appropriate collection and production plan as proposed above. Quantum's position and proposal with respect to documents maintained by Ross Williams is described in our letter dated December 13, 2007 (*i.e.*, he is a third party not under Quantum's control who is willing at this point to conduct his own voluntary searches pursuant to the conditions set forth in the letter), for which we are awaiting a response.

### Privileged Documents

Quantum will list on its privilege log(s) the privileged documents it locates that would otherwise be responsive to Riverbed's document requests. However, we cannot find any requirement in the Federal Rules or Judge Alsup's Supplemental Order that requires either party to list the specific number(s) of the request(s) to which a privileged document is responsive, and will not be listing such information on Quantum's privilege log(s). That requirement would seem to be impractical and onerous because documents may be responsive to multiple requests at the same time. The documents should speak for themselves as to why they are relevant without counsel needing to explain it to each other. If you are aware of authority requiring such information on a privilege log, please provide it.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs, Esq.
December 17, 2007
Page 5

### Objections that Requests are Premature (Request Nos. 4, 5, 6, 30, 65, 66)

Quantum is not refusing to search for or produce any documents at this time based on its objection regarding the premature nature of Riverbed's above-referenced requests. However, specifically as to Patent Local Rule 3-2 (a) and (b), Quantum is utilizing the time afforded by the parties' stipulation (which gives Quantum through December 28, 2007) to search for and produce any documents that may exist and can be found, if any, that fall within the purview of those subdivisions.

### Request Nos. 4, 5, 9, 11, 21-29, 31, 32, 34-37, 39, 53-57, 65

Quantum is not refusing to search for or produce any documents at this time based on its objection regarding the publicly available nature of documents responsive to Riverbed's above-referenced requests.

### Request No. 30

To be precise, this requests demands: "All documents discussing, referring, or relating to any search, investigation, evaluation, or opinion as to the novelty, patentability, validity, enforceability, or enforceable scope of the '810 Patent." Thus, the question does not relate simply to the '810 Patent or information relating to novelty, patentability, validity, etc. It relates to any *"search, investigation, evaluation, or opinion"* as to those things. Quantum's initial understanding of this request in that context was that any such documents appeared to be protected by the attorney-client privilege and work product doctrine. Quantum has since reconsidered and it appears documents not protected by privilege to this extremely broad request. Quantum will provide a supplemental response to this request by December 24, 2007.

### Request No. 74

Quantum's search revealed that it does not appear to have any documents that in and of themselves set forth specific "policies, strategies, plans and practices" regarding patents. However, the request is written so broadly that it is difficult for Quantum to determine the scope and evaluate whether there are documents "relating to" its policies in this regard. Upon further review, Quantum is able to identify certain documents that would fall within the very broad scope of this request, and for that reason, Quantum will provide a supplemental response to this request by December 24, 2007.

### Request No. 75

Quantum is undertaking a further search for responsive materials relating to its document retention policies and will either provide a supplemental response or a further

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs. Esq.
December 17, 2007
Page 6

explanation as to why it will not or cannot produce responsive documents by December 24, 2007.

Very truly yours,

Nathaniel Bruno

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:6NB1\400610271.1

cc:   Amar Thakur