# EXHIBIT G

## <u>REDACTED VERSION</u>

### CONFIDENTIAL VERSION FILED UNDER SEAL

1  AMAR L. THAKUR, CAL. BAR NO. 194025
   MAURICIO A. FLORES, Cal. Bar No. 93304
2  JON E. MAKI, Cal Bar No. 199958
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3  A Limited Liability Partnership
   Including Professional Corporations
4  12275 El Camino Real, Suite 200
   San Diego, California  92130
5  Telephone:    858-720-8900
   Facsimile:     858-509-3691
6  Email: athakur@sheppardmullin.com

7
   NATHANIEL BRUNO, Cal. Bar No. 228118
8  SHEPPARD MULLIN RICHTER & HAMPTON LLP
   A Limited Liability Partnership
9  Including Professional Corporations
   Four Embarcadero Center, 17th Floor
10 San Francisco, California  94111
   Telephone:    415-774-2984
11 Facsimile:     415-434-6095
   Email: nbruno@sheppardmullin.com
12
   Attorneys for
13 QUANTUM CORPORATION

14                 UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA,

16                   SAN FRANCISCO DIVISION

17 QUANTUM CORPORATION, a Delaware        Case No. C 07-04161 WHA
   corporation,
18                                        The Hon. William H. Alsup
19            Plaintiff,
                                          QUANTUM CORPORATION'S FIRST SET
20      v.                                OF SUPPLEMENTAL RESPONSES TO
                                          RIVERBED TECHNOLOGY INC.'S FIRST
21 RIVERBED TECHNOLOGY, INC.,             SET OF INTERROGATORIES

22            Defendant.
                                          [THIS DOCUMENT CONTAINS
23 RIVERBED TECHNOLOGY, INC., a           INFORMATION DESIGNATED
   Delaware corporation,                  "CONFIDENTIAL"]
24
25            Counterclaimant,
26      v.
27 QUANTUM CORPORATION, a Delaware
   corporation,
28
              Counterdefendant.

-1-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1

2  **PROPOUNDING PARTY:**          **RIVERBED TECHNOLOGY, INC.**

3  **RESPONDING PARTY:**           **QUANTUM CORPORATION**

4  **SET NO.:**                    **ONE (1)**

5

6           Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff and

7  Counterdefendant Quantum Corporation ("Plaintiff" or "Quantum") responds in supplemental

8  fashion as follows to Defendant and Counterclaimant Riverbed Technology, Inc.'s ("Defendant"

9  or "Riverbed") First Set of Interrogatories (the "Interrogatories"):

10          1.      Plaintiff's response to the Interrogatories is made to the best of its current

11  knowledge, information and belief. Said response is at all times subject to such additional or

12  different information that discovery or further investigation may disclose and, while based on the

13  present state of Plaintiff's recollection, is subject to such refreshing of recollection, and such

14  additional knowledge of facts, as may result from further discovery and/or investigation. Plaintiff

15  reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or

16  documents responsive to the Interrogatories but discovered subsequent to the date of this response,

17  including, but not limited to, any such information or documents obtained in discovery herein.

18          2.      Plaintiff reserves all objections or other questions as to the competency, relevance,

19  materiality, privilege or admissibility as evidence in any subsequent proceeding or in trial of this

20  or any other action for any purpose whatsoever of its responses herein and any document or thing

21  identified or provided in response to the Interrogatories.

22          3.      Plaintiff reserves the right to object on any ground at any time to such other or

23  supplemental interrogatories as Defendant may at any time propound involving the subject matter

24  of the Interrogatories.

25

26                              **<u>GENERAL OBJECTIONS</u>**

27          1.      Quantum objects to these interrogatories on the grounds and to the extent

28  that they seek information or documents protected by the attorney client privilege, work product

-2-

1   doctrine and/or any other applicable privilege or protection recognized by law. Quantum does not

2   intend to produce any privileged or protected information, documents, or other material and any

3   inadvertent or unintentional disclosure shall not be deemed a waiver of any privilege or protection.

4                2.      Quantum objects to these interrogatories on the grounds and to the extent

5   that they seek information or purport to impose burdens or obligations beyond the scope of

6   permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the District

7   Court for the Northern District of California and any orders entered in this action.

8                3.      Quantum objects to these interrogatories on the grounds and to the extent

9   that they seek information or documents that are not relevant to any claim or defense of any party

10  in this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or fall

11  outside the scope of discoverable information under the Federal Rules of Civil Procedure, the

12  Local Rules of the District Court for the Northern District of California and any orders entered in

13  this action.

14               4.      Quantum objects to these interrogatories on the grounds and to the extent

15  that they seek information or documents that are publicly available or are equally accessible to

16  Defendant as to Quantum.

17               5.      Quantum objects to these interrogatories on the grounds and to the extent

18  that they seek information or documents that are confidential and/or proprietary. Quantum will

19  provide such information and documents only after the entry of an appropriate Protective Order.

