# **EXHIBIT C**



Suite 200 | 12275 El Camino Real | San Diego, CA 92130-2006
858-720-8900 *office* | 858-509-3691 *fax* | *www.sheppardmullin.com*

Writer's Direct Line: 858-720-8956
mflores@sheppardmullin.com
Our File Number: 16HC-132982

December 27, 2007

Todd Briggs, Esq.
Quinn Emanuel LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Direct: (650) 801-5020
Fax: (650) 801-5100

Re:   *Quantum Corporation v. Riverbed Technology, Inc*, C07-04161-WHA –
      Riverbed's Inadequate Responses to Quantum's First Set of Interrogatories
      (Nos. 1 through 17)

Dear Mr. Briggs:

Quantum served its first set of 17 interrogatories on November 21, 2007. The responses electronically served by Riverbed on December 24, 2007 are wholly inadequate. Indeed, the majority of its responses completely refuse to provide any of the information requested. Riverbed's responses were not even verified. We expect that Riverbed will provide a verification immediately and will promptly remedy the deficiencies discussed below by serving supplemental verified responses. I understand that you spoke with Amar Thakur on the phone today and agreed to advise us on Monday when Quantum will be able to supplement its responses to Interrogatories 1 thought 6, 9 and 10. Our expectation is that you will be able to serve verified supplemental responses on or before January 4, 2008, one week from the date of this letter. However, we will await your call before setting a firm deadline.

**Interrogatories Nos. 1 through 6, 9 and 10**: Riverbed refused to provide any response whatsoever to these interrogatories on the ground that, in Riverbed's view, Quantum had not yet complied with Patent L.R. 3-1. As support for its position, Riverbed cited *NetworkCatching Tech, LLC v. Novell Inc.*, 2002 WL 32126128 (N.D. Cal. 2002). However, that decision does not by any stretch of the imagination support a unilateral refusal by a party to respond to proper discovery. On the contrary, that decision emphasizes that it is the province of the Court alone to make decisions about the adequacy of compliance with Local Rules. In *NetworkCatching*, the Court decided to stay discovery after the Court found non-compliance with Patent L.R. 3-1. In this instance, Riverbed has taken on the power reserved for the Court, made its own determination of non-compliance, and issued its own stay of discovery, at least

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs, Esq.
December 27, 2007
Page 2

with respect to certain interrogatories it does not want to answer. Such a usurpation of judicial power is utterly without justification.

Please be advised that Quantum reserves the right to argue that Riverbed has waived its objections to these interrogatories.

**Interrogatory No. 7**: Riverbed has also refused to provide any information in response to Interrogatory No. 7, which asks for detail regarding the circumstances surrounding the invention of each of the claims in the '700 patent. Riverbed's refusal is based solely on lack of relevance. However, the '249 patent, which Riverbed accuses Quantum of infringing, is a continuation of a series of applications going back to United States Application No. 10/285,330 filed on Oct. 30, 2002, which issued as the '700 patent. This information, which indicates that the '700 patent provides the priority date for the '249 patent, appears on the face of Riverbed's '249 patent.

Thus, it is beyond dispute that Riverbed was fully aware that the '700 patent provides the priority date which servers to demarcate the prior art applicable to the validity of the '249 patent. What could possibly be more directly relevant than the dates and circumstances of conception? In addition, the requested information is well calculated to lead to the discovery of admissible evidence relating to the development of the Riverbed technology that infringes Quantum's '810 patent. There is no conceivable shred of justification for Riverbed's refusal to provide the information requested by this interrogatory. Indeed, Riverbed itself has sought discovery into all "Related Riverbed Patent(s)" (*see e.g.* Riverbed's Second Set of Interrogatories), which Riverbed expressly defined to include the '700 patent. These facts support an inference that Riverbed knew full well at the time of its response that the information sought relating to the '700 patent is within the proper scope of discovery in this case.

Please be advised that Quantum reserves the right to argue that Riverbed has waived its objection to this interrogatory.

**Interrogatory No. 8**: This interrogatory asks Riverbed to describe "in detail the circumstances surrounding your initial awareness of the '810 PATENT, INCLUDING the date you first became aware thereof, how you became aware, and the PERSONS having knowledge of the facts RELATED TO YOUR initial awareness." In response, Riverbed stated only that it "became aware of the '810 patent in late 2003 when Andy Sparkes of Hewlett-Packard informed Steve McCanne of the patent. Hewlett-Packard and Riverbed were involved in business discussions at that time." Riverbed provided no information regarding the circumstances of that incident, such as whether it was an in-person discussion or a phone or email contact, what was said by whom, or even who else was present. There is no explanation of the nature of the referenced business discussions or why the '810 patent was relevant to those discussions. Riverbed also failed to identify the persons having knowledge of these circumstances.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs, Esq.
December 27, 2007
Page 3

        **Interrogatory No. 12:** This interrogatory asks Riverbed to describe "in detail every instance in which YOU have contacted any third party regarding the '810 PATENT, INCLUDING the name and address of each third party, the circumstances surrounding the contact, the reasons for the contact, and the results of the contact." Riverbed's vagueness objections are applied to simple, straightforward English phrases and lack merit. Quantum requests an explanation as to whether, and if so how, these improper objections limited the information provided in response to this interrogatory. In addition, Riverbed failed to provide detailed information with respect to these contacts, stating only that its investigation is continuing and that it will supplement its responses. Riverbed did not give the reason for the contact, the address of the third party contacted or the results of the contact. Riverbed's response refers to its involvement in "business discussions," but no detail is provided as to the nature of the business discussed or how it related to the '810 patent. Finally, there is an obvious discrepancy between Riverbed's statement that it had knowledge of the '810 patent in March of 2003 based on a contact with Network Appliance and its response to Interrogatory No. 8, where Riverbed stated that it first became aware of the '810 patent in "late 2003." In addition to providing all of the information requested by Interrogatory No. 12, Quantum expects that Riverbed's verified supplemental responses will clear up this discrepancy.

        **Interrogatory No. 15:** This interrogatory asks for all facts upon which Riverbed bases its affirmative defense that Quantum lacks standing to enforce the '810 Patent. Subsequent to Riverbed's response, Quantum produced additional documentation relating to its standing. Please advise us when Riverbed will supplement its response to this interrogatory in light of Quantum's additional production on this issue.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs. Esq.
December 27, 2007
Page 4

      We are still in the process of reviewing your responses to Quantum's first set of interrogatories and will advise you of any additional deficiencies that need to be cured.

Very truly yours,

*Mauricio A. Flores*

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:6MAF1\400617667.3