AMAR L. THAKUR, Cal. Bar No. 194025
MAURICIO A. FLORES, Cal. Bar No. 93304
JON E. MAKI, Cal Bar No. 199958
SHEPPARD MULLIN RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
12275 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: (858) 720-8900
Facsimile: (858) 509-3691
Email: athakur@sheppardmullin.com
       mflores@sheppardmullin.com
       jmaki@sheppardmullin.com

NATHANIEL BRUNO, Cal. Bar No. 228118
SHEPPARD MULLIN RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone: 415-434-2984
Facsimile: 415-434-6095
Electronic mail: nbruno@sheppardmullin.com

Attorneys for Plaintiff
QUANTUM CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| QUANTUM CORPORATION, a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>RIVERBED TECHNOLOGY, INC.,<br><br>　　　　　　　Defendant.<br><br>RIVERBED TECHNOLOGY, INC., a Delaware corporation,<br><br>　　　　　　　Counterclaimant,<br>　　v.<br><br>QUANTUM CORPORATION, a Delaware corporation,<br><br>　　　　　　　Counterdefendant. | Case No. C 07-04161 WHA<br><br>The Hon. William H. Alsup<br>United States District Judge<br><br>QUANTUM CORPORATION'S OPPOSITION TO DEFENDANT RIVERBED'S MOTION TO DISMISS QUANTUM'S PATENT INFRINGEMENT CLAIMS UNDER U.S. PATENT NO. 5,990,810 FOR LACK OF SUBJECT MATTER JURISDICTION.<br><br>Hearing Date: 1/31/08<br>Hearing Time: 8:00 a.m.<br>Ctrm. 9, 19th Floor<br><br>Complaint Filed: August 14, 2007<br>Trial Date: February 2, 2009 |

# I.

# INTRODUCTION

Defendant Riverbed moves to dismiss for lack of subject matter jurisdiction on the ground that licensor of the exclusive license upon which Quantum relies for standing had no right to issue that license, which is therefore a nullity.

Riverbed is wrong. Quantum's exclusive license was executed by A.C.N. 120 "**and its subsidiaries,**" including Rocksoft Pty. Limited on August 13, 2007, the day before the Complaint in this action was filed. (*See* Declaration of Todd M. Briggs [Docket No. 36] filed in support of Riverbed's Motion ("Briggs Decl."), Ex. D at QU000220.) Rocksoft Pty. Limited ("Rocksoft") had title to the '810 Patent at that time. (*See e.g.* Declaration of Nathaniel Bruno In Support of Quantum's Opposition ("Bruno Decl."), Ex. 1; Declaration of Shawn Hall In Support of Quantum's Opposition ("Hall Decl."), Ex. 9.) At the time of the exclusive license to Quantum, Rocksoft was (and still is) a wholly-owned subsidiary of A.C.N. 120 786 012 Pty. Ltd. ("A.C.N. 120"). Thus, there was a direct transfer of exclusive rights in the '810 Patent from Rocksoft (as a licensor-subsidiary of A.C.N 120) to Quantum.

# II.

# STATEMENT OF FACTS

### A.  Background

Quantum's exclusive license to the '810 Patent is attached as Exhibit D to the Briggs Declaration [Docket No. 36]. The license was issued to Quantum by A.C.N. 120 786 012 Pty. Ltd. ("A.C.N. 120") one day prior to the filing of this action. (*See* Briggs Decl., Ex. D.)

Riverbed does not dispute that, if effective, Quantum's exclusive license from A.C.N. 120 transfers rights sufficient to support its standing to bring this action. Instead, Riverbed challenges the ability of A.C.N. 120 to issue the license in the first place. Riverbed contends that there is no evidence that A.C.N. 120 had obtained rights in the '810 Patent from the assignee, Rocksoft Limited. Specifically, Riverbed asserts that the "chain of title [to the '810 Patent] appeared to terminate at Rocksoft – there was nothing linking Rocksoft to A.C.N. 120."

-1-

(Riverbed's Memorandum of Points and Authorities in Support of its Motion to Dismiss [Docket No. 35] ("Riverbed's Mem."), p. 3.)

When Riverbed brought this concern to Quantum's attention, Quantum supplemented its responses to Riverbed's Interrogatory No. 8 (concerning Quantum's standing) on December 24, 2007 to state that A.C.N. 120 owns Rocksoft Pty. Ltd. as a wholly-owned subsidiary and that Quantum is the parent company to both A.C.N. 120 and Rocksoft Pty. Ltd.[1] (Riverbed's Mem., p 3, citing Briggs Decl., Ex. G at 20-22.)  At the same time, Quantum produced an assignment, also dated December 24, 2007 (*see* Briggs Decl., Ex. H), "that showed an assignment of the entire 'right, title and interest'" in the '810 Patent from Rocksoft to A.C.N. 120. (Riverbed's Mem., p. 4.)  Riverbed asserts that the execution of this assignment constitutes an implicit admission that A.C.N. 120 had previously lacked rights to the '810 Patent.  (Riverbed's Mem., p. 4.)

