EXHIBIT C

AMAR L. THAKUR, CAL. BAR NO. 194025
MAURICIO A. FLORES, Cal. Bar No. 93304
JON E. MAKI, Cal Bar No. 199958
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
12275 El Camino Real, Suite 200
San Diego, California 92130
Telephone:    858-720-8900
Facsimile:    858-509-3691
Email: athakur@sheppardmullin.com

NATHANIEL BRUNO, Cal. Bar No. 228118
SHEPPARD MULLIN RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
Telephone:    415-434-9100
Facsimile:    415-434-3947
Email: nbruno@sheppardmullin.com

Attorneys for
QUANTUM CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| QUANTUM CORPORATION, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RIVERBED TECHNOLOGY, INC.,<br><br>Defendant.<br><br>RIVERBED TECHNOLOGY, INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>QUANTUM CORPORATION, a Delaware corporation,<br>Counterdefendant. | Case No. C 07-04161 WHA<br><br>The Hon. William H. Alsup<br><br>QUANTUM CORPORATION'S SECOND SET OF SUPPLEMENTAL RESPONSES TO RIVERBED TECHNOLOGY INC.'S FIRST SET OF INTERROGATORIES<br><br>**[THIS DOCUMENT CONTAINS INFORMATION DESIGNATED "CONFIDENTIAL"]** |

-1-

PROPOUNDING PARTY:        RIVERBED TECHNOLOGY, INC.

RESPONDING PARTY:         QUANTUM CORPORATION

SET NO.:                  ONE (1)


Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterdefendant Quantum Corporation ("Plaintiff" or "Quantum") responds in supplemental fashion as follows to Defendant and Counterclaimant Riverbed Technology, Inc.'s ("Defendant" or "Riverbed") First Set of Interrogatories (the "Interrogatories"):

1.      Plaintiff's response to the Interrogatories is made to the best of its current knowledge, information and belief.  Said response is at all times subject to such additional or different information that discovery or further investigation may disclose and, while based on the present state of Plaintiff's recollection, is subject to such refreshing of recollection, and such additional knowledge of facts, as may result from further discovery and/or investigation.  Plaintiff reserves the right to make any use of, or to introduce at any hearing and at trial, information and/or documents responsive to the Interrogatories but discovered subsequent to the date of this response, including, but not limited to, any such information or documents obtained in discovery herein.

2.      Plaintiff reserves all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding or in trial of this or any other action for any purpose whatsoever of its responses herein and any document or thing identified or provided in response to the Interrogatories.

3.      Plaintiff reserves the right to object on any ground at any time to such other or supplemental interrogatories as Defendant may at any time propound involving the subject matter of the Interrogatories.

### **GENERAL OBJECTIONS**

1.      Quantum objects to these interrogatories on the grounds and to the extent that they seek information or documents protected by the attorney client privilege, work product doctrine and/or any other applicable privilege or protection recognized by law.  Quantum does not intend to produce any privileged or protected information, documents, or other material and any inadvertent or unintentional disclosure shall not be deemed a waiver of any privilege or protection.

2.      Quantum objects to these interrogatories on the grounds and to the extent that they seek information or purport to impose burdens or obligations beyond the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the District Court for the Northern District of California and any orders entered in this action.

3.      Quantum objects to these interrogatories on the grounds and to the extent that they seek information or documents that are not relevant to any claim or defense of any party in this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or fall outside the scope of discoverable information under the Federal Rules of Civil Procedure, the Local Rules of the District Court for the Northern District of California and any orders entered in this action.

4.      Quantum objects to these interrogatories on the grounds and to the extent that they seek information or documents that are publicly available or are equally accessible to Defendant as to Quantum.

5.      Quantum objects to these interrogatories on the grounds and to the extent that they seek information or documents that are confidential and/or proprietary.  Quantum will provide such information and documents only after the entry of an appropriate Protective Order.

6.      Quantum objects to the introductory definitions and instructions in the Interrogatories to the extent said definitions or instructions purport to enlarge, expand or alter in any way the plain meaning and scope of any specific interrogatory on the ground that such enlargement, expansion or alteration renders said interrogatory vague, ambiguous, unintelligible, unduly broad or uncertain.  Quantum object to all definitions, instructions and interrogatories in which the phrase "referring to", "relates", "relate to", "relating to" or "evidencing" appears.  The

-3-

terms "referring to," "relates", "relate to", "relating to" and "evidencing" are overly broad, vague, ambiguous and unintelligible, would require subjective judgment on the part of Quantum and its counsel, and would require a conclusion or opinion of counsel in violation of the attorney work product doctrine.

7.    Quantum objects to the Interrogatories to the extent they purport to require Quantum to provide any answers or responses beyond those required by Rule 33 of the Federal Rules of Civil Procedure and/or any other applicable Federal or Local Rule of Civil Procedure and/or Evidence.  Quantum objects insofar as any interrogatory contains subparts, or is a compound, conjunctive or disjunctive interrogatory.

8.    Quantum objects to these interrogatories under Patent Local Rule 2-5 to the extent they are premature in light of the timetable for the disclosure of certain categories of information, as provided in the Patent Local Rules.

9.    Quantum reserves the right to object to the introduction of any information or documents provided in response to any of Defendant's interrogatories on any available grounds. Nothing herein shall be construed as an admission by Quantum regarding the admissibility or relevance of any information or document provided in response to Defendant's interrogatories.

10.    Quantum's referencing and incorporation of documents into any response below pursuant to Federal Rule of Civil Procedure 33(d) is not intended to be and shall not be considered in any way a waiver of any level of confidentiality with which any such documents have been designated.

11.    Quantum has not fully completed its investigation of the facts relating to this case, its discovery and its preparation for trial.  All responses and objections contained herein are based on such information and such documents which are presently available to and specifically known to Quantum after conducting a reasonable and diligent investigation.  It is anticipated that further discovery and independent investigation and analysis will provide additional facts, provide context to known facts and establish new factual conclusions, all of which may lead to changes in the responses set forth herein.  The following objections and responses are made without prejudice to Quantum's right to produce evidence of subsequently

-4-

discovered information or documents.  Accordingly, without assuming any obligation to do so and without waiving any objections herein, Quantum reserves the right to amend and/or supplement these responses as and when additional facts are discovered or ascertained.

12.    Each of these general objections is incorporated by reference into each of the specific responses set forth below.  The fact that any of these general objections is set forth in response to any of the discovery requests shall not be construed as a waiver of any of the other general objections set forth herein.

**QUANTUM'S SECOND SET OF SUPPLEMENTAL RESPONSES TO RIVERBED'S FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:**

For each claim of the '810 Patent, describe the circumstances surrounding the invention of the claims, including the precise date of conception, the persons involved, the date of actual or constructive reduction to practice, and the steps constituting diligence from conception to actual or constructive reduction to practice.

**RESPONSE TO INTERROGATORY NO. 1:**

Quantum further objects to this interrogatory on the ground that it is overbroad, unduly burdensome and oppressive and that it seeks information that is not relevant to the claims and defenses in the pending litigation and not reasonably calculated to lead to the discovery of admissible evidence.  Quantum further objects to this interrogatory on the ground it seeks to discover information protected by the attorney-client privilege and/or the work product doctrine. Quantum further object to this interrogatory on the ground that it contains subparts in violation of Federal Rule of Civil Procedure 33(a).  Quantum further objects to this interrogatory on the ground that it calls for a legal conclusion.

Subject to and without waiving the foregoing general and specific objections, Quantum responds as follows:

On January 27, 1992, Ross Williams submitted a newsgroup posting to the newsgroup comp.compression describing the idea of scanning through data using a fixed length window and identifying as "interesting" the window positions/content where the contents of the

window hash to a particular value.  These interesting parts of the data can then be indexed and explored in different files to find similarities.  The posting described the idea of special sequences, but did not discuss that positions associated with these sequences can be used to form the boundaries of variable-length blocklets.

On June 30, 1992, Ross Williams submitted a newsgroup posting describing a method of splitting up data so that it can be compressed in parallel but again did not discuss that positions associated with these sequences can be used to form the boundaries of variable-length blocklets.

In approximately August/September of 1994, Ross Williams attended a DECUS conference and presented a paper on cryptographic hashes, which describes the myriad uses of cryptographic hashes.  Pursuant to Federal Rule of Civil Procedure 33(d) and in further response to this interrogatory, Quantum incorporates herein by reference the document it has produced marked with control numbers QU 000001 – QU 000012 from which information responsive to this interrogatory may be derived or ascertained, specifically relating to this paper on cryptographic hashes.

Ross Williams conceived of the inventions of what later became U.S. Patent No. 5,990,810 no later than November 21, 1994, as evidenced by a letter he sent to David Farajun of Data Storage, Inc. dated November 21, 1994.  Pursuant to Federal Rule of Civil Procedure 33(d) and in further response to this interrogatory, Quantum incorporates herein by reference the document it has produced marked with control numbers QU 000627 – QU 000628 from which information responsive to this interrogatory may be derived or ascertained, specifically relating to this letter.  This document is designated "CONFIDENTIAL," and Quantum's referencing and incorporation of this document into this response pursuant to Federal Rule of Civil Procedure 33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality with which such document has been designated.

On February 15, 1995, Ross Williams prepared an initial draft of the Blocklets patent which included the core Blocklets ideas of applications including the differencing, backup, communications, and file system applications.  The first Australian provisional patent application

-6-

1  on the technology was filed February 17, 1995, thereby constructively reducing to practice the

2  claims of what later became U.S. Patent No. 5,990,810.

3         On the dates of March 11-12, 1995, Ross Williams created the first implementation

4  of Blocklets in the form of a small demonstration incremental backup program.  It was a complete

5  working program including all essential elements of Blocklet parsing, subblocks, hashes, and

6  matching, demonstrating that "Blocklets" worked.  The program implements a backup application

7  of Blocklets.  The program implements backup for backups over a network, but does not actually

8  use networking in the implementation.  The program allowed Mr. Williams to check to ensure the

9  Blocklets idea had no hidden fatal flaws and provided a demonstration program so the technology

10  could be demonstrated to other people.  The communications application was first implemented in

11  approximately 2001 in the Veracity software product.  The file system application was first

12  implemented in approximately 2002 in the BFST storage software product.

13         On April 12, 1995, a second provisional Australian patent application was filed,

14  expanding on the first.

15         Pursuant to Federal Rule of Civil Procedure 33(d) and in response to this

16  interrogatory, Quantum incorporates herein by reference the documents it has produced marked

17  with control numbers QU 000613 – QU 000660 from which information responsive to this

18  interrogatory may be derived or ascertained.  These documents are designated "CONFIDENTIAL"

19  under the Stipulated Protective Order, and Quantum's referencing and incorporation of these

20  documents into this response pursuant to Federal Rule of Civil Procedure 33(d) is not intended to

21  be and shall not be considered in any way a waiver of the confidentiality with which such

22  documents have been designated.

23  **INTERROGATORY NO. 2:**

24         For each claim of the '810 Patent, describe all investigations made by or on behalf

25  of Quantum prior to the filing of the Complaint regarding whether any claim of the '810 Patent is

26  infringed by any Riverbed product, including identifying the persons involved in the

27  investigations, the persons to whom reports were made, the persons involved in the approval of the

28  action, the date of the investigation, the items considered, when and where such items were

-7-

obtained, the conclusion reached in the investigations, and all documents referring to or describing such investigations.

**RESPONSE TO INTERROGATORY NO. 2:**

Quantum further objects to this interrogatory on the ground it seeks to discover information protected by the attorney-client privilege and/or the work product doctrine. Quantum further object to this interrogatory on the ground it contains subparts in violation of Federal Rule of Civil Procedure 33(a). Quantum further objects to this interrogatory on the grounds that it is vague and ambiguous in that it seeks descriptions of "all investigations" of infringement. Quantum further objects to this interrogatory on the ground that it is overbroad, unduly burdensome and oppressive and that it seeks information that is not relevant to the claims and defenses in the pending litigation and not reasonably calculated to lead to the discovery of admissible evidence.

Based on and without waiving the foregoing general and specific objections, Quantum will not provide any information in response to this interrogatory.

**INTERROGATORY NO. 3:**

Identify every instance where Quantum has contacted any third party regarding the '810 patent, including the name and address of each third party and the circumstances surrounding the contact.

**RESPONSE TO INTERROGATORY NO. 3:**

Quantum further objects to this interrogatory on the grounds that it is overbroad, unduly burdensome and oppressive and that it seeks information that is confidential or not relevant to the claims and defenses in the pending litigation and not reasonably calculated to lead to the discovery of admissible evidence. Quantum further objects to this interrogatory on the ground it seeks to discover information protected by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving the foregoing general and specific objections, Quantum responds as follows:

-8-

1    In June 2005, Rocksoft CEO Jim Johnson wrote a letter to Gerald Barnett at U.C.

2  Santa Cruz, giving the Deep Store program permission to use U.S. Pat No. 5,990,810 for non-

3  commercial academic and educational research activity.  Pursuant to Federal Rule of Civil

4  Procedure 33(d) and in further response to this interrogatory, Quantum incorporates herein by

5  reference the document produced herewith marked with control numbers QU 000661 – QU

6  000662 from which information responsive to this interrogatory may be derived or ascertained,

7  specifically relating to this letter.

8

9    **The following companies were contacted about '810 patent licensing:**

10

11    In of May 2003, Rocksoft contacted Hewlett Packard Company ("HP"), Gerard

12  Lameiro, Director, New Business Ventures, 3404 East Harmony Road, Ft. Collins, CO 80528, to

13  discuss the '810 patent.  Discussions ensued, and Rocksoft was later acquired by ADIC on or

14  about August 1, 2006.  In March of 2006, HP approached ADIC to discuss patent licensing related

15  to automation products.  Within these discussions HP disclosed it had active discussions with

16  Rocksoft.  These discussions included Tao Zhang (HP IP licensing), Les Murray (HP Corporate

17  Counsel), Bob Wilson (HP VP Nearline Storage), Chuck Stonecipher (ADIC EVP), and Jonathan

18  Otis (ADIC Senior VP Corporate Development).  These discussions were taken over by Quantum

19  and resulted in the listed cross license between Quantum and HP.  ADIC was also introduced in

20  April of 2006 to Mark Watkins (HP StorageWorks Chief Technical Officer) by Rocksoft, and a

21  software license with an appropriate patent license was discussed.  Jonathan Otis (currently of

22  Quantum but then of ADIC) initiated continuation discussions with HP around that time for

23  software to be used in HP low-end solutions, subject to a nondisclosure agreement.  HP postponed

24  discussions pending the ongoing ADIC/HP patent cross-license discussions.  Other parties to those

25  discussions at HP were Mike Padavano and Tracy Lewis.  Quantum acquired ADIC in or about

26  August 2006 and continued patent cross-license discussions with HP.  In the Spring of 2007,

27  Quantum entered into supply, joint development and cross licensing discussions with HP.

28  Pursuant to Federal Rule of Civil Procedure 33(d) and in further response to this interrogatory,

-9-

1   Quantum incorporates herein by reference the documents it has produced marked with control

2   numbers QU 000043 – QU 000159 from which further information responsive to this

3   interrogatory may be derived or ascertained.  These documents were designated "Confidential –

4   Outside Attorneys' Eyes Only" but Quantum has re-designated them "HIGHLY CONFIDENTIAL

5   – ATTORNEYS' EYES ONLY" under the Stipulated Protective Order, and Quantum's referencing

6   and incorporation of these documents into this response pursuant to Federal Rule of Civil

7   Procedure 33(d) is not intended to be and shall not be considered in any way a waiver of the

8   confidentiality with which such documents have been designated.  Graham Hogg (HP Business

9   Development), Ben Wilkenson (HP Tape GM), Melanie Vinson (HP General Counsel) and Jeff

10  DiCorpo (HP CTO) were participants from HP.  Rob Clark, James Hall, and Shawn Hall

11  represented Quantum.  Rick Belluzzo (Quantum CEO) and Bob Wilson (HP VP Nearline Storage)

12  also discussed the agreement.

13

14          In November 2006, Quantum contacted Data Domain, Inc., Frank Slootman, CEO,

15  2300 Central Expressway Santa Clara, CA 95050 to open patent licensing discussions.  Data

16  Domain participants over a series of meetings were Frank Slootman (CEO), Hugo Patterson

17  (Architect), Mike Scarpelli (CFO) and Robert Specker (Counsel).  Data Domain lawyers were also

18  involved at certain times.  Quantum participants were Jonathan Otis, Rod Wideman, James Hall,

19  Shawn Hall, and Jon Gacek.  Discussions resulted in a cross-license agreement which has been

20  produced marked with control numbers QU 000034 – QU 000042 and is incorporated herein by

21  reference as a document from which information responsive to this interrogatory may be derived

22  or ascertained pursuant to Federal Rule of Civil Procedure 33(d).  This document was designated

23  "Confidential – Outside Attorneys' Eyes Only" but Quantum has re-designated it

24  "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

25  incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

26  33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

27  with which such documents have been designated.  Quantum designates this document

28

QUANTUM'S SECOND SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1  "CONFIDENTIAL" in view of contractual obligations with Data Domain regarding its

2  confidentiality, but notes that the document has been filed in an S-1 by Data Domain.

3

4          In November 2006, Quantum contacted Avamar Technologies, Inc., Ed Walsh,

5  CEO, 135 Technology Drive Suite 100, Irvine, CA 92618 to open patent licensing discussions.

6  There was no response by or discussions with Avamar because it was subsequently acquired by

7  EMC.

8

9          In November 2006, Quantum contacted EMC, Michael Cody, 176 South Street,

10  Hopkinton, MA 07148 to open patent licensing discussions.  The initial contact was a call from

11  Jon Gacek of Quantum to Michael Cody about the upcoming acquisition of  Avamar by EMC.

12  They deferred discussions indefinitely due to ongoing business activity between EMC and ADIC,

13  which has now been acquired by Quantum.  EMC and Quantum continue to hold business and

14  technical discussions about Quantum products incorporating disk-to-disk-to-tape technologies.

15

16          In February of 2007, Quantum contacted Riverbed Technology, Inc., Jerry

17  Kennely, CEO, 199 Fremont Street, San Francisco, CA 94105 to open patent licensing

18  discussions.  Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

19  response to this interrogatory, Quantum incorporates herein by reference the documents it has

20  produced marked with control numbers QU 000202 – QU 000213 from which information

21  responsive to this interrogatory may be derived or ascertained.  These documents were designated

22  "Confidential – Outside Attorneys' Eyes Only" but Quantum has re-designated them

23  "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

24  incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

25  33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

26  with which such documents have been designated.

27

28

QUANTUM'S SECOND SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1         **The following companies have also been contacted about reselling software**

2 **which embodies the '810 patent with the points of first contact provided:**

3

4         **By Rocksoft:**

5         In 2005, Rocksoft approached Quantum about licensing software.  The discussions

6 escalated to acquisition talks very quickly.  These discussions were led by Shane Jackson

7 (Quantum's Director of Product Management, who is no longer at Quantum).  Quantum took a

8 close engineering look at Blocklets.  Acquisition discussions were halted when price differences

9 could not be reconciled at that time.  There were no patent licensing discussions.

10         Other contacts by Rocksoft regarding software include:

11         Symantec Corporation, Steve Fairbanks, 20330 Stevens Creek, Cupertino, CA

12 95104;

13         Quantum Corporation, Shane Jackson, 1650 Technology Drive, #800, San Jose, CA

14 95110;

15         EDS Information Services LLC., Frank Cermak, 5400 Legacy Drive, Plano, TX

16 75024;

17         Computer Associates International, Inc., Anders Lofgren, One CA Plaza, Islandia,

18 NY 11749;

19         EMC Corporation, Jerry Cotter, 32 Coslin Drive, Southboro, MA 01772;

20         Advanced Digital Information Corporation, Jonathan Otis, 11431 Willows Rd, NE,

21 Redmond, WA 98052;

22         Veritas, Paul DiNardo, 350 Ellis Street, Mountain View, CA 94043;

23         Network Appliance, Paul O'Farrell, 495 East Java Drive, Sunnyvale, CA 94089;

24         Percept, Brian Cleveland, no address recorded;

25         FalconStor Software, Inc., Seth Oxenhorn, 2 Huntington Quad, Mellville, NY

26 11747;

27         EDI Ltd. G.E. Schmidt, 18 Celina Ave, #20, Nachua NH 03063; and

28         Adaptec, Victor Jipson, 691 South Milpitas Blvd., Milpitas, CA 95035.

-12-

1    Microsoft, Eric Rosencrantz, 1 Microsoft Way, Redmond, WA 98052;

2    Copan Systems, Dave Davenport, CEO, 1900 Pike Road, Longmont, CO 80501;

3    Acopia, Mike Fahey, 41 Wellman Street, Lowell, MA 01851;

4    StorageSwitch, LLC, PO Box 448, Boulder, CO 80306;

5    Agami, Craig Stevens, 1269 Innsbruck Drive, Sunnyvale, CA 94089;

6    Tektools, Ken Barth, 4020 McEwen Dr, #105, Dallas, TX 75244;

7    Seagate, Jay Remley, address not recorded;

8    HDS, Derek Gascon, address not recorded;

9    SUN, Derek Maxwell, address not recorded; and

10    MySpace, Aber Whitcomb, address not recorded.

11    **By Quantum:**

12    Exagrid, Dave Therrien, 2000 West Park Drive, Suite 110, Westborough, MA

13    01581;

14    Microsoft, Mark Robinson, 1 Microsoft Way, Redmond WA 98052;

15    CommVault, Eric Rice, 2 Crescent Place, Oceanport, NJ 07757;

16    TimeSpring, Rick Carlson, 2000 Peel, Suite 905 Montreal, Quebec H3A 2W5;

17    Breakthrough Systems, John LoPorto, 1380 Forest Park Circle, #204, Lafayette,

18    CO 80026;

19    BlueArc Corporation, Shmuel Shottan, 50 Rio Robles Drive, San Jose, CA 95134;

20    Apple, Greg Burns, 1 Infinite Loop, Cupertino, CA 95104;

21    LSI/Engenio, Bob Emmett, 20 Ashford, Irvine, CA 92618; and

22    NetPriva, Todd Viegut, address not recorded.

23

24    **INTERROGATORY NO. 4:**

25    Identify all licenses relating to the '810 Patent, including the licensor, the licensee,

26    the date of the license, and the terms of the license, the amounts paid under the license, and any

27    royalty rates established by the license.

28

-13-

1    **RESPONSE TO INTERROGATORY NO. 4:**

2            Quantum further objects to this interrogatory on the grounds that it is overbroad,

3    unduly burdensome and oppressive and that it seeks information that is confidential or not relevant

4    to the claims and defenses in the pending litigation and not reasonably calculated to lead to the

5    discovery of admissible evidence.

6            Subject to and without waiving the foregoing general and specific objections,

7    Quantum responds as follows:  **[QUANTUM'S RESPONSE TO THIS INTERROGATORY**

8    **NO. 4 IS HEREBY DESIGNATED "CONFIDENTIAL" AND IS**

9    **HIGHLIGHTED/SHADED AS A FURTHER INDICATION OF SAID DESIGNATION]**

10

11            **License #1:**

12            Licensor: Quantum Corporation and Data Domain, Inc.

13            Licensee: Quantum Corporation and Data Domain, Inc.

14            Date issued: March 13, 2007.

15            Scope: Cross-license of all patents and patent applications of both firms (excluding

16    tape technology patents).

17            Expiration date: the expiration date of the last valid patent awarded to either

18    company prior to January 1, 2012.

19            Consideration: 390,000 shares of Data Domain, Inc. stock to Quantum Corporation.

20            Recurring Royalty: none

21

22            **License #2:**

23            Licensor:  Quantum Corporation and Hewlett-Packard Company

24            Licensee:  Quantum Corporation and Hewlett-Packard Company

25            Date issued: July 3, 2007

26            Scope:  Cross license of all de-duplication and tape patents and patent applications

27    of both firms.

28

-14-

1    Expiration date: the expiration date of the last valid patent awarded to either firm

2    prior to January 2, 2012.

3    Consideration: Execution of Joint Development Agreement dated July 3, 2007 and

4    Supply Agreement dated July 3, 2007.

5    Recurring royalty: none

6

7    **License #3 (International Business Machines Corporation License Agreement**

8    **L054842):**

9    On September 30, 2005, Quantum Corporation entered into a patent license

10   agreement with IBM.  This agreement calls for the patents of any acquired company to be

11   automatically added to the license.  This agreement was executed prior to the acquisition of ADIC

12   (Rocksoft) by Quantum.

13

14

15   Also, in June 2005, Rocksoft CEO Jim Johnson wrote a letter to Gerald Barnett at

16   U.C. Santa Cruz, giving the Deep Store program permission to use U.S. Pat No. 5,990,810 for

17   non-commercial academic and educational research activity.

18

19   Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

20   response to this interrogatory, Quantum incorporates herein by reference the documents it has

21   produced marked with control numbers QU 000013 – QU 0000159.  QU 000013 – QU 000033

22   and QU 000043 – QU 0000159 were designated "Confidential – Outside Attorneys' Eyes Only"

23   but Quantum has re-designated them "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

24   ONLY" under the Stipulated Protective Order, and Quantum's referencing and incorporation of

25   these documents into this response pursuant to Federal Rule of Civil Procedure 33(d) is not

26   intended to be and shall not be considered in any way a waiver of the confidentiality with which

27

28

-15-

such documents have been designated. QU 000034 – QU 000042 was designated "Confidential –

Outside Attorneys' Eyes Only" but Quantum has re-designated it "CONFIDENTIAL" under the

Stipulated Protective Order, and Quantum's referencing and incorporation of it into this response

pursuant to Federal Rule of Civil Procedure 33(d) is not intended to be and shall not be considered

in any way a waiver of the confidentiality with which the document bearing these control numbers

has been designated. Quantum designates this document "CONFIDENTIAL" in view of

contractual obligations with Data Domain regarding its confidentiality, but notes that the

document has been filed in an S-1 by Data Domain. Furthermore, pursuant to Federal Rule of

Civil Procedure 33(d) and in further response to this interrogatory, Quantum incorporates herein

by reference the documents it has produced marked with control numbers QU 000661 – QU

000662 from which information responsive to this interrogatory may be derived or ascertained.


**INTERROGATORY NO. 5:**

        Identify each Patented Product, the date each Patented Product was first sold in the

United States, and whether each Patented Product was marked pursuant to 35 U.S.C. § 287.

**RESPONSE TO INTERROGATORY NO. 5:**

        Quantum further objects to this interrogatory on the grounds that it is overbroad,

unduly burdensome and oppressive and that it seeks information that is not relevant to the claims

and defenses in the pending litigation and not reasonably calculated to lead to the discovery of

admissible evidence. Quantum further objects to this interrogatory on the ground that Plaintiff has

not completed its discovery or preparation for trial and has not yet identified all information and

documents and information which support its contentions. Quantum further objects to this

interrogatory on the ground that it contains subparts in violation of Federal Rule of Civil

Procedure 33(a).

        Subject to and without waiving the foregoing general and specific objections,

Quantum responds as follows:

QUANTUM'S SECOND SET OF SUPPLEMENTAL
RESPONSES TO RIVERBED'S FIRST SET OF
INTERROGATORIES

1. <u>DXi 3500 disk-based backup appliance, all models</u>

   First sale date (based on first shipping date): February 15, 2007.  The product was not marked at first shipping.  The product is currently marked.

2. <u>DXi 5500 disk-based backup appliance, all models</u>

   First sale date: February 15, 2007.  The product was not marked at first shipping.  The product is currently marked.

3. <u>StorNext Storage Manager Data Reduction Services, a software product</u>

   First sale date: April 2, 2007.  The product was not marked at first shipping.  The product is currently marked.

4. <u>DXi 7500 disk-based backup solution, all models</u>.  De-duplication is a licensed software option.  The product is not scheduled to ship until approximately June of 2008.

5. <u>Veracity, a software product</u>.  Version 3.3 of this software product was the first version of Veracity to incorporate Blocklets technology, and was first sold in the U.S. on or about June 8, 2002 to Steel Angels Photo, although two earlier sales of Veracity Version 3.3 are believed to have occurred on April 5, 2002 and April 6, 2002.  The product was not marked at those times.

**INTERROGATORY NO. 6:**

State all facts supporting any contention by Quantum that Riverbed has willfully infringed the '810 Patent.

**RESPONSE TO INTERROGATORY NO. 6:**

Quantum further objects to this interrogatory on the grounds that Plaintiff has not completed its discovery or preparation for trial and has not yet identified all information and documents and information which support its contentions.  Quantum further objects to this interrogatory on the ground that it calls for a legal conclusion.

-17-

1        Subject to and without waiving the foregoing general and specific objections,

2   Quantum responds as follows:

3        The '810 patent is conspicuously cited on several patents issued to Riverbed.

4   These include U.S. Patent Nos. 6,828,925 (the "'925 patent"), 6,961,009 (the "'009 patent"),

5   7,116,249 (the "'249 patent"), and 7,120,666 (the "'666 patent").  Further, the '810 patent was cited

6   by the applicant on its IDS, not by the USPTO examiner.  However, the parent patent to the '925

7   patent, the '009 patent, and the '249 patent is U.S. Patent No. 6,667,700 (the "'700 patent"), which

8   does not cite or disclose the '810 patent as part of its filing or prosecution.  Therefore, Riverbed

9   clearly was aware of the '810 patent at least prior to applying for the first continuation patent of

10  the '700 patent (*i.e.*, the '925 patent).  Also, Riverbed's '666 patent did not initially cite the '810

11  patent.  The USPTO provided a Notice of Allowance, but Riverbed then filed an RCE, along with

12  a Petition to Withdraw from Issue.  The RCE then cited the '810 patent, again showing that

13  Riverbed had specific knowledge of it.  Moreover, since the '925 patent was filed on Dec. 8, 2003,

14  citing the '810 patent, and since Riverbed shipped its first product in 2004 (see

15  http://www.riverbed.com/news/press_releases/press_042604.php), Riverbed has willfully

16  infringed and is willfully infringing the '810 patent with respect to all the accused products.

17        Furthermore, Jonathan Otis of Quantum had two conversations by telephone with

18  Brett Nissenberg of Riverbed.  The first call was around the date of March 8, 2007.  Mr.

19  Nissenberg acknowledged Quantum's previous letters providing notice of the '810 patent, and said

20  Riverbed would be responding and get back to Quantum.  He asked if Quantum had licensed to

21  anyone other than Data Domain.  The second call was on July 17 at 5:36 p.m.  Mr. Nissenberg

22  called to say Riverbed's response to Quantum's June letter was still coming and would be finished

23  in one or two more weeks, and that he would call again if it turned out to be longer.  Mr. Otis

24  asked if they should talk first, and Mr. Nissenberg stated, "Just wait for the letter, on that basis you

25  can decide."

26        Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

27  response to this interrogatory, Quantum incorporates herein by reference the documents it has

28

-18-

1    produced marked with control numbers QU 000202 – QU 000207 from which information

2    responsive to this interrogatory may be derived or ascertained.  These documents were designated

3    "Confidential – Outside Attorneys' Eyes Only" but Quantum has re-designated them

4    "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

5    incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

6    33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

7

8    with which such documents have been designated.

9    **INTERROGATORY NO. 7:**

10           State all facts supporting any contention by Quantum that Riverbed had actual or

11   constructive notice of any alleged infringement of the claim, including but not limited to any

12   patent marking(s).

13   **RESPONSE TO INTERROGATORY NO. 7:**

14           Quantum further objects to this interrogatory on the grounds that Plaintiff has not

15   completed its discovery or preparation for trial and has not yet identified all documents and

16   information which support its contentions.  Quantum further objects to this interrogatory on the

17   grounds that it is cumulative.  Quantum further objects to this interrogatory on the ground that it

18   calls for a legal conclusion.

19           Subject to and without waiving the foregoing general and specific objections,

20   Quantum responds as follows:

21           The '810 patent is conspicuously cited on several patents issued to Riverbed.

22   These include U.S. Patent Nos. 6,828,925 (the "'925 patent"), 6,961,009 (the "'009 patent"),

23   7,116,249 (the "'249 patent"), and 7,120,666 (the "'666 patent").  Further, the '810 patent was cited

24   by the applicant on its IDS, not by the USPTO examiner.  However, the parent patent to the '925

25   patent, the '009 patent, and the '249 patent is U.S. Patent No. 6,667,700 (the "'700 patent"), which

26   does not cite or disclose the '810 patent as part of its filing or prosecution.  Therefore, Riverbed

27   clearly was aware of the '810 patent at least prior to applying for the first continuation patent of

28

-19-

1   the '700 patent (*i.e.*, the '925 patent).  Also, Riverbed's '666 patent did not initially cite the '810

2   patent.  The USPTO provided a Notice of Allowance, but Riverbed then filed an RCE, along with

3   a Petition to Withdraw from Issue.  The RCE then cited the '810 patent, again showing that

4   Riverbed had specific knowledge of it.  Moreover, since the '925 patent was filed on Dec. 8, 2003,

5   citing the '810 patent, Riverbed has had actual and constructive notice of the '810 patent since at

6   least that time.

7          Furthermore, Jonathan Otis had two conversations by telephone with Brett

8   Nissenberg of Riverbed, the purpose of which was to discuss issues related to the '810 patent.  The

9   first call was around the date of March 8, 2007.  Mr. Nissenberg acknowledged Quantum's

10  previous letters providing notice of the '810 patent, and said Riverbed would be responding and

11  get back to Quantum.  He asked if Quantum had licensed to anyone other than Data Domain.  The

12  second call was on July 17 at 5:36 p.m.  Mr. Nissenberg called to say Riverbed's response to

13  Quantum's June letter was still coming and would be finished in one or two more weeks, and that

14  he would call again if it turned out to be longer.  Mr. Otis asked if they should talk first, and Mr.

15  Nissenberg stated, "Just wait for the letter, on that basis you can decide."

16         Furthermore, pursuant to Federal Rule of Civil Procedure 33(d) and in further

17  response to this interrogatory, Quantum incorporates herein by reference the documents it has

18  produced marked with control numbers QU 000202 – QU 000207 from which information

19  responsive to this interrogatory may be derived or ascertained.  These documents were designated

20  "Confidential – Outside Attorneys' Eyes Only" but Quantum has re-designated them

21  "CONFIDENTIAL" under the Stipulated Protective Order, and Quantum's referencing and

22  incorporation of these documents into this response pursuant to Federal Rule of Civil Procedure

23  33(d) is not intended to be and shall not be considered in any way a waiver of the confidentiality

24  with which such documents have been designated.

25

26  **<u>INTERROGATORY NO. 8</u>:**

27         State all facts supporting any contention by Quantum has standing to sue for

28  infringement of the '810 Patents, including a detailed description of all grants and transfers of any

-20-

1  ownership interests in the '810 Patent since the filing, of the patent application that resulted in the

2  issuance of the '810 patent.

3  **RESPONSE TO INTERROGATORY NO. 8:**

4      Quantum further objects to this interrogatory on the grounds that it is overbroad,

5  unduly burdensome and oppressive and that it seeks information that is not relevant to the claims

6  and defenses in the pending litigation and not reasonably calculated to lead to the discovery of

7  admissible evidence.  Quantum further objects to this interrogatory on the ground it seeks to

8  discover information protected by the attorney-client privilege and/or the work product doctrine.

9  Quantum further objects to this interrogatory on the ground that it calls for a legal conclusion.

10 Quantum further objects to this interrogatory on the ground that it contains subparts in violation of

11 Federal Rule of Civil Procedure 33(a).

12      Subject to and without waiving the foregoing general and specific objections,

13 Quantum responds as follows:

14      A.C.N. 120 786 012 Pty. Ltd. ("A.C.N.") owns Rocksoft Pty. Ltd. ("Rocksoft") as a

15 wholly-owned subsidiary.  During the last 12 months, Rocksoft Limited was renamed as Rocksoft

16 Pty. Ltd.  Quantum is the parent company to both A.C.N. and Rocksoft.

17

18

19

20

21

22

23

24

25

26

27

28

-21-

1            Pursuant to Federal Rule of Civil Procedure 33(d) and in response to this

2    interrogatory, Quantum incorporates herein by reference the documents it has produced marked

3    with control numbers QU 000214 – QU 000226 and QU 000663 – QU 000666 from which

4    information responsive to this interrogatory may be derived or ascertained.  QU 000220 – QU

5    000226 were designated "Confidential – Outside Attorneys' Eyes Only" but Quantum has re-

6    designated them "CONFIDENTIAL" under the Stipulated Protective Order, and QU 000665 – QU

7    000666 are designated "CONFIDENTIAL" under the Stipulated Protective Order.  Quantum's

8    referencing and incorporation of these documents into this response pursuant to Federal Rule of

9    Civil Procedure 33(d) is not intended to be and shall not be considered in any way a waiver of the

10   confidentiality with which such documents have been designated.

12   Dated:  January 9, 2008

13                   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

15            By                       /s/ Nathaniel Bruno

16                      AMAR L. THAKUR
                   MAURICIO A. FLORES

17                      JON E. MAKI
                   NATHANIEL BRUNO

18                       Attorneys for

19                     QUANTUM CORPORATION