# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RIVERBED TECHNOLOGY, INC., )
                                   )
    Plaintiff,                )
                                   )
    v.                        )     C.A. No. 08-016-SLR
                                   )
QUANTUM CORPORATION, A.C.N. 120    )
786 012 PTY, LTD, ROCKSOFT LTD.,   )
                                   )
    Defendants.               )

**OPENING MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, LACK
OF PERSONAL JURISDICTION, AND IMPROPER VENUE, OR IN THE
ALTERNATIVE, TO TRANSFER**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Amar L. Thakur
Mauricio A. Flores
Sheppard, Mullin, Richter & Hampton LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006
(858) 720-8900

Dated: February 14, 2008

TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

      A.    Statement of Nature and Stage of Proceedings........................................1

      B.    Summary of Argument ...........................................................................3

II.   FACTUAL BACKGROUND .................................................................................5

      A.    '810 Patent Infringement Action and Related Claims Pending in California ..........5

      B.    Ongoing Discovery in the California Case ...............................................6

      C.    Riverbed's Motion to Dismiss and Forum Shopping ...............................7

III.  THE COURT MUST DISMISS RIVERBED'S DECLARATORY ACTION
      AGAINST QUANTUM BECAUSE NO CASE OR CONTROVERSY EXISTED
      AT THE TIME OF FILING .................................................................................10

IV.   THE COURT MUST DISMISS RIVERBED'S DECLARATORY ACTION
      AGAINST A.C.N AND ROCKSOFT BECAUSE THE COURT DOES NOT
      HAVE PERSONAL JURISDICTION, NO CASE OR CONTROVERSY
      CURRENTLY EXISTS BETWEEN THE PARTIES, AND VENUE IS
      IMPROPER..........................................................................................................12

      A.    This Case Must be Dismissed Because the Court Does Not Have Personal
            Jurisdiction Over A.C.N. or Rocksoft...................................................12

            1.    None of the Provisions of Delaware's Long Arm Statute Applies
                  To Either A.C.N. or Rocksoft which are Australian Companies
                  With No Contacts with Delaware ...............................................13

            2.    Personal Jurisdiction Is Also Lacking Because Neither A.C.N. Nor
                  Rocksoft Has Minimum Contacts with Delaware .......................15

      B.    Riverbed's Complaint Must be Dismissed Because There Is No Longer a
            Case or Controversy Between Riverbed, A.C.N. and Rocksoft ............16

      C.    Riverbed's Complaint Should be Dismissed Because Venue is Improper.............17

V.    SHOULD THE COURT FIND THAT THE CASE IS PROPERLY BEFORE IT,
      IT SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF
      CALIFORNIA FOR REASONS OF EFFICIENCY, CONSISTENCY,
      CONVENIENCE AND FAIRNESS......................................................................18

-i-

A.      This Case Should be Transferred Because the California Court Has Spent Significant Time and Effort on the Matter and the Same Parties Are Litigating the Same Issues In California...............................................................19

B.      The Court Should Transfer This Action Because Plaintiff's Action is Nothing More than Blatant Forum Shopping .......................................................22

C.      The Court Should Transfer this Action Because the Balance of Conveniences Weigh Heavily In Favor of California or a Forum.........................23

VI.     CONCLUSION.............................................................................................................25

TABLE OF AUTHORITIES

Page(s)

Cases

*Aetna Life Ins. Co. v. Haworth,*
    300 U.S. 227 (1937) ...................................................................................................10

*Akzona, Inc. v. E.I. Du Pont de Nemours & Co.,*
    607 F. Supp. 227 (D. Del. 1984) ...............................................................................11

*Applied Biosystems, Inc. v. Cruachem, Ltd.,*
    772 F. Supp. 1458 (1991) ..........................................................................................13

*Bristol-Myers Squibb Co. v. Erbamont, Inc.,*
    734 F. Supp. 661 (D. Del. 1990) ...............................................................................16

*Brunswick Corp. v. Precor Inc.,*
    2000 WL. 1876377 (D. Del. 2000) .......................................................................20, 21

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ...............................................................................................15, 16

*C.R. Bard, Inc. v. Guidant Corp.,*
    997 F. Supp. 556 (D. Del. 1998) ...............................................................................13

*Cashedge, Inc. v. Yodlee, Inc.,*
    2006 WL. 2038504 (D. Del. 2006) ...................................................................19, 20, 23

*E.E.O.C. v. University of Pennsylvania,*
    850 F.2d 969 (3d Cir. 1988) .......................................................................................22

*GAF Bldg. Materials Corp. v. Elk Corp.,*
    90 F.3d 479 (Fed. Cir. 1996) .................................................................................10, 12

*Grain Processing Corp. v. American Maize-Products Co.,*
    840 F.2d 902 (Fed. Cir. 1988) ...................................................................................10

*Hoover Group, Inc. v. Custom Metalcraft, Inc.,*
    84 F.3d 1408 (Fed. Cir. 1996) ...................................................................................17

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ...............................................................................................12, 13

*Jervis B. Webb Co. v. Southern Sys., Inc.,*
    742 F.2d 1388 (Fed. Cir. 1984) .................................................................................10

*Kahn .v General Motors, Corp.,*
    889 F.2d 1078 (Fed. Cir. 1989) .................................................................................22

*LaNuova D & B, S.p.A. v. Bowe Co.,*
    513 A.2d 764 (D. Del. 1986) .....................................................................................14

*Liquid Dynamics Corp. v. Vaughan Co.,*
    355 F.3d 1361 (Fed. Cir. 2004).................................................................................11

*Optical Recording Corp. v. Capitol-EMI Music, Inc.,*
    803 F. Supp. 971 (D. Del. 1992)..........................................................................20, 21

*Paradise Creations, Inc. v. UV Sales, Inc.,*
    315 F.3d 1304 (Fed. Cir. 2003)...............................................................................11

*Perkins v. Benguet Consol. Mining Co.,*
    342 U.S. 437 (1952)....................................................................................................15

*Preiser v. Newkirk,*
    422 U.S. 395 (1975)....................................................................................................16

*Public Serv. Comm'n v. Wycoff Co.,*
    344 U.S. 237 (1952)....................................................................................................10

*Rayco Mfg. Co. v. Kelley Co., Inc.,*
    148 F. Supp. 588 (S.D.N.Y. 1957).......................................................................22, 23

*Red Wing Shoe v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998)...............................................................................16

*Sanyo Electric Trading Co. Ltd. v. Masco Corp.,*
    429 F. Supp. 1023 (D. Del. 1977)...........................................................................20

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.,*
    402 F.3d 1198 (Fed. Cir. 2005)..........................................................................17, 18

*Serco Servs. Co. v. L.P. Kelley Co., Inc.,*
    51 F.3d 1037 (Fed. Cir. 1995).............................................................................18, 22

*Sony Corp. v. Quantum Corp.,*
    16 U.S.P.Q. 2d 1446 (D. Del. 1990)...................................................................20, 23

*Spectronics Corp. v. H.B. Fuller Co. Inc.,*
    940 F.2d 631 (Fed. Cir. 1991)..................................................................................10

*St. Clair Intellectual Prop. Consultants, Inc. v. Mirage Systems, Inc.,*
    419 F. Supp. 2d 620 (D. Del. 2006)........................................................................17

*Super Sack Mfg. Corp. v. Chase Packaging Corp.,*
    57 F.3d 1054 (Fed. Cir. 1995)..................................................................................12

*VE Holding Corp. v. Johnson Gas Appliance Co.,*
    917 F.2d 1574 (Fed. Cir. 1990)..........................................................................17, 18

*Vikoma Intern., Ltd. v. Oil Stop, Inc.,*
    1993 WL 14647 (D. Del. 1993)...............................................................................13

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980)....................................................................................................15

## Statutes

28 U.S.C. § 1400(b) ........................................................................................................17

28 U.S.C. § 1404(a) ........................................................................................................18

28 U.S.C. § 1406 ............................................................................................................17

28 U.S.C. § 2201 ............................................................................................................10

28 U.S.C. § 2201(a) ........................................................................................................18

Title 10 Delaware Code section 3104 ..........................................................................13

Title 10 Delaware Code section 3104(c) ......................................................................14

Title 10 Delaware Code section 3104(c)(1)..................................................................13

## Rules

Federal Rule of Civil Procedure 12(b)(1) ....................................................................10

Federal Rule of Civil Procedure 12(b)(2) ....................................................................12

Federal Rule of Civil Procedure 12(b)(3) ....................................................................17

Federal Rule of Civil Procedure 4(e) ............................................................................13

# I.

# INTRODUCTION

## A.    Statement of Nature and Stage of Proceedings

The dispute before the Court began on August 14, 2007, when Quantum Corporation ("Quantum") sued Riverbed Technology, Inc. ("Riverbed") in the United States District Court for the Northern District of California ("the California Court") for infringement of United States Patent No. 5,990,810 ("810 Patent") entitled "Method for Partitioning A Block of Data into Subblocks and for Storing and Communicating such Subblocks." Riverbed counterclaimed for a declaratory judgment of non-infringement and invalidity. In addition, Riverbed counterclaimed that Quantum infringes United States Patent No. 7,116,249 ("249 Patent") entitled "Content-Based Segmentation Scheme for Data Compression in Storage and Transmission Including Hierarchical Segment Representation."

The claims and counterclaims in the California Court were assigned to the Honorable William Alsup, who issued a scheduling order setting a claim construction hearing for May 7, 2008 and trial for February 2, 2009, along with other related deadlines. Adhering to the California Court's schedule, the parties have engaged in considerable discovery and other efforts.

Notwithstanding all this progress and effort in the California proceedings, Riverbed took advantage of a defect in Quantum's exclusive license and maneuvered to take the '810 Patent claim away from the California Court and litigate it in Delaware instead. On January 9, 2008, Riverbed moved to dismiss Quantum's claim before the California Court for lack of standing. That same day, Riverbed filed this Delaware action seeking a judicial declaration that it does not infringe the '810 Patent and the patent is invalid.

At the hearing on Riverbed's motion to dismiss, Judge Alsup—who appeared frustrated at what he clearly viewed as wasteful motion practice by Riverbed—suggested that after curing its standing defect Quantum might be able to re-file its '810 Patent claim as a counterclaim to Riverbed's counterclaim for infringement of the '249 Patent, which would remain even after the dismissal of Quantum's claim without prejudice. Riverbed responded that non-infringement and validity of the '810 Patent should be litigated in Delaware based on the first-to-file rule.

Riverbed's mid-litigation choice of Delaware as a new forum is purely tactical. This dispute has no connection to Delaware. Quantum's and Riverbed's principal places of business are in California. Neither has an office in Delaware. Nor do either of the two Quantum subsidiaries, A.C.N. 120 786 012 Pty, Ltd ("A.C.N.") and Rocksoft Ltd ("Rocksoft"), which Riverbed named as defendants in this action. A.C.N. and Rocksoft are Australian companies which have not sold products or offered services in Delaware. None of the Defendants has sought to enforce the '810 Patent in Delaware. None of the witnesses or document repositories identified in discovery so far is known to be located in Delaware.

When Judge Alsup inquired as to the reason for Riverbed's desire to move Quantum's '810 claim to Delaware, Riverbed's counsel brazenly admitted that its sole reason for doing so was to seek "a strategic advantage for us in the litigation." In response, Judge Alsup stated:

> I appreciate your frankness, but that's why judges are almost fed up with patent lawyers who are always trying to yank the courts around for some strategic advantage when we got hundreds and hundreds of cases to deal with. You think about that.

*See* Declaration of Mauricio A. Flores in Support of Defendants' Motion to Dismiss ("Flores Decl."), ¶24, Exhibit ("Ex.") E at pg. 6, lines 21-25.

The Court also recognized the precise nature of the "strategic advantage" sought

by Riverbed:

> The Court:  All right, so sounds like what matters here is the
> schedule.  You want – probably what's going on here is this side of
> the room **[Riverbed] knows that I will move the case along, so
> they want their patent to be the one, they want their offensive
> case to be the one that moves along and have your offense case
> mired down in some other court somewhere else in the county.**
> That is probably what is happening here.  And I don't mean any
> disrespect to any other court in the country, not at all.  Everybody
> has to manage their caseload the way they want, but sounds like
> that's what's happening here.

*Id.* pg. 14, lines 20-25; lines 1-4 (emphasis added).

The California District Court dismissed Quantum's '810 Patent claim without

prejudice on February 4, 2008.  On February 8, 2008, a new exclusive license was issued to

Quantum, curing the standing defect that had led to the dismissal.  Following Judge Alsup's

suggestion, Quantum has or will be filing a motion for leave to file its '810 Patent claim as a

counterclaim to Riverbed's counterclaim for infringement of the '249 Patent.  As a protective

measure against further attempts by Riverbed to forum shop, Quantum also filed an independent

action asserting its '810 Patent Claim in the Northern District of California.

## B.    Summary of Argument

Riverbed's action in this Court should be dismissed.  Quantum could not be sued

for a declaratory judgment in this Court for the same reason that it lacked standing to sue in the

California Court — it is elementary that a party lacking standing to sue for infringement cannot

be sued for a declaratory judgment of non-infringement and invalidity.  Further, as held by the

California Court in dismissing Quantum's '810 Patent claim, such a defect on the day of filing

cannot be subsequently cured.  Hence, this action against Quantum is no more viable than the

patent infringement claim dismissed by the California Court.

-3-

Riverbed's claims against A.C.N. and Rocksoft are also fatally defective because neither of these companies has ever sought to enforce the '810 Patent in Delaware, and neither does business in Delaware. Accordingly, this action against them should be dismissed for lack of personal jurisdiction and improper venue. Finally, there is no longer a live controversy between A.C.N., Rocksoft and Riverbed. The execution of a new exclusive license to Quantum by both Rocksoft and A.C.N. 120 on February 8, 2008 divested A.C.N. and Rocksoft of any substantial interest in the '801 Patent claim, thereby depriving them of standing and this Court of subject matter jurisdiction.

Even assuming *arguendo* that this matter is properly before the Court, the action should be transferred back to the California Court because: (1) the same parties are continuing to litigate the same matters before the California Court, which has already invested significant resources in regards to the '810 Patent, (2) Riverbed's flagrant forum shopping should be deterred, and (3) the convenience of the parties favors California.

The Declaratory Judgment act was enacted to allow parties to remove a cloud hanging over their heads where there is a reasonable threat of suit, not to arbitrarily seek a different forum in search of perceived advantages resulting in delay and increased cost. Such tactics are not legitimate. To allow this action to proceed in Delaware would reward behavior that is not only unfair to Quantum, but is disruptive to the orderly administration of justice. If adopted widely, the forum shopping tactics employed by Riverbed would significantly impede the efficient adjudication of patent infringement disputes, which are by their nature time-consuming and expensive for all concerned.

Fortunately, federal courts are not helpless to prevent this kind of gamesmanship. This action should be dismissed or, in the alternative, transferred back to the California Court,

which has already invested significant resources in its adjudication and has already suggested that once the standing defect has been cured, the '810 patent claims can be added back to the California action.

## II.

## FACTUAL BACKGROUND

**A.    '810 Patent Infringement Action and Related Claims Pending in California**

On August 14, 2007, Quantum filed a complaint against Riverbed in the Northern District of California alleging infringement of the '810 Patent. (*See* Flores Decl. ¶ 2, Ex. A.) The '810 Patent concerns a method and apparatus for partitioning blocks of computer data into subblocks and for storing and communicating these subblocks. This process compresses the amount of data needed to be stored on a server and facilitates the sharing of data over extended computer networks. In this complaint, Quantum alleged that Riverbed's Steelhead products use a data de-duplication process which infringes on the '810 Patent.

On November 13, 2007, Riverbed filed an Amended Answer in the California Court asserting a counterclaim alleging infringement by Quantum of the '249 Patent (*See* Flores Decl. ¶ 5, Ex. B.) Riverbed alleges that Quantum's DXi software products use a data de-duplication process that infringes on the '249 Patent. In addition, Riverbed filed a counterclaim for declaratory judgment of non-infringement and invalidity of the '810 Patent, the exact same claims currently pending before this Court. (*Id.*) Like the '810 Patent, the '249 Patent is for a data encoding system, which segments blocks of data and assigns them reference numbers to facilitate the storage and transmission of large amounts of data. The two patents are very similar -- indeed the '249 Patent lists the '810 Patent as prior art.

**B.     Ongoing Discovery in the California Case**

The California case has been proceeding at a rapid pace as to both the '810 and

the '249 Patent claims.  For example, on November 29, 2007, the California Court held the Initial

Case Management Conference and entered a scheduling order setting the claim construction

hearing for May 7, 2008, completion of non-expert discovery by September 29, 2008, and trial

for February 2, 2009.  (Flores Decl. ¶ 9, Ex. C.)  As required by the California Court's schedule,

the parties worked hard on discovery related to Quantum's claim for infringement of the

'810 Patent.  By the end of 2007, Riverbed had responded to 76 document requests and 17

Interrogatories related to Quantum's '810 Patent claim.  (*Id.* ¶¶ 6, 13, 16.)  Riverbed served, and

Quantum responded to 76 document requests and 8 interrogatories concerning the '810 Patent

during that same period.  (*Id.* ¶¶ 4, 10.)

Quantum also worked hard to complete the disclosures required by Federal

Rule of Civil Procedure 26 and the Patent Local Rules of the Northern District of California.  (*Id.*

¶¶ 4, 7, 11, 12, 17.)  The parties engaged in their Rule 26(f) conference on November 2, 2007.

(*Id.* ¶ 4.)  By December 7, 2007, both parties had served initial disclosures required by Rule 26

and supplemental disclosures ordered by the California Court.  (*Id.* ¶¶ 7,11.)  On December 13,

2007, Quantum served its Preliminary Infringement Contentions relating to its '810 Patent claim

in accordance with Patent Local Rule 3-1, along with documents required by Patent Local

Rule 3-2(a).  (*Id.* ¶ 12.)  On December 24, after meeting and conferring with Riverbed's counsel,

Quantum served Supplemental Preliminary Infringement Contentions relating to its '810 Patent

claim.  (*Id.* ¶ 16.)  Both parties have retained, or are in the process of retaining, expert witnesses

to testify as to the matters concerning both patents.

Much of the evidence in the case has or will come from California. (*Id.* ¶¶ 30-34.) A number of the witnesses identified by Riverbed and Quantum in their initial disclosures are residents of California. (*Id.* ¶¶ 31, 33.) None of the witnesses identified is believed to reside in Delaware. (*Id.*) Four of the six locations identified by Riverbed as places holding discoverable evidence are in California. None of the locations is in Delaware. (*Id.* ¶ 30.) Counsel for both parties are based in California and neither has an office in Delaware. (*Id.* ¶¶ 35, 36.) Neither Riverbed nor Quantum has an office in Delaware. (*Id.* ¶ 29.) Riverbed's headquarters are in San Francisco while Quantum's headquarters are in San Jose, California. (Riverbed's Compl. D.I. 1.) Notably, the Northern District of California presides in San Francisco.

**C.      Riverbed's Motion to Dismiss and Forum Shopping**

In spite of all of this work, Riverbed took advantage of a defect in the chain of title leading to Quantum's exclusive license and maneuvered to gain a tactical advantage by seeking to yank Quantum's '810 Patent claim away from the California Court and have it litigated in Delaware. On January 9, 2008, Riverbed moved to dismiss the California action on the ground that Quantum lacked standing because there had been no valid transfer of rights to Quantum from its subsidiary Rocksoft. (Flores Decl. ¶ 23.)

On the same day, Riverbed filed this action in Delaware seeking a declaratory judgment of invalidity and non-infringement related to the '810 Patent, the exact same claim that Riverbed asserted in its counterclaim before the California Court. (*Id.*) Riverbed deliberately filed the Delaware action so that it would be able to assert the "first-to-file" rule in Delaware, should the California Court grant its motion to dismiss. (*Id.* ¶ 24, Ex. E, at pg. 6, lines 7-11.)

In addition to naming Quantum as a defendant, Riverbed named two of Quantum's wholly owned subsidiaries, A.C.N. and Rocksoft, both of which are Australian corporations, with their headquarters in Australia. (Hall Decl. ¶ 2.) Neither A.C.N. nor Rocksoft has any business contacts with Delaware. (Hall Decl. ¶¶ 3, 4.) Moreover, Riverbed failed to designate the California case as related on the civil cover sheet filed with its complaint even though it was required to do so under D. Del. LR3.1(b)(1) & (2). (Riverbed Compl. D 1.)

On January 31, 2007, Judge Alsup heard oral argument on the motion to dismiss, during which counsel for Riverbed admitted that Riverbed filed its Delaware action solely because it "provides a strategic advantage for us in the litigation." (Flores Decl. ¶ 24, Ex. E, at pg. 6, lines 16-20.) Judge Alsup criticized Riverbed's forum shopping tactics and recognized that by agreeing to continue with its counterclaim on the '249 Patent in California and seeking to pursue its declaratory relief action on the '810 Patent in Delaware, Riverbed merely sought to delay the '810 proceedings for its own benefit. After Riverbed's counsel confessed that its decision to file the Delaware was merely strategic, Judge Alsup stated:

> I appreciate your frankness, but that's why judges are almost fed up
> with patent lawyers who are always trying to yank the courts
> around for some strategic advantage when we got hundreds and
> hundreds of cases to deal with. You think about that.

(*Id.* Pg. 6, lines 21 - 25.)

Judge Alsup recognized that Quantum's technical standing deficiency could easily be remedied and the case could continue in California if Quantum filed a counterclaim to Riverbed's counterclaim. (*Id.* at pg. 6, lines 3-6, pg. 7, lines 1-8.)

Judge Alsup also commented on the inconvenience to Quantum Riverbed's ploy to split venues for the '249 and '810 claims would cause:

> The Court: All right, so sounds like what matters here is the
> schedule. You want - probably what's going on here is this side of

-8-

the room **[Riverbed] knows that I will move the case along, so they want their patent to be the one, they want their offensive case to be the one that moves along and have your offense case mired down in some other court somewhere else in the county.** That is probably what is happening here. And I don't mean any disrespect to any other court in the country, not at all. Everybody has to manage their caseload the way they want, but sounds like that's what's happening here.

(*Id*. at pg. 14, lines 20-25, lines 1-4) (emphasis added.)

On February 4, 2008, Judge Alsup granted Riverbed's motion to dismiss Quantum's complaint. In his written order, Judge Alsup again suggested that Quantum could file a counterclaim to Riverbed's counterclaim concerning the '810 Patent once the ownership issues were resolved. (*See* Flores Decl. ¶ 24, Ex. G, at pg. 6, lines 1-3.) Prior to Judge Alsup's ruling, Riverbed submitted a letter confirming that it intended to proceed with its counterclaim regarding the '249 Patent in California rather than dismissing it outright and allowing all parties to proceed with both claims in Delaware. (*See* Flores Decl. ¶ 25, Ex. F.) Thus, if this action continues on, there needlessly will be two similar cases simultaneously proceeding in separate forums involving the same parties.

On February 8, 2008, the defect in Quantum's standing was cured by the execution of a new exclusive license to Quantum transferring all substantial rights to the '810 Patent. (*Id*. ¶ 27, Ex. H.) On February 13, 2008, Quantum filed a new action against Riverbed for infringement of the '810 Patent in the Northern District of California. In addition, Quantum has or will be filing a motion with the California Court for leave to add its '810 Patent claim as a counterclaim to Riverbed's counterclaim for infringement of the '249 Patent. (*Id*. ¶ 28.)

## III.

## THE COURT MUST DISMISS RIVERBED'S DECLARATORY ACTION AGAINST QUANTUM BECAUSE NO CASE OR CONTROVERSY EXISTED AT THE TIME OF FILING

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a claim if it lacks subject matter jurisdiction. If no case or controversy exists, a claim must be dismissed. This rule applies to declaratory judgment actions as well. "There is no question that a case or controversy is a jurisdictional predicate for declaratory judgment under 28 U.S.C. § 2201." *Grain Processing Corp. v. American Maize-Products Co.*, 840 F.2d 902, 905 (Fed. Cir. 1988); *see also Jervis B. Webb Co. v. Southern Sys., Inc.*, 742 F.2d 1388, 1398 (Fed. Cir. 1984) (The "actual controversy" requirement is met only if there is a justifiable case or controversy in the constitutional sense.); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937).

When there is no actual controversy present to support a declaratory judgment action, the court has no discretion to decide the case. When there is an actual controversy, the exercise of that jurisdiction is discretionary. *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 242 (1952).

Justiciability must be judged at the time of filing, not at some indeterminate future date. "Later events may not create jurisdiction where none existed at the time of filing. Rather '[t]he presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *GAF Bldg. Materials Corp. v. Elk Corp.*, 90 F.3d 479, 482-843 (Fed. Cir. 1996) (Issuance of design patent did not cure jurisdictional defect created when patentee's competitor brought action for declaratory judgment of non-infringement before patent issued); *see also Spectronics Corp. v. H.B. Fuller Co. Inc.*, 940 F.2d 631, 635 (Fed.

Cir. 1991) abrogated on other grounds by, *Liquid Dynamics Corp. v. Vaughan Co.*,

355 F.3d 1361, 1370 (Fed. Cir. 2004) ("We agree wholeheartedly that in personam and subject

matter jurisdictional facts must be pleaded and proved when challenged, and that later events

may not create jurisdiction where none existed at the time of filing."); *Paradise Creations, Inc. v.

UV Sales, Inc.*, 315 F.3d 1304, 1310 (Fed. Cir. 2003) (An initial defect in standing "cannot be

cured after the inception of the lawsuit.")

        Riverbed's claim against Quantum fails the most elementary requirements for

subject matter jurisdiction in a declaratory judgment action.  When determining whether a

jurisdictional basis for a declaratory judgment action exists, courts will test a claim by

considering the obverse of the allegations:

> In other words, if the Plaintiffs seek a declaration that Defendant's
> patent is invalid, the viability of the claim for jurisdictional
> purposes depends on whether Defendant could jurisdictionally
> maintain a suit against the Plaintiffs for the infringement and
> enforcement of its patents.

*Akzona, Inc. v. E.I. Du Pont de Nemours & Co.*, 607 F. Supp. 227, 230 (D. Del. 1984)

(dismissing declaratory judgment actions for two patents when it was clear that defendants could

not maintain infringement proceedings against plaintiffs).

        Riverbed is trying to have its cake and eat it too.  Riverbed challenged Quantum's

ownership rights in the '810 Patent at the same time it filed this declaratory judgment action.

(*See* Flores Decl. ¶ 23.)  As Judge Alsup found, Quantum did not have rights in the '810 Patent at

the time it filed the original complaint.  (*Id.* ¶ 26, Ex. G.)  Therefore, Quantum also did not have

rights in the '810 Patent at the time Riverbed filed this Delaware action.  It necessarily follows

that no live controversy exists to support this declaratory judgment action.  *Akzona*, 607 F. Supp.

at 230.

Moreover, Judge Alsup's finding of a lack of standing estops Riverbed from proceeding with a declaratory judgment action against Quantum on the same patent. *C.f. Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) (patentee's promise not to assert infringement claims against infringer estopped patentee and thus, rendered infringer's declaratory judgment counterclaim nonjusticiable). The fact that Rocksoft and Quantum recently executed an exclusive licensing agreement does not change this result for a party cannot subsequently fix a jurisdictional defect if it existed at the time of the filing of the action. *GAF Building Materials Corp.*, 90 F.3d at 483. Accordingly, the Court must dismiss this declaratory judgment against Quantum because no live controversy existed at the time it was filed.

**IV.**

**THE COURT MUST DISMISS RIVERBED'S DECLARATORY ACTION AGAINST**

**A.C.N AND ROCKSOFT BECAUSE THE COURT DOES NOT HAVE PERSONAL**

**JURISDICTION, NO CASE OR CONTROVERSY CURRENTLY EXISTS BETWEEN**

**THE PARTIES, AND VENUE IS IMPROPER**

A.    **This Case Must be Dismissed Because the Court Does Not Have Personal**

      **Jurisdiction Over A.C.N. or Rocksoft**

Pursuant to Federal Rule of Civil Procedure 12(b)(2), a court must dismiss an action if it does not have personal jurisdiction over the defendants. The Due Process Clause requires that, in order to subject a defendant who is "not within the territory of the forum" to personal jurisdiction, the court must first make sure that the party "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional

notions of justice and fair play.'" *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Since federal patent law does not provide for a particular manner of service, the Court must first refer to state law "even when, as here, the underlying legal issues involve federal patent law, because Fed.R.Civ.P. 4(e) directs that in the absence of a federal service of process statute, state law governs." *Vikoma Intern., Ltd. v. Oil Stop, Inc.*, 1993 WL 14647, *1 (D. Del. 1993) (citing *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1462 (1991)).

Determining whether a Delaware court may exercise jurisdiction over a defendant involves a two step analysis. First, the court must determine whether the Delaware long-arm statute authorizes the exercise of jurisdiction. Second, if statutory authority exists, the court must decide whether exercising the authority comports with the Due Process Clause of the Fourteenth Amendment. *See C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 557-58 (D. Del. 1998).

"Once a party challenges the exercise of jurisdiction by filing a motion to dismiss, the nonmoving party bears the burden of establishing that the court properly may exercise jurisdiction over the moving party." *Id.* at 559.

1. None of the Provisions of Delaware's Long Arm Statute Applies To Either A.C.N. or Rocksoft which are Australian Companies With No Contacts with Delaware

Pursuant to Title 10 Delaware Code section 3104(c)(1), Delaware courts may exercise personal jurisdiction over "any nonresident, or a personal representative, who in person or through an agent:  (1) transacts any business or performs any character of work or service in

-13-

the State."[1]  Section 3104(c), while broadly interpreted by Delaware courts, is a specific

jurisdiction provision, which requires a "nexus" between the plaintiff's cause of action and the

conduct of the defendant that is used as a basis for jurisdiction.  *See LaNuova D & B, S.p.A. v.*

*Bowe Co.*, 513 A.2d 764, 768 (D. Del. 1986).

> Neither A.C.N. nor Rocksoft has any contacts with Delaware which would subject

them to jurisdiction under the Delaware long arm statute.  A.C.N. and Rocksoft are both

Australian companies with their principal places of business in Australia.  (Hall Decl. ¶ 2.)

Neither company has appointed an agent to accept service on its behalf in Delaware.  (*Id.* ¶ 3.)

Neither A.C.N. nor Rocksoft maintains offices or other facilities in Delaware, and neither

company has a bank account, telephone listing, or address in Delaware.  (*Id.*)  Neither Rocksoft

nor A.C.N. has sold products or services in Delaware.  (*Id.* ¶ 4.)  Neither has attempted to

enforce the '810 Patent in Delaware.  (*Id.* ¶ 6.)

> Accordingly, there is no basis for the assertion of jurisdiction over Rocksoft or

A.C.N. under Title 10 Delaware Code section 3104.

---

[1] Title 10 Delaware code section 3104 lists other activities which may subject a nonresident to court jurisdiction, but none of which are applicable here.  Section 3104(c) in its entirety reads as follows:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

2.    <u>Personal Jurisdiction Is Also Lacking Because Neither A.C.N. Nor Rocksoft Has</u>
<u>Minimum Contacts with Delaware</u>

Since there is no basis for the assertion of jurisdiction over A.C.N. or Rocksoft under the Delaware Long Arm statute, there is no need to consider whether the exercise of personal jurisdiction would comport with constitutional due process requirements. However, it is clear that the exercise of personal jurisdiction over either of these defendants by this Court would violate that defendant's constitutional rights.

The Due Process Clause requires states to give defendants "fair warning" that a particular activity may subject them to litigation within the forum, and these "minimum contacts" must be purposeful. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). In other words, the defendant's contact must be of a nature that would cause it to reasonably foresee that it might be "hauled before a court" in the forum as a result of its conduct. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The extent to which a court can exercise personal jurisdiction over a defendant depends on the nature and quality of a defendant's contacts with a state. Nonresidents whose commercial activities impact Delaware on a "substantial, continuous and systematic" basis are subject to general jurisdiction, i.e., they may be sued on a cause of action unrelated to their activities within the state. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446-47 (1952). If a defendant's activities are not "substantial, continuous, and systematic," it may still be subject to limited jurisdiction if the defendant purposefully established contacts with the forum state and the plaintiff's cause of action "arises out of" or "is related to" the defendant's contacts with the state. *Burger King Corp.*, 471 U.S. at 477-78. Sales activity by a patentee's licensee within the

forum state is insufficient to establish minimum contacts. *See Red Wing Shoe v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998).

As discussed above, Rocksoft and A.C.N. have no contacts with Delaware and certainly do not have commercial activities, concerning the '810 Patent or otherwise, which affect Delaware on a "substantial, continuous, and systematic basis." Moreover, there is no evidence that Rocksoft or A.C.N. has purposefully availed itself of Delaware in any way, has threatened infringement actions against Delaware companies, or has taken any other enforcement action which touches Delaware. (Hall Decl. ¶ 5.)

Lastly, neither Rocksoft nor A.C.N. is party to the original infringement action concerning the '810 Patent, the counter-counterclaim for infringement Quantum has filed with the California Court, or Riverbed's counterclaim regarding the '249 Patent. It is unfair, and unconstitutional, to haul two Australian companies into court in Delaware when they have had no involvement with the underlying litigation whatsoever. Accordingly, the court must dismiss this action as to A.C.N. and Rocksoft for lack of personal jurisdiction.

**B.      Riverbed's Complaint Must be Dismissed Because There Is No Longer a Case or Controversy Between Riverbed, A.C.N. and Rocksoft**

"Under the Declaratory Judgment Act, a live controversy must be present at all stages of review, not just at the time the complaint is filed." *Bristol-Myers Squibb Co. v. Erbamont, Inc.*, 734 F. Supp. 661, 633 (D. Del. 1990) (controversy no longer existed when plaintiff admitted that it no longer intended to import the allegedly infringing material in the United States until after patent had expired) (emphasis in the original); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("An actual controversy must be extant at all stages of review, not merely at the time the complaint was filed.")

-16-

On February 8, 2008, Rocksoft, which owns all rights in the "810 Patent, granted Quantum an exclusive license. (*See* Flores Decl. ¶ 27, Ex. H.) This Agreement terminated the previous licensing agreement between Rocksoft and A.C.N. Since A.C.N. no longer has any rights in the '810 Patent, and therefore cannot sue Riverbed for infringement, no controversy now exists between it and Riverbed. Similarly, pursuant to the license agreement, Rocksoft transferred all of its rights in the '810 Patent to Quantum, including its ability to file infringement suits. Since Rocksoft cannot sue a party (including Riverbed) for infringement of the '810 Patent, it follows that it cannot be brought in as a party to a declaratory judgment action. *Cf. Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202-03 (Fed. Cir. 2005) (once parent assigned its rights in patent to its subsidiary, it no longer had standing to sue since it lost "its personal stake in the outcome.") Accordingly, any controversy that existed between Rocksoft, A.C.N. and Riverbed has been extinguished, and this action should be dismissed.

C.      **Riverbed's Complaint Should be Dismissed Because Venue is Improper**

A court may dismiss or transfer an action pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406 if it is brought in an improper venue. Venue is improper if (1) the defendant does not reside in the district where the suit is brought, (2) a substantial part of the claim did not occur in the district where the suit is brought, or (3) the plaintiff's choice of venue does not comply with a valid forum-selection clause. 28 U.S.C.A. § 1400(b); *see also St. Clair Intellectual Prop. Consultants, Inc. v. Mirage Systems, Inc.*, 419 F. Supp. 2d 620, 623 (D. Del. 2006) (transferring action for improper venue when all events concerning ownership of patent took place in California, not in Delaware). Venue requirements exist for the benefit of defendants. *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996). "The first test for venue under § 1400(b) with respect to a defendant that

-17-

is a corporation . . ., is whether the defendant was subject to personal jurisdiction in the district of

suit at the time the action was commenced." *VE Holding Corp. v. Johnson Gas Appliance Co.*,

917 F.2d 1574, 1583 (Fed. Cir. 1990).

Since the Court does not have personal jurisdiction over A.C.N. and Rocksoft, as

they are Australian companies incorporated in Australia and have no contacts with the Delaware,

and none of the events at issue transpired in Delaware, clearly venue here is improper.

Moreover, as discussed below, California, not Delaware, is the more appropriate forum for this

dispute.  Accordingly, the Court should dismiss or transfer this case for improper venue.

## V.

## SHOULD THE COURT FIND THAT THE CASE IS PROPERLY BEFORE IT, IT

## SHOULD TRANSFER THIS ACTION TO THE NORTHERN DISTRICT OF

## CALIFORNIA FOR REASONS OF EFFICIENCY, CONSISTENCY, CONVENIENCE

## AND FAIRNESS

Even if the Court were to find that it has subject matter jurisdiction and personal

jurisdiction over this matter, it should transfer this case back to the Northern District of

California pursuant to 28 U.S.C. § 2201(a) and 28 U.S.C. § 1404(a).

"There is no absolute right to a declaratory judgment, for the statute specifically

entrusts courts with discretion to hear declaratory suits or not depending on the circumstances.

The court must make a reasoned judgment whether the investment of time and resources will be

worthwhile." *Serco Servs. Co. v. L.P. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).

Moreover, "[f]or the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been

brought." 28 U.S.C. § 1404(a).

A.    **This Case Should be Transferred Because the California Court Has Spent Significant Time and Effort on the Matter and the Same Parties Are Litigating the Same Issues In California**

It is not good use of this Court's time or resources to relitigate a claim on which the California Court already has spent much time and effort. Realistically, the California case is the true first in time matter. Quantum filed its '810 Patent infringement action, and Riverbed filed its declaratory judgment counterclaim, nearly six months prior to the initiation of this action.

The Court need not blind itself to the fact that the California Court has done considerable work on the '810 Patent claim when exercising its discretion. When a parallel matter involving the same parties and the same issues is proceeding in another forum, courts favor transfer for **"it is in the interest of justice to permit suits involving the same parties and issues to proceed before one court."** *See Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504, *3 (D. Del. 2006) (emphasis added). Factors supporting a decision to transfer include whether the litigation in the target forum involves: (1) the same parties, (2) related or similar technologies for the judge to become familiar with, and (3) common field of prior art. *Id.*

The fact that identical proceedings are taking place in California before a judge who is familiar with the technology and the parties favors transfer to that venue. For example, in *Cashedge, Inc. v. Yodlee, Inc.*, 2006 WL 2038504, *3 (D. Del. 2006), this Court transferred a first-in-time patent infringement case to California where related patent litigation between the same parties had been proceeding. The court concluded that the transfer was appropriate because the technologies at issue were related and the California Court was more convenient

because "the parties and potential witnesses have proven capable to litigate there, and the court is already familiar with the parties and their technologies." *Id.* at *2. Since the California proceeding involved "the same parties, similar technologies, and related patents in-suit" and the court was in the process of conducting a Markman hearing, California was the more appropriate forum. *Id.* at *3. *See also, Brunswick Corp. v. Precor Inc.*, 2000 WL 1876377, at *3 (D. Del. 2000) (transferring case to Washington court where related litigation had been pending and neither party had a physical presence in Delaware); *Sanyo Electric Trading Co. Ltd. v. Masco Corp.*, 429 F. Supp. 1023 (D. Del. 1977) ("[t]he societal interest in preserving limited judicial resources is hardly protected by proceeding simultaneously in two forums to resolve the same questions, thus the Court concludes that a transfer would substantially aid the interests of justice.")

Similarly, in *Optical Recording Corp. v. Capitol–EMI Music, Inc.*, 803 F. Supp. 971 (D. Del. 1992), the plaintiff in a declaratory judgment action filed in New York, which was the first in time, filed a motion with a Delaware court to dismiss a later-filed infringement action regarding the same patents. Prior to the initiation of the two cases, the patent holder had appeared before the same Delaware court in a patent infringement case against another party concerning the same technology. Recognizing that the plaintiff had filed the declaratory judgment action in New York to avoid being confronted with the Delaware court's earlier ruling, the Delaware court denied the motion and concluded that Delaware was the more appropriate forum. While acknowledging the first in time rule, the court noted "it is easily reasonable and practical for a district court not to defer to the first-filed jurisdiction if the court can demonstrate that the second-filed court can insure that it is in a better position to preserve judicial resources and avoid duplication." *Id.* at 973.

-20-

In support of its decision, the *Optical Recording* Court noted that patent lawsuits are recognized by all as complicated. When the technology at issue before one court for the first time is the same as the technology with which another court is familiar, the latter court should retain jurisdiction for reasons of judicial economy and efficiency. "The Court's familiarity with the subject matter of the litigation will reduce the expenditure of judicial resources in the handling of this matter." *Id*. at 974. While finding that this circumstance alone was sufficient, the court also emphasized that the Delaware case was proceeding at a more rapid pace (e.g., discovery had commenced and the court had entered a scheduling order) than the New York case. This circumstance, along with the Delaware court's familiarity with the issues involved, were more than adequate to justify departure from the first in time rule.

There is no question that the California Court is in a better position to resolve the dispute over the '810 Patent. The very same issues which only recently came before this Court have been proceeding before Judge Alsup for over six months, who is now familiar with the technology and the parties involved. The California Court has set a scheduling order, the parties are in the midst of extensive discovery, have already exchanged their claim terms for construction, and the claim construction hearing has been set for May 7. (Flores Decl. ¶¶ 4-22, Exs. C, D.)

Furthermore, as Riverbed has made clear, its counterclaim involving a very similar patent and technology, which lists the '810 Patent as prior art, will proceed in California. (Flores Decl. ¶ 25, Ex. F.) It is highly inefficient, for both the courts and the parties to proceed with two separate cases, located on separate coasts, concerning the same matters, the same issues, and the same parties. This situation, which is extremely wasteful, also leads to a high risk of inconsistent results.

**B.**     **The Court Should Transfer This Action Because Plaintiff's Action is Nothing More than Blatant Forum Shopping**

In addition to the interests of efficiency and consistency, a case should be transferred to the more appropriate forum "where forum shopping alone motivated the choice of sites for the first suit." *Kahn .v General Motors, Corp.*, 889 F.2d 1078 (Fed. Cir. 1989). For example, in *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995), the Federal Circuit upheld the lower court's decision to transfer the first-in-time declaratory judgment action filed in Texas to Wisconsin, where the patent infringement action was subsequently filed. The court concluded that the plaintiff had filed its suit in anticipation of the defendant's infringement action, and that this anticipatory filing, coupled with convenience factors, i.e., the location of witnesses and documents, justified departure from the first in time rule. *See also E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 978 (3d Cir. 1988) (denying motion to dismiss second-filed action when University first-filed declaratory judgment action was an attempt to avoid enforcement of a subpoena in a district with favorable precedent and constituted "a lamentable spectacle," which was "tantamount to the blowing of a starter's whistle in a foot race."); *Rayco Mfg. Co. v. Kelley Co., Inc.*, 148 F. Supp. 588, 592-93 (S.D.N.Y. 1957) (courts should not reward "deplorable" tactical antics, advanced simply to add "undue expense and vexatious situations on the court.")

As Riverbed's counsel admitted, this action is nothing more than tactical posturing. (Flores Decl. ¶ 24, Ex. E at pg. 6, lines 16-20.) Riverbed seeks to continue forward at rapid pace with its counterclaim on the '249 Patent in California, while Quantum is forced start at square one again before another court in an inconvenient forum, in spite of the many months of work in California. At oral argument, Judge Alsup clearly saw this maneuver for what it was,

commenting on Riverbed's strategy to keep the '249 claim before him and to force Quantum's

claim to be "mired down in some other court somewhere else in the country." (*Id.* pg. 14,

lines 20-25.)

       If adopted widely, such forum shopping tactics would significantly impede the

efficient adjudication of patent infringement disputes, which are by their nature time-consuming

and expensive for all concerned. Such maneuvering for no valid reason whatsoever should not

be tolerated by the courts. *See Rayco Mfg. Co.*, 148 F. Supp. at 593.

**C.**    **The Court Should Transfer this Action Because the Balance of Conveniences Weigh**

      **Heavily In Favor of California or a Forum**

       The balance of conveniences also weighs in favor of transferring this declaratory

relief action back to California. When determining whether to transfer a case, courts will

consider a number of private and public factors, ranging from the plaintiffs' choice of forum, the

convenience to the parties and witnesses, the location of evidence, and the court's ability to

effectively administer the case. *See Cashedge Ins.* 2006 WL at *2. Here, Riverbed seeks a

venue outside its "home turf" for no other reason than to impair Quantum by causing delay and

increased costs. When the plaintiff has not brought the action on its own "home turf," the

convenience to the plaintiff is not as great, and thus the onus on the defendant to demonstrate

reasons not to honor the plaintiff's chosen forum is diminished. *Sony Corp. v. Quantum Corp.*,

16 U.S.P.Q.2d 1446, 1447 (BNA) (D. Del. Mar. 5, 1990) (transferring first filed declaratory

judgment action to Texas infringement proceedings when plaintiff's principal places of business

was in New York and New Jersey, defendant's place of business was Texas and most of the

evidence was in Texas).

The principal places of business for both Quantum and Riverbed are in California — San Jose and San Francisco, respectively. Riverbed can hardly argue with the venue of the Northern District Court of California, which presides in San Francisco as well. Clearly, a court located in your hometown is more of a "home turf" advantage than one located on the opposite side of the country.

Much of the evidence in this case is in California and none of it is known to be in Delaware. (Flores Decl. ¶¶ 29-36.) A number of witnesses designated by Riverbed and Quantum in their initial disclosures are in California. (Flores Decl., ¶¶ 31, 32.) Four of the six locations designated by Riverbed as holding relevant documents and information are in California, and none of them is in Delaware. (*Id.* ¶¶ 30, 32, 24.) The attorneys for both parties are in California. (*Id.* ¶¶ 35-36.) Given the location of the witnesses and documents, the subpoena power of the California Court will be of greater utility than that of this Court. Furthermore, it will certainly be less burdensome for the witnesses involved to appear in California than to travel across the country to Delaware.

Indeed, the only conceivable argument Riverbed can offer in opposition to transfer is the fact that both Riverbed and Quantum are incorporated in Delaware. Quantum recognizes that this Court often has found a defendant's status as a Delaware corporation to be a sufficient basis to deny transfer. However, in this case, the lack of any other connection to Delaware, coupled with the inefficiency of litigating the '810 patent here and Riverbed's impure motives in filing here, strongly favor this Court's exercise of its discretion to transfer the case to California. To conclude otherwise would be to reward Riverbed's tactics rather than discourage them, and would be contrary to the interests of justice and to this Court's need to appropriately allocate its limited resources – particularly at a time when the Court is experiencing a prolonged

judicial vacancy, with no relief in sight.  Thus, for reasons of efficiency, consistency, convenience, fairness, and in the interests of justice, Quantum respectfully requests, as an alternative to dismissal, that this action be transferred back to Judge Alsup in the Northern District of California.

**VI.**

**CONCLUSION**

For the foregoing reasons, the complaint in this action should be dismissed or, in the alternative, transferred to the Northern District of California.

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
302-654-1888

*Of Counsel:*

Amar L. Thakur
Mauricio A. Flores
Sheppard, Mullin, Richter & Hampton LLP
12275 El Camino Real, Suite 200
San Diego, California  92130-2006
858-720-8900

*Attorneys for Defendants*

Dated:  February 14, 2008

188242.1