20               6.      Quantum objects to the introductory definitions and instructions in the

21  Interrogatories to the extent said definitions or instructions purport to enlarge, expand or alter in

22  any way the plain meaning and scope of any specific interrogatory on the ground that such

23  enlargement, expansion or alteration renders said interrogatory vague, ambiguous, unintelligible,

24  unduly broad or uncertain. Quantum object to all definitions, instructions and interrogatories in

25  which the phrase "referring to", "relates", "relate to", "relating to" or "evidencing" appears. The

26  terms "referring to," "relates", "relate to", "relating to" and "evidencing" are overly broad, vague,

27  ambiguous and unintelligible, would require subjective judgment on the part of Quantum and its

28

1  counsel, and would require a conclusion or opinion of counsel in violation of the attorney work

2  product doctrine.

3          7.      Quantum objects to the Interrogatories to the extent they purport to require

4  Quantum to provide any answers or responses beyond those required by Rule 33 of the Federal

5  Rules of Civil Procedure and/or any other applicable Federal or Local Rule of Civil Procedure

6  and/or Evidence.  Quantum objects insofar as any interrogatory contains subparts, or is a

7  compound, conjunctive or disjunctive interrogatory.

8          8.      Quantum objects to these interrogatories under Patent Local Rule 2-5 to the

9  extent they are premature in light of the timetable for the disclosure of certain categories of

10  information, as provided in the Patent Local Rules.

11          9.      Quantum reserves the right to object to the introduction of any information

12  or documents provided in response to any of Defendant's interrogatories on any available grounds.

13  Nothing herein shall be construed as an admission by Quantum regarding the admissibility or

14  relevance of any information or document provided in response to Defendant's interrogatories.

15          10.     Quantum's referencing and incorporation of documents into any response

16  below pursuant to Federal Rule of Civil Procedure 33(d) is not intended to be and shall not be

17  considered in any way a waiver of any level of confidentiality with which any such documents

18  have been designated.

19          11.     Quantum has not fully completed its investigation of the facts relating to

20  this case, its discovery and its preparation for trial.  All responses and objections contained herein

21  are based on such information and such documents which are presently available to and

22  specifically known to Quantum after conducting a reasonable and diligent investigation.  It is

23  anticipated that further discovery and independent investigation and analysis will provide

24  additional facts, provide context to known facts and establish new factual conclusions, all of

25  which may lead to changes in the responses set forth herein.  The following objections and

26  responses are made without prejudice to Quantum's right to produce evidence of subsequently

27  discovered information or documents.  Accordingly, without assuming any obligation to do so and

28

-4-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1   without waiving any objections herein, Quantum reserves the right to amend and/or supplement

2   these responses as and when additional facts are discovered or ascertained.

3        12.    Each of these general objections is incorporated by reference into each of

4   the specific responses set forth below. The fact that any of these general objections is set forth in

5   response to any of the discovery requests shall not be construed as a waiver of any of the other

6   general objections set forth herein.

7   **FIRST SET OF SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

8   **INTERROGATORY NO. 1:**

9       For each claim of the '810 Patent, describe the circumstances surrounding the

10  invention of the claims, including the precise date of conception, the persons involved, the date of

11  actual or constructive reduction to practice, and the steps constituting diligence from conception to

12  actual or constructive reduction to practice.

13  **RESPONSE TO INTERROGATORY NO. 1:**

14      Quantum further objects to this interrogatory on the ground that it is overbroad,

15  unduly burdensome and oppressive and that it seeks information that is not relevant to the claims

16  and defenses in the pending litigation and not reasonably calculated to lead to the discovery of

17  admissible evidence. Quantum further objects to this interrogatory on the ground it seeks to

18  discover information protected by the attorney-client privilege and/or the work product doctrine.

19  Quantum further object to this interrogatory on the ground that it contains subparts in violation of

20  Federal Rule of Civil Procedure 33(a). Quantum further objects to this interrogatory on the

21  ground that it calls for a legal conclusion.

22      Subject to and without waiving the foregoing general and specific objections,

23  Quantum responds as follows:

24      On January 27, 1992, Ross Williams submitted a newsgroup posting to the

25  newsgroup comp.compression describing the idea of scanning through data using a fixed length

26  window and identifying as "interesting" the window positions/content where the contents of the

27  window hash to a particular value. These interesting parts of the data can then be indexed and

28  explored in different files to find similarities. The posting described the idea of special sequences,

-5-

1   but did not discuss that positions associated with these sequences can be used to form the

2   boundaries of variable-length blocklets.

3          On June 30, 1992, Ross Williams submitted a newsgroup posting describing a

4   method of splitting up data so that it can be compressed in parallel but again did not discuss that

5   positions associated with these sequences can be used to form the boundaries of variable-length

6   blocklets.

7          In approximately August/September of 1994, Ross Williams attended a DECUS

8   conference and presented a paper on cryptographic hashes, which describes the myriad uses of

9   cryptographic hashes.  Pursuant to Federal Rule of Civil Procedure 33(d) and in further response

10  to this interrogatory, Quantum incorporates herein by reference the document produced herewith

11  marked with control numbers QU 000001 – QU 000012 from which information responsive to this

12  interrogatory may be derived or ascertained, specifically relating to this paper on cryptographic

13  hashes.

14         Ross Williams conceived of the inventions of what later became U.S. Patent No.

15  5,990,810 no later than November 21, 1994, as evidenced by a letter he sent to David Farajun of

16  Data Storage, Inc. dated November 21, 1994.  Pursuant to Federal Rule of Civil Procedure 33(d)

17  and in further response to this interrogatory, Quantum incorporates herein by reference the

18  document produced herewith marked with control numbers QU 000627 – QU 000628 from which

19  information responsive to this interrogatory may be derived or ascertained, specifically relating to

20  this letter.  This document is designated "CONFIDENTIAL," and Quantum's referencing and

21  incorporation of this document into this response pursuant to Federal Rule of Civil Procedure

22  33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

23  with which such document has been designated.

24         On February 15, 1995, Ross Williams prepared an initial draft of the Blocklets

25  patent which included the core Blocklets ideas of applications including the differencing, backup,

26  communications, and file system applications.  The first Australian provisional patent application

27  on the technology was filed February 17, 1995, thereby constructively reducing to practice the

28  claims of what later became U.S. Patent No. 5,990,810.

-6-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1        On the dates of March 11-12, 1995, Ross Williams created the first implementation

2    of Blocklets in the form of a small demonstration incremental backup program. It was a complete

3    working program including all essential elements of Blocklet parsing, subblocks, hashes, and

4    matching, demonstrating that "Blocklets" worked. The program implements a backup application

5    of Blocklets. The program implements backup for backups over a network, but does not actually

6    use networking in the implementation. The program allowed Mr. Williams to check to ensure the

7    Blocklets idea had no hidden fatal flaws and provided a demonstration program so the technology

8    could be demonstrated to other people. The communications application was first implemented in

9    approximately 2001 in the Veracity software product. The file system application was first

10   implemented in approximately 2002 in the BFST storage software product.

11       On April 12, 1995, a second provisional Australian patent application was filed,

12   expanding on the first.

13       Pursuant to Federal Rule of Civil Procedure 33(d) and in response to this

14   interrogatory, Quantum incorporates herein by reference the documents produced herewith

15   marked with control numbers QU 000613 – QU 000660 from which information responsive to this

16   interrogatory may be derived or ascertained. These documents are designated "CONFIDENTIAL"

17   under the Stipulated Protective Order, and Quantum's referencing and incorporation of these

18   documents into this response pursuant to Federal Rule of Civil Procedure 33(d) is not intended to

19   be and shall not be considered in any way a waiver of the confidentiality with which such

20   documents have been designated.

21   **INTERROGATORY NO. 2:**

22       For each claim of the '810 Patent, describe all investigations made by or on behalf

23   of Quantum prior to the filing of the Complaint regarding whether any claim of the '810 Patent is

24   infringed by any Riverbed product, including identifying the persons involved in the

25   investigations, the persons to whom reports were made, the persons involved in the approval of the

26   action, the date of the investigation, the items considered, when and where such items were

27   obtained, the conclusion reached in the investigations, and all documents referring to or describing

28   such investigations.

-7-

1  **RESPONSE TO INTERROGATORY NO. 2:**

2          Quantum further objects to this interrogatory on the ground it seeks to discover

3  information protected by the attorney-client privilege and/or the work product doctrine. Quantum

4  further object to this interrogatory on the ground it contains subparts in violation of Federal Rule

5  of Civil Procedure 33(a). Quantum further objects to this interrogatory on the grounds that it is

6  vague and ambiguous in that it seeks descriptions of "all investigations" of infringement.

7  Quantum further objects to this interrogatory on the ground that it is overbroad, unduly

8  burdensome and oppressive and that it seeks information that is not relevant to the claims and

9  defenses in the pending litigation and not reasonably calculated to lead to the discovery of

10  admissible evidence.

11          Based on and without waiving the foregoing general and specific objections,

12  Quantum will not provide any information in response to this interrogatory.

13

14  **INTERROGATORY NO. 3:**

15          Identify every instance where Quantum has contacted any third party regarding the

16  '810 patent, including the name and address of each third party and the circumstances surrounding

17  the contact.

18  **RESPONSE TO INTERROGATORY NO. 3:**

19          Quantum further objects to this interrogatory on the grounds that it is overbroad,

20  unduly burdensome and oppressive and that it seeks information that is confidential or not relevant

21  to the claims and defenses in the pending litigation and not reasonably calculated to lead to the

22  discovery of admissible evidence. Quantum further objects to this interrogatory on the ground it

23  seeks to discover information protected by the attorney-client privilege and/or the work product

24  doctrine.

25          Subject to and without waiving the foregoing general and specific objections,

26  Quantum responds as follows:

27          In June 2005, Rocksoft CEO Jim Johnson wrote a letter to Gerald Barnett at U.C.

28  Santa Cruz, giving the Deep Store program permission to use U.S. Pat No. 5,990,810 for non-

-8-

1 commercial academic and educational research activity. Pursuant to Federal Rule of Civil

2 Procedure 33(d) and in further response to this interrogatory, Quantum incorporates herein by

3 reference the document produced herewith marked with control numbers QU 000661 – QU

4 000662 from which information responsive to this interrogatory may be derived or ascertained,

5 specifically relating to this letter.

6

7 **The following companies were contacted about '810 patent licensing:**

8

9       In of May 2003, Rocksoft contacted Hewlett Packard Company ("HP"), Gerard

10 Lameiro, Director, New Business Ventures, 3404 East Harmony Road, Ft. Collins, CO 80528, to

11 discuss the '810 patent. Discussions ensued, and Rocksoft was later acquired by ADIC on or

12 about August 1, 2006. In March of 2006, HP approached ADIC to discuss patent licensing related

13 to automation products. Within these discussions HP disclosed it had active discussions with

14 Rocksoft. These discussions included Tao Zhang (HP IP licensing), Les Murray (HP Corporate

15 Counsel), Bob Wilson (HP VP Nearline Storage), Chuck Stonecipher (ADIC EVP), and Jonathan

16 Otis (ADIC Senior VP Corporate Development). These discussions were taken over by Quantum

17 and resulted in the listed cross license between Quantum and HP. ADIC was also introduced in

18 April of 2006 to Mark Watkins (HP StorageWorks Chief Technical Officer) by Rocksoft, and a

19 software license with an appropriate patent license was discussed. Jonathan Otis (currently of

20 Quantum but then of ADIC) initiated continuation discussions with HP around that time for

21 software to be used in HP low-end solutions, subject to a nondisclosure agreement. HP postponed

22 discussions pending the ongoing ADIC/HP patent cross-license discussions. Other parties to those

23 discussions at HP were Mike Padavano and Tracy Lewis. Quantum acquired ADIC in or about

24 August 2006 and continued patent cross-license discussions with HP. In the Spring of 2007,

25 Quantum entered into supply, joint development and cross licensing discussions with HP.

26 Pursuant to Federal Rule of Civil Procedure 33(d) and in further response to this interrogatory,

27 Quantum incorporates herein by reference the documents produced herewith marked with control

28 numbers QU 000043 – QU 000159 from which further information responsive to this

-9-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1  interrogatory may be derived or ascertained. These documents were designated "Confidential –
2  Outside Attorneys' Eyes Only" but Quantum is now hereby re-designating them "HIGHLY
3  CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Stipulated Protective Order, and
4  Quantum's referencing and incorporation of these documents into this response pursuant to
5  Federal Rule of Civil Procedure 33(d) is not intended to be and shall not be considered in any way
6  a waiver of the confidentiality with which such documents have been designated. Graham Hogg
7  (HP Business Development), Ben Wilkenson (HP Tape GM), Melanie Vinson (HP General
8  Counsel) and Jeff DiCorpo (HP CTO) were participants from HP. Rob Clark, James Hall, and
9  Shawn Hall represented Quantum. Rick Belluzzo (Quantum CEO) and Bob Wilson (HP VP
10  Nearline Storage) also discussed the agreement.
11
12          In November 2006, Quantum contacted Data Domain, Inc., Frank Slootman, CEO,
13  2300 Central Expressway Santa Clara, CA 95050 to open patent licensing discussions. Data
14  Domain participants over a series of meetings were Frank Slootman (CEO), Hugo Patterson
15  (Architect), Mike Scarpelli (CFO) and Robert Specker (Counsel). Data Domain lawyers were also
16  involved at certain times. Quantum participants were Jonathan Otis, Rod Wideman, James Hall,
17  Shawn Hall, and Jon Gacek. Discussions resulted in a cross-license agreement which has been
18  produced marked with control numbers QU 000034 – QU 000042 and is incorporated herein by
19  reference as a document from which information responsive to this interrogatory may be derived
20  or ascertained pursuant to Federal Rule of Civil Procedure 33(d). This document was designated
21  "Confidential – Outside Attorneys' Eyes Only" but Quantum is now hereby re-designating it
22  "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and
23  incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure
24  33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality
25  with which such documents have been designated. Quantum designates this document
26  "CONFIDENTIAL" in view of contractual obligations with Data Domain regarding its
27  confidentiality, but notes that the document has been filed in an S-1 by Data Domain.
28

-10-

1    In November 2006, Quantum contacted Avamar Technologies, Inc., Ed Walsh,

2  CEO, 135 Technology Drive Suite 100, Irvine, CA 92618 to open patent licensing discussions.

3  There was no response by or discussions with Avamar because it was subsequently acquired by

4  EMC.

5

6    In November 2006, Quantum contacted EMC, Michael Cody, 176 South Street,

7  Hopkinton, MA 07148 to open patent licensing discussions.  The initial contact was a call from

8  Jon Gacek of Quantum to Michael Cody about the upcoming acquisition of Avamar by EMC.

9  They deferred discussions indefinitely due to ongoing business activity between EMC and ADIC,

10  which has now been acquired by Quantum.  EMC and Quantum continue to hold business and

11  technical discussions about Quantum products incorporating disk-to-disk-to-tape technologies.

12

13    In February of 2007, Quantum contacted Riverbed Technology, Inc., Jerry

14  Kennely, CEO, 199 Fremont Street, San Francisco, CA 94105 to open patent licensing

15  discussions.  Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

16  response to this interrogatory, Quantum incorporates herein by reference the documents produced

17  herewith marked with control numbers QU 000202 – QU 000213 from which information

18  responsive to this interrogatory may be derived or ascertained.  These documents were designated

19  "Confidential – Outside Attorneys' Eyes Only" but Quantum is now hereby re-designating them

20  "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

21  incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

22  33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

23  with which such documents have been designated.

24

25    **The following companies have also been contacted about reselling software**

26  **which embodies the '810 patent with the points of first contact provided:**

27

28

-11-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1

**By Rocksoft:**

2          In 2005, Rocksoft approached Quantum about licensing software. The discussions

3    escalated to acquisition talks very quickly. These discussions were led by Shane Jackson

4    (Quantum's Director of Product Management, who is no longer at Quantum). Quantum took a

5    close engineering look at Blocklets. Acquisition discussions were halted when price differences

6    could not be reconciled at that time. There were no patent licensing discussions.

7          Other contacts by Rocksoft regarding software include:

8          Symantec Corporation, Steve Fairbanks, 20330 Stevens Creek, Cupertino, CA

9    95104;

10         Quantum Corporation, Shane Jackson, 1650 Technology Drive, #800, San Jose, CA

11   95110;

12         EDS Information Services LLC., Frank Cermak, 5400 Legacy Drive, Plano, TX

13   75024;

14         Computer Associates International, Inc., Anders Lofgren, One CA Plaza, Islandia,

15   NY 11749;

16         EMC Corporation, Jerry Cotter, 32 Coslin Drive, Southboro, MA 01772;

17         Advanced Digital Information Corporation, Jonathan Otis, 11431 Willows Rd, NE,

18   Redmond, WA 98052;

19         Veritas, Paul DiNardo, 350 Ellis Street, Mountain View, CA 94043;

20         Network Appliance, Paul O'Farrell, 495 East Java Drive, Sunnyvale, CA 94089;

21         Percept, Brian Cleveland, no address recorded;

22         FalconStor Software, Inc., Seth Oxenhorn, 2 Huntington Quad, Mellville, NY

23   11747;

24         EDI Ltd. G.E. Schmidt, 18 Celina Ave, #20, Nachua NH 03063; and

25         Adaptec, Victor Jipson, 691 South Milpitas Blvd., Milpitas, CA 95035.

26         Microsoft, Eric Rosencrantz, 1 Microsoft Way, Redmond, WA 98052;

27         Copan Systems, Dave Davenport, CEO, 1900 Pike Road, Longmont, CO 80501;

28         Acopia, Mike Fahey, 41 Wellman Street, Lowell, MA 01851;

-12-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1  StorageSwitch, LLC, PO Box 448, Boulder, CO 80306;

2  Agami, Craig Stevens, 1269 Innsbruck Drive, Sunnyvale, CA 94089;

3  Tektools, Ken Barth, 4020 McEwen Dr, #105, Dallas, TX 75244;

4  Seagate, Jay Remley, address not recorded;

5  HDS, Derek Gascon, address not recorded;

6  SUN, Derek Maxwell, address not recorded; and

7  MySpace, Aber Whitcomb, address not recorded.

8  **By Quantum:**

9  Exagrid, Dave Therrien, 2000 West Park Drive, Suite 110, Westborough, MA

10  01581;

11  Microsoft, Mark Robinson, 1 Microsoft Way, Redmond WA 98052;

12  CommVault, Eric Rice, 2 Crescent Place, Oceanport, NJ 07757;

13  TimeSpring, Rick Carlson, 2000 Peel, Suite 905 Montreal, Quebec H3A 2W5;

14  Breakthrough Systems, John LoPorto, 1380 Forest Park Circle, #204, Lafayette,

15  CO 80026;

16  BlueArc Corporation, Shmuel Shottan, 50 Rio Robles Drive, San Jose, CA 95134;

17  Apple, Greg Burns, 1 Infinite Loop, Cupertino, CA 95104;

18  LSI/Engenio, Bob Emmett, 20 Ashford, Irvine, CA 92618; and

19  NetPriva, Todd Viegut, address not recorded.

20

21  **INTERROGATORY NO. 4:**

22  Identify all licenses relating to the '810 Patent, including the licensor, the licensee,

23  the date of the license, and the terms of the license, the amounts paid under the license, and any

24  royalty rates established by the license.

25  **RESPONSE TO INTERROGATORY NO. 4:**

26  Quantum further objects to this interrogatory on the grounds that it is overbroad,

27  unduly burdensome and oppressive and that it seeks information that is confidential or not relevant

28

-13-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1  to the claims and defenses in the pending litigation and not reasonably calculated to lead to the

2  discovery of admissible evidence.

3       Subject to and without waiving the foregoing general and specific objections,

4  Quantum responds as follows:  **[QUANTUM'S RESPONSE TO THIS INTERROGATORY**

5  **NO. 4 IS HEREBY DESIGNATED "CONFIDENTIAL" AND IS**

6  **HIGHLIGHTED/SHADED AS A FURTHER INDICATION OF SAID DESIGNATION]**

7

8

9

10

11

12

13

14

15

16

17                              REDACTED

18

19

20

21

22

23

24

25

26

27

28

-14-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1
2
3
4
5
6
7
8
9

## REDACTED

10

11    Also, in June 2005, Rocksoft CEO Jim Johnson wrote a letter to Gerald Barnett at

12    U.C. Santa Cruz, giving the Deep Store program permission to use U.S. Pat No. 5,990,810 for

13    non-commercial academic and educational research activity.

14

15    Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

16    response to this interrogatory, Quantum incorporates herein by reference the documents produced

17    herewith marked with control numbers QU 000013 – QU 0000159.  QU 000013 – QU 000033 and

18    QU 000043 – QU 0000159 were designated "Confidential – Outside Attorneys' Eyes Only" but

19

20    Quantum is now hereby re-designating them "HIGHLY CONFIDENTIAL – ATTORNEYS'

21    EYES ONLY" under the Stipulated Protective Order, and Quantum's referencing and

22    incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

23    33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

24    with which such documents have been designated.  QU 000034 – QU 000042 was designated

25    "Confidential – Outside Attorneys' Eyes Only" but Quantum is now hereby re-designating it

26    "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

27    incorporation of it into this response pursuant to Federal Rule of Civil Procedure 33(d) is not

28

-15-

1  intended to be and shall not be considered in any way a waiver of the confidentiality with which

2  the document bearing these control numbers has been designated.  Quantum designates this

3  document "CONFIDENTIAL" in view of contractual obligations with Data Domain regarding its

4  confidentiality, but notes that the document has been filed in an S-1 by Data Domain.

5  Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further response to this

6  

7  interrogatory, Quantum incorporates herein by reference the documents produced herewith

8  marked with control numbers QU 000661 – QU 000662 from which information responsive to this

9  interrogatory may be derived or ascertained.

10  

11  **INTERROGATORY NO. 5:**

12       Identify each Patented Product, the date each Patented Product was first sold in the

13  United States, and whether each Patented Product was marked pursuant to 35 U.S.C. § 287.

14  **RESPONSE TO INTERROGATORY NO. 5:**

15       Quantum further objects to this interrogatory on the grounds that it is overbroad,

16  unduly burdensome and oppressive and that it seeks information that is not relevant to the claims

17  and defenses in the pending litigation and not reasonably calculated to lead to the discovery of

18  admissible evidence.  Quantum further objects to this interrogatory on the ground that Plaintiff has

19  not completed its discovery or preparation for trial and has not yet identified all information and

20  documents and information which support its contentions.  Quantum further objects to this

21  interrogatory on the ground that it contains subparts in violation of Federal Rule of Civil

22  Procedure 33(a).

23       Subject to and without waiving the foregoing general and specific objections,

24  Quantum responds as follows:

25       1.    DXi 3500 disk-based backup appliance, all models

26            First sale date (based on first shipping date): February 15, 2007.  The

27            product was not marked at first shipping.  The product is currently marked.

28

-16-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1    2.  <u>DXi 5500 disk-based backup appliance, all models</u>

2       First sale date: February 15, 2007. The product was not marked at first

3       shipping. The product is currently marked.

4    3.  <u>StorNext Storage Manager Data Reduction Services, a software product</u>

5       First sale date: April 2, 2007. The product was not marked at first

6       shipping. The product is currently marked.

7    4.  DXi 7500 disk-based backup solution, all models. De-duplication is a

8       licensed software option. The product is not scheduled to ship until

9       approximately June of 2008.

10

11    On information and belief, Veracity is a Rocksoft product that is a product within

12 the scope of this interrogatory. Additional information responsive this interrogatory about

13 Veracity is not available as of the date of this response, but efforts are being made to obtain all

14 responsive information. A supplemental response to this interrogatory with respect to Veracity

15 will be provided promptly.

16

17 **INTERROGATORY NO. 6:**

18    State all facts supporting any contention by Quantum that Riverbed has willfully

19 infringed the '810 Patent.

20 **RESPONSE TO INTERROGATORY NO. 6:**

21    Quantum further objects to this interrogatory on the grounds that Plaintiff has not

22 completed its discovery or preparation for trial and has not yet identified all information and

23 documents and information which support its contentions. Quantum further objects to this

24 interrogatory on the ground that it calls for a legal conclusion.

25    Subject to and without waiving the foregoing general and specific objections,

26 Quantum responds as follows:

27    The '810 patent is conspicuously cited on several patents issued to Riverbed.

28 These include U.S. Patent Nos. 6,828,925 (the "'925 patent"), 6,961,009 (the "'009 patent"),

-17-

1    7,116,249 (the "'249 patent"), and 7,120,666 (the "'666 patent"). Further, the '810 patent was cited

2    by the applicant on its IDS, not by the USPTO examiner. However, the parent patent to the '925

3    patent, the '009 patent, and the '249 patent is U.S. Patent No. 6,667,700 (the "'700 patent"), which

4    does not cite or disclose the '810 patent as part of its filing or prosecution. Therefore, Riverbed

5    clearly was aware of the '810 patent at least prior to applying for the first continuation patent of

6    the '700 patent (*i.e.*, the '925 patent). Also, Riverbed's '666 patent did not initially cite the '810

7    patent. The USPTO provided a Notice of Allowance, but Riverbed then filed an RCE, along with

8    a Petition to Withdraw from Issue. The RCE then cited the '810 patent, again showing that

9    Riverbed had specific knowledge of it. Moreover, since the '925 patent was filed on Dec. 8, 2003,

10    citing the '810 patent, and since Riverbed shipped its first product in 2004 (see

11    http://www.riverbed.com/news/press_releases/press_042604.php), Riverbed has willfully

12    infringed and is willfully infringing the '810 patent with respect to all the accused products.

13    Furthermore, Jonathan Otis of Quantum had two conversations by telephone with

14    Brett Nissenberg of Riverbed. The first call was around the date of March 8, 2007. Mr.

15    Nissenberg acknowledged Quantum's previous letters providing notice of the '810 patent, and said

16    Riverbed would be responding and get back to Quantum. He asked if Quantum had licensed to

17    anyone other than Data Domain. The second call was on July 17 at 5:36 p.m. Mr. Nissenberg

18    called to say Riverbed's response to Quantum's June letter was still coming and would be finished

19    in one or two more weeks, and that he would call again if it turned out to be longer. Mr. Otis

20    asked if they should talk first, and Mr. Nissenberg stated, "Just wait for the letter, on that basis you

21    can decide."

22    Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

23    response to this interrogatory, Quantum incorporates herein by reference the documents produced

24    herewith marked with control numbers QU 000202 – QU 000207 from which information

25    responsive to this interrogatory may be derived or ascertained. These documents were designated

26    "Confidential – Outside Attorneys' Eyes Only" but Quantum is now hereby re-designating them

27    "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

28

-18-

1    incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

2    33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

3    with which such documents have been designated.

4    **INTERROGATORY NO. 7:**

5            State all facts supporting any contention by Quantum that Riverbed had actual or

6    constructive notice of any alleged infringement of the claim, including but not limited to any

7    patent marking(s).

8    **RESPONSE TO INTERROGATORY NO. 7:**

9            Quantum further objects to this interrogatory on the grounds that Plaintiff has not

10   completed its discovery or preparation for trial and has not yet identified all documents and

11   information which support its contentions. Quantum further objects to this interrogatory on the

12   grounds that it is cumulative. Quantum further objects to this interrogatory on the ground that it

13   calls for a legal conclusion.

14           Subject to and without waiving the foregoing general and specific objections,

15   Quantum responds as follows:

16           The '810 patent is conspicuously cited on several patents issued to Riverbed.

17   These include U.S. Patent Nos. 6,828,925 (the "'925 patent"), 6,961,009 (the "'009 patent"),

18   7,116,249 (the "'249 patent"), and 7,120,666 (the "'666 patent"). Further, the '810 patent was cited

19   by the applicant on its IDS, not by the USPTO examiner. However, the parent patent to the '925

20   patent, the '009 patent, and the '249 patent is U.S. Patent No. 6,667,700 (the "'700 patent"), which

21   does not cite or disclose the '810 patent as part of its filing or prosecution. Therefore, Riverbed

22   clearly was aware of the '810 patent at least prior to applying for the first continuation patent of

23   the '700 patent (*i.e.*, the '925 patent). Also, Riverbed's '666 patent did not initially cite the '810

24   patent. The USPTO provided a Notice of Allowance, but Riverbed then filed an RCE, along with

25   a Petition to Withdraw from Issue. The RCE then cited the '810 patent, again showing that

26   Riverbed had specific knowledge of it. Moreover, since the '925 patent was filed on Dec. 8, 2003,

27

28

-19-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1  citing the '810 patent, Riverbed has had actual and constructive notice of the '810 patent since at

2  least that time.

3          Furthermore, Jonathan Otis had two conversations by telephone with Brett

4  Nissenberg of Riverbed, the purpose of which was to discuss issues related to the '810 patent. The

5  first call was around the date of March 8, 2007. Mr. Nissenberg acknowledged Quantum's

6  previous letters providing notice of the '810 patent, and said Riverbed would be responding and

7  get back to Quantum. He asked if Quantum had licensed to anyone other than Data Domain. The

8  second call was on July 17 at 5:36 p.m. Mr. Nissenberg called to say Riverbed's response to

9  Quantum's June letter was still coming and would be finished in one or two more weeks, and that

10  he would call again if it turned out to be longer. Mr. Otis asked if they should talk first, and Mr.

11  Nissenberg stated, "Just wait for the letter, on that basis you can decide."

12          Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

13  response to this interrogatory, Quantum incorporates herein by reference the documents produced

14  herewith marked with control numbers QU 000202 – QU 000207 from which information

15  responsive to this interrogatory may be derived or ascertained. These documents were designated

16  "Confidential – Outside Attorneys' Eyes Only" but Quantum is now hereby re-designating them

17  "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

18  incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

19  33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

20  with which such documents have been designated.

21

22  **INTERROGATORY NO. 8:**

23          State all facts supporting any contention by Quantum has standing to sue for

24  infringement of the '810 Patents, including a detailed description of all grants and transfers of any

25  ownership interests in the '810 Patent since the filing, of the patent application that resulted in the

26  issuance of the '810 patent.

27

28

-20-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1    **RESPONSE TO INTERROGATORY NO. 8:**

2          Quantum further objects to this interrogatory on the grounds that it is overbroad,

3    unduly burdensome and oppressive and that it seeks information that is not relevant to the claims

4    and defenses in the pending litigation and not reasonably calculated to lead to the discovery of

5    admissible evidence. Quantum further objects to this interrogatory on the ground it seeks to

6    discover information protected by the attorney-client privilege and/or the work product doctrine.

7    Quantum further objects to this interrogatory on the ground that it calls for a legal conclusion.

8    Quantum further objects to this interrogatory on the ground that it contains subparts in violation of

9    Federal Rule of Civil Procedure 33(a).

10          Subject to and without waiving the foregoing general and specific objections,

11    Quantum responds as follows:

12          A.C.N. 120 786 012 Pty. Ltd. ("A.C.N.") owns Rocksoft Pty. Ltd. ("Rocksoft") as a

13    wholly-owned subsidiary. During the last 12 months, Rocksoft Limited was renamed as Rocksoft

14    Pty. Ltd. Quantum is the parent company to both A.C.N. and Rocksoft.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:6NB1\400613131.1
Case No. C 07-04161 WHA

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1    Pursuant to Federal Rule of Civil Procedure 33(d) and in response to this

2 interrogatory, Quantum incorporates herein by reference the documents produced herewith

3 marked with control numbers QU 000214 – QU 000226 and QU 000663 – QU 000666 from

4 which information responsive to this interrogatory may be derived or ascertained.  QU 000220 –

5 QU 000226 were designated "Confidential – Outside Attorneys' Eyes Only" but Quantum is now

6 hereby re-designating them "CONFIDENTIAL" under the Stipulated Protective Order, and QU

7 000665 – QU 000666 are designated "CONFIDENTIAL" under the Stipulated Protective Order.

8 Quantum's referencing and incorporation of these documents into this response pursuant to

9 Federal Rule of Civil Procedure 33(d) is not intended to be and shall not be considered in any way

10 a waiver of the confidentiality with which such documents have been designated.

11

12 Dated:  December 24, 2007

13                                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

14

15                            By    _____

16                                              AMAR L. THAKUR
                                            MAURICIO A. FLORES
17                                               JON E. MAKI
                                            NATHANIEL BRUNO
18
                                            Attorneys for
19                                    QUANTUM CORPORATION

20

21

22

23

24

25

26

27

28

-22-

QUANTUM'S FIRST SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

VERIFICATION

I have read the foregoing **QUANTUM CORPORATION'S FIRST SET OF SUPPLEMENTAL RESPONSES TO RIVERBED TECHNOLOGY INC.'S FIRST SET OF INTERROGATORIES** and know its contents.

☐   I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☒   I am the Vice President of Business Development & Technology Partnerships at Quantum Corporation, a party to this action, and am authorized to make this verification for and on its behalf, and I make this verification for that reason.  ☒ I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.  ☐ The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

☐   I am one of the attorneys for Quantum Corporation, a party to this action.  Such party is absent from the county where such attorneys have their offices, and I make this verification for and on behalf of that party for that reason.  I am informed and believe and on that ground allege that the matters stated in the foregoing document are true.

Executed on December 24, 2007, at the city of _____Seattle_____, in the state of ____WA____.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Jonathan Otis
Print Name                                                    Signature

-23-