Riverbed could not be more wrong.  In its haste to move to dismiss and stay discovery of its infringement of the '810 Patent, Riverbed failed take into account the plain language of A.C.N. 120's exclusive license to Quantum.  The first paragraph of that license states that it is issued to Quantum by A.C.N. 120 "and its subsidiaries," which the license collectively defines as "Licensor."  (Briggs Decl., Ex. D at QU000220.)  Hence, all references to the "Licensor" in the license include all of the subsidiaries of A.C.N. 120.  As Quantum has disclosed to Riverbed (*see e.g.* Quantum's first supplemental response to Riverbed's Interrogatory No. 8 (Briggs Decl., Ex. G at 20-22)), and as stated in Riverbed's own moving papers (Riverbed's Mem., p. 2.), Rocksoft is a wholly-owned subsidiary of A.C.N. 120.  (*See also* Hall Decl., Exs. 2-5.)  The license therefore constitutes a direct transfer of rights from Rocksoft to Quantum.

The December 24, 2007 assignment (Briggs Decl., Ex. H) which Riverbed seeks to characterize as an admission is no such thing.  The assignment was designed to show a clear chain

---

[1] As explained in Quantum's first supplemental response to Riverbed's Interrogatory No. 8, Rocksoft Limited has changed its name to Rocksoft Pty. Ltd. (*i.e.*, Rocksoft Pty. Limited). (*See* Briggs Decl., Ex. G.)  That name change occurred on February 28, 2007, after A.C.N. 120 acquired Rocksoft Limited.  (*See* Hall Decl., Ex. 1; *see also* Section II, B herein.)

of title on record in the United States Patent and Trademark Office so as to avoid any questions in the future by parties who have not had the benefit of reviewing the terms of Quantum's exclusive license. Quantum does not rely upon that assignment to establish its standing in this litigation, but produced it in order to fully comply with Riverbed's discovery requests inasmuch as that document bears on Quantum's present rights.

**B.     Chronology Relating to Chain of Title**

1.     Rocksoft Limited acquired the '810 Patent by means of an assignment from Trustus Pty, Ltd. on November 1, 2004, which had previously acquired it by means of an assignment from the inventor, Ross Williams. (*See* Bruno Decl. Ex. 1; Hall Decl., Ex. 9.)

2.     On July 18, 2006, A.C.N. 120 was formed by Advanced Digital Information Corporation ("ADIC") and registered as a proprietary company. (*See* Hall Decl., ¶ 6 and Exs. 5-6.)

3.     On July 25, 2006, A.C.N. 120 acquired all the shares of Rocksoft Limited, such that Rocksoft Limited became a wholly-owned subsidiary of A.C.N. 120. (*See* Hall Decl., Exs. 2-4; Briggs Decl., Ex. G at 20-22.)

4.     On August 22, 2006, ADIC merged with Agate Acquisition Corp. (*See* Hall Decl., Exs. 7-8.)

5.     Also, on August 22, 2006, Quantum acquired the merged ADIC/Agate company, which had survived as ADIC (thereby also acquiring A.C.N. 120, and with it, Rocksoft Limited). (*See id.*)

6.     On February 28, 2007, Rocksoft Limited was converted to Rocksoft Pty. Limited. (Hall Decl., Ex. 1.)

7.     On August 13, 2007, A.C.N. 120 and its subsidiaries (including Rocksoft, now named Rocksoft Pty. Limited) granted Quantum an exclusive license in the '810 Patent, effective as of August 22, 2006. (Briggs Decl., Ex. D.)

Thus, Quantum holds exclusive license rights in the '810 Patent by means of that written exclusive license executed on August 13, 2007 (Briggs Decl., Ex. D), but also as the

-3-

ultimate parent company to Rocksoft Pty. Limited and A.C.N. 120 through its acquisition of ADIC.

## III.

## ARGUMENT

Riverbed's Motion fails for two independent reasons:

First, Quantum has held the exclusive rights to the '810 Patent since before this lawsuit was filed. Riverbed's motion fails to take into account the plain language of the license, which directly transfers exclusives rights from Rocksoft, the undisputed assignee, to Quantum. (*See* Briggs Decl., Ex. D at QU000220.). There is no "gap" in the chain of rights culminating in Quantum's exclusive license.

Second, even assuming *arguendo* such a gap existed when the complaint was filed, Quantum had sustained a constitutional injury-in-fact at the time this complaint was filed as a result of Riverbed's infringement. This constitutional injury arose from the fact that: (1) Quantum was (and still is) the parent of A.C.N. 120, its wholly-owned subsidiary (s*ee* Hall Decl., Exs. 5-8; Quantum's first supplemental response to Riverbed's Interrogatory No. 8 (Briggs Decl., Ex. G at 20-22)); and (2) A.C.N. 120 was (and still is) the parent of Rocksoft, its wholly-owned subsidiary (*see* Hall Decl., Exs. 1-5). Hence, Quantum had exclusive control of the '810 Patent. Under *Atmel Corporation v. Authentec*., 490 F. Supp. 2d 1052 (N.D. Cal. 2007), and the authorities cited therein, Quantum should therefore be allowed to remedy any defects in its "prudential" standing after the complaint has been filed.

**A.     Quantum is the Direct Licensee of Rocksoft**

Quantum's exclusive license expressly defines the licensor as A.C.N. 120 "and its subsidiaries," which included Rocksoft. The inclusion of Rocksoft, as a subsidiary of A.C.N. 120, within the definition of the "Licensor" to Quantum ends all doubt about Quantum's rights.

-4-

Rocksoft , whose rights of ownership are undisputed, directly transferred exclusive rights to Quantum. (*See* Bruno Decl., Ex. 1; Hall Decl. Exs. 1-5; Briggs Decl., Ex. D at QU000220.)[2]

Riverbed does not, as it cannot, deny that Quantum's exclusive license grants it all substantial rights in the '810 Patent. Accordingly, Quantum has standing to bring this action. *See Atmel,* 490 F. Supp. 2d at 1053-1054; *Enzo APA & Son, Inc. v. Geapag AG*, 134 F.3d 1090, 1093 (Fed. Cir. 1998); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875-876 (Fed. Cir. 1991).

**B.      Even Absent an Exclusive License, Quantum Has Incurred a Constitutional Injury-In-Fact that Entitles it to Remedy a Defect in Prudential Standing after the Complaint has Been Filed**

As explained in *Atmel,* analysis of standing has two distinct components. The first is the "constitutional" limit on standing imposed by Article III, Section 2, of the United States Constitution which restricts federal court adjudication to "cases" and "controversies." That constitutional limit on standing is satisfied only where the plaintiff: (1) "suffers a concrete, particularized injury which is actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision." *Atmel,* 490 F. Supp. 2d at 1053.

The second component of standing consists of "prudential" limitations which the courts have imposed upon themselves. In actions for patent infringement, an exclusive licensee with less than all substantial rights in the patent has "constitutional" standing, but lacks "prudential" standing required to prosecute an action for patent infringement. In such circumstances, the licensee is allowed to cure the defect in prudential standing after the case has

---

[2] Quantum's verified responses to interrogatories state that A.C.N. 120 owns Rocksoft Pty. Ltd as a wholly-owned subsidiary. (Briggs Decl., Ex. G at 20-22; *see also* Hall Decl., Exs. 1-5 and Section II, B, *supra*.) Read in context, this response clearly applies to the time at which Quantum's exclusive license was executed prior to the filing of this action. (Riverbed's Mem., p 3, citing Briggs Decl., Ex. G at 20-22.) However, to remove any doubt on this point, Quantum has produced the Master Share Transfer Form for South Australia and related documents showing that all of the shares of Rocksoft were purchased by A.C.N. 120 on July 25, 2006. (Hall Decl., Exs. 2-4.)

been filed by adding the patent owner "in the course of the litigation." *Propat Int'l Corp v. RPost US, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007); *Mentor H/S , Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001); *see also Atmel* 490 F. Supp. 2d at 1053-1054.

Thus, the Federal Circuit rule on standing has two prongs. First, a lack of "constitutional standing" cannot be cured after the action is filed. Second, a plaintiff with constitutional standing but lacking prudential standing is able to cure that defect while the action is pending.

It is the second prong of the foregoing rule, applied in *Atmel*, that governs this case. In *Atmel*, plaintiff Atmel Corporation was neither the owner nor the exclusive licensee of the patent at issue. The rights to the patent were held by Atmel Switzerland, a wholly-owned subsidiary of Atmel Corporation. The *Atmel* Court found that because Atmel Corporation wholly owned the company that owned the patent it was clear from the evidence that, as the parent, Atmel Corporation "has always had the implicit right to make, use and sell the patented invention and to control the enforcement of patent rights." *Atmel,* 490 F. Supp. 2d at 1055. Accordingly, the *Atmel* Court held that plaintiff Atmel Corporation "had constitutional standing as an exclusive licensee at the inception of this case and cured the defect in prudential standing when it joined Atmel Switzerland, the patent owner." *Id.*

Here, it is undisputed that Rocksoft is a wholly-owned subsidiary of A.C.N. 120 and that A.C.N. 120, in turn, is wholly-owned by Quantum. (*See* Hall Decl., Exs. 1-8; Briggs Decl. Ex. G at 20-22.) Therefore, the evidence establishes that as a practical matter Quantum had the right to make use and sell the inventions claimed in the '810 Patent and had exclusive control over the enforcement of that patent. Riverbed's infringement of that patent inflicted a particularized, concrete injury on Quantum as the effective owner of that patent. There is a direct relationship between that injury and Riverbed's infringement that will likely be redressed by a decision favorable to Quantum in this case. As in *Atmel*, these facts suffice to provide Quantum with constitutional standing even if it lacks a written exclusive license (which it does not lack).

Riverbed contends that holding in *Atmel* is erroneous because it conflicts with *Enzo APA & Son, Inc. v. Geapag AG*, 134 F.3d 1090 (Fed. Cir. 1998). In *Enzo*, the issue at bar was whether the plaintiff had standing to bring the action absent a written license granting it substantially all rights in the patent. In other words, the issue was whether the plaintiff had prudential standing. The Court held that an oral agreement would not suffice as a basis for prudential standing. The Court also held that a subsequent written agreement could not retroactively cure the initial defect. In no part of its decision did the Court address the controlling issue in this case and in *Atmel* -- whether the plaintiff had constitutional standing at the outset of the action.

Further, Riverbed's contention that *Atmel* conflicts with *Enzo* is based on a misreading of the *Atmel* holding. Riverbed contends that *Atmel* held that the "parent company was found to have standing as an exclusive licensee solely though its relationship with the true patent owner, its subsidiary." (Riverbed's Mem., p. 6, Fn. 5.) The *Atmel* court held no such thing. To the contrary, its entire analysis rested on the premise that plaintiff Atmel Corporation lacked prudential standing and could not prosecute the action itself. The *Atmel* court merely held that as a parent company Atmel Corporation incurred constitutional injury and could therefore cure any defect in prudential standing during the pendency of the action.

The other cases relied upon by Riverbed are similarly inapposite. P*aradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 (Fed. Cir. 2003) involved the dismissal of a patent infringement action where the plaintiff corporation had been administratively dissolved at the time the action was filed. Accordingly, the Court held that the plaintiff lacked constitutional injury at the time the action was filed and could not remedy this defect during the pendency of the action. This holding has no applicability to this action, where under *Atmel* and the authorities cited therein Quantum suffered constitutional injury-in-fact by virtue of its exclusive ownership and control of its wholly-owned subsidiary with formal title to the patent-in-suit.

*Gaia Technologies Techs., Inc. v. Reconversion Techs., Inc*., 93 F.3d 774 (Fed. Cir. 2006), *amended by* 104 F.3d 1296 (Fed. Cir. 1996) is also of no help to Riverbed. In *Gaia*, the

-7-

-8-

1  Court found that the plaintiff did not obtain any rights to the patent-in-suit until after the action
2  was filed.  The plaintiff had no relationship, much less a parent relationship, with the company
3  that held the patent rights at the time of suit.  Nor was there any other basis for concluding that the
4  plaintiff had incurred a constitutional injury-in-fact at that time.  Here, as in *Atmel*, such a basis
5  clearly does exist.
6       In short, Riverbed has failed to cite, and our research has failed to reveal, even one
7  case in which the parent company of a wholly-owned subsidiary with title to the patent-in-suit was
8  found to lack constitutional injury and denied the opportunity to remedy any defect in prudential
9  standing during the pendency of the action.  Riverbed's motion to dismiss is unsupported by
10 pertinent authority.

## IV.

## CONCLUSION

For the foregoing reasons, Riverbed's motion to dismiss should be denied. In the event that the Court finds Quantum lacks standing, it should be given leave to correct that defect by joining Rocksoft Pty. Limited as an additional plaintiff.

Dated: January 17, 2008    SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: /s/ Nathaniel Bruno
AMAR L. THAKUR
MAURICIO A. FLORES
JON E. MAKI
12275 El Camino Real, Suite 200
San Diego, CA 92130
Telephone:   (858) 720-8900
Facsimile:    (858) 509-3691

Attorneys for Plaintiff
QUANTUM CORPORATION

SHEPPARD MULLIN RICHTER & HAMPTON LLP

NATHANIEL BRUNO
Four Embarcadero Center, 17th Floor
San Francisco, CA  94111-4106
Telephone:  415.434.9100
Facsimile:  415.434.3947

Attorneys for Plaintiff
QUANTUM CORPORATION