1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Claude M. Stern (Bar No. 96737)
2    claudestern@quinnemanuel.com
     Todd M. Briggs (Bar No. 209282)
3    toddbriggs@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
4  Redwood Shores, California 94065-2139
   Telephone:     (650) 801-5000
5  Facsimile:     (650) 801-5100

6  Attorneys RIVERBED TECHNOLOGY, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12  RIVERBED TECHNOLOGY, INC., a Delaware corporation, | Case No. C 07-04161 WHA |
| 13           Counterclaimant, | Honorable William H. Alsup |
| 14       vs. | **RIVERBED'S OPENING CLAIM CONSTRUCTION BRIEF ON TERMS FROM U.S PATENT NO. 7,116,249** |
| 15  QUANTUM CORPORATION, a Delaware corporation, | |
| 16           Counterdefendant. | Date:    July 9, 2008<br>Time:    1:30 p.m.<br>Crtrm.:  Courtroom 9 |
| 17 | |
| 18  QUANTUM CORPORATION, a Delaware corporation, | |
| 19           Counterclaimant, | |
| 20       vs. | |
| 21  RIVERBED TECHNOLOGY, INC., a Delaware corporation, | |
| 22           Counterdefendant. | |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.   RIVERBED'S '249 PATENT ................................................................................. 1

    A.   Claims Including "Reference Label" ......................................................... 2

    B.   Claims Including "Back-End Storage System" ......................................... 4

III.  LEGAL STANDARDS .......................................................................................... 5

IV.  DISPUTED CLAIM TERMS AND PHRASES .................................................... 6

    A.   "Reference Label" ....................................................................................... 6

    B.   "Back-End Storage System" ..................................................................... 10

V.   PRECIS OF EVENTUAL SUMMARY JUDGMENT ISSUES ......................... 14

VI.  CONCLUSION .................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*E-Pass Tech., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007) .................................................................................................5

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
   424 F.3d 1324 (Fed. Cir. 2005) ............................................................................................ 7, 12

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
   863 F.2d 855 (Fed. Cir. 1988) ................................................................................................. 12

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ...................................................................................................................3

*McCarty v. Lehigh Val R Co.*,
   160 U.S. 110 (1895) ...................................................................................................................7

*Netflix, Inc. v. Blockbuster, Inc.*,
   477 F. Supp. 2d 1063 (N.D. Cal. 2007) ............................................................................... 4, 10

*PSC Computer Products, Inc. v. Foxconn Intern., Inc.*,
   355 F.3d 1353 (Fed. Cir. 2004) ..................................................................................................7

*Paczonay v. American Recreation Products, Inc*,
   No. C 06-03190 WHA, 2007 WL 295550 (N.D. Cal. Jan. 30, 2007) ..................................... 10

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ......................................................................................... *passim*

*Resonate Inc. v. Alteon Websystems, Inc.*,
   338 F.3d 1360 (Fed. Cir. 2003) ..................................................................................................7

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 (Fed. Cir. 1985) ..................................................................................................7

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*,
   358 F.3d 870 (Fed. Cir. 2004) ....................................................................................................7

*Zenon Environmental, Inc. v. U.S. Filter Corp.*,
   506 F.3d 1370 (Fed. Cir. 2007) ..................................................................................................1

**Regulations**

37 C.F.R. § 1.57 ................................................................................................................................1

## I.  INTRODUCTION

Riverbed Technology, Inc. ("Riverbed") submits this opening brief in support of its proposed constructions for U.S. Patent No. 7,116,249 ("the '249 patent"). This case involves crossing patent infringement allegations. Riverbed alleges that Quantum Corporation ("Quantum") infringes the '249 patent, and Quantum alleges that Riverbed infringes U.S. Patent No. 5,990,810 ("the '810 patent"). The parties have isolated five phrases total from both patents for the claim construction proceedings pursuant to this Court's instructions. Two of those phrases are from the '249 patent, and the other three are from the '810 patent. The parties agreed that Riverbed's opening brief will focus on the two terms from the '249 patent, and Quantum's opening brief will focus on the three terms from the '810 patent. Therefore, this brief addresses the two identified phrases from the '249 patent, "reference label" and "back-end storage system." This brief is supported by the Declaration Of Todd M. Briggs In Support Of Riverbed's Opening Claim Construction Brief On Terms From U.S. Patent No. 7,116,249.[1]

## II.  RIVERBED'S '249 PATENT

The '249 patent (Briggs Decl., Ex. A.) discloses novel methods and systems for storing data and files using novel data compression techniques. The '249 patent is titled "Content-Based Segmentation Scheme for Data Compression in Storage and Transmission Including Hierarchical Segment Representation." The '249 patent incorporates by reference U.S. Patent No. 7,120,666 (Serial No. 10/285,315) (Briggs Decl., Ex. B) titled "Transaction Accelerator for Client-Server Communication Systems" ("the '666 patent"). *See* '249 patent col. 1:29-34. Accordingly, the specification for the '666 patent is part of the intrinsic record for claim construction purposes. *See* 37 C.F.R. § 1.57; *Zenon Environmental, Inc. v. U.S. Filter Corp.*, 506 F.3d 1370, 1378 (Fed. Cir. 2007) ("Incorporation by reference provides a method for integrating material from various

---

[1] "Briggs Decl., Ex. __" refers to the Exhibits attached to the Declaration Of Todd M. Briggs In Support Of Riverbed's Opening Claim Construction Brief On Terms From U.S. Patent No. 7,116,249.

documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.").

The claims of the '249 patent relate to novel data compression and storage techniques. The '249 patent explains that data compression "is a process of representing input data as compressed data such that the compressed data comprises fewer bits or symbols than the input data and is such that the compressed data can be decompressed into at least a suitable approximation of the original input data." *Id*. col. 1:42-47. Data compression allows for more efficient transmission of data, as fewer bits need to be sent to allow a receiver to recover the original set of bits, and data compression similarly allows for more efficient storage as fewer bits need be stored. *See id*. col. 1:47-51.

### A.  Claims Including "Reference Label"

The term "reference label," the first of the two terms from the '249 patent to be construed, appears throughout the claims of the '249 patent. Claim 1, for example, recites:

> 1. A method for storing data, comprising:
>
> receiving a file from a client at a server;
>
> segmenting the file into one or more segments;
>
> forming a list, comprising:
>
>> determining whether each segment is present in a segment store, wherein a segment that is present in the segment store has an assigned **reference label**;
>>
>> for each segment present in the segment store, adding to the list the assigned **reference label**; and
>>
>> for each segment not present in the segment store, assigning a **reference label** to the segment, storing the segment and the **reference label**, and adding the **reference label** to the list; and
>
> storing an association between the file and the list.

This claim involves a novel technique for storing data in a client-server system. A file is segmented into segments, which are strings or sequences of data. The segments can then be assigned reference labels. Reference labels are data used to identify the segments. If a common segment is found in a file, the same reference label can be used to replace multiple occurrences of

the common segment. By using the same reference label in place of common segments, less data is stored in a storage system thereby compressing the stored data.

As a simplistic illustration, suppose a file contains the following text: "We went to the baseball game last night. At the baseball game, I caught a fly ball. I drove home after the baseball game." In this file, the term "the baseball game" repeats several times. By identifying the text "the baseball game" as a segment and assigning it a reference label such as "QWX", the file could be represented as follows: "We went to QWX last night. At QWX, I caught a fly ball. I drove home after QWX." By storing this representation of the file with the reference labels "QWX" instead of the full text "the baseball game," less data is stored in a storage system.

The specification of the '249 patent describes how reference labels are used to identify segments. As illustrated in FIG. 3 of the '249 patent, which is shown below, input data is segmented into segments $S_A$, $S_B$, $S_C$ . . . $S_G$. Reference labels are then assigned to segments, and reference bindings for segments are stored in the persistent segment store ("PSS"). The compressed data, which is made up of references, unreferenced segments, and bindings, has fewer bits than the input data, and therefore is a more efficient representation of the input data.



FIG. 3

B. **Claims Including "Back-End Storage System"**

The second of the two terms from the '249 patent to be construed, "back-end storage system," appears in independent claims 19 and 25. Claim 19 recites:

> 19. A system for storing files, comprising:
>
> a front-end file system for receiving from a client a file command for a file, wherein the front-end file system includes a front-end file server;
>
> a **back-end storage system** including logic to segment the file; and a segment store for storing the segments;
>
> a network file system interface for sending or receiving contents of the file between the front-end file system and the **back-end storage system**.

The specification of the '249 patent describes an exemplary system for storing files in FIG. 14, which is shown below. Clients ("C") are connected to a front-end file system (the box including "File Server" and "File System Cache"), which is connected to a back-end storage system (the box including "NLFS" and "PSS"). The near-line file system ("NLFS") segments data received by the front-end file system "to efficiently store file data such that only a single copy of each common segment need be stored once." *See id.* col. 15:62-63. Because a single copy of each common segment is only stored once, fewer bits are stored and therefore data storage is more efficient.



FIG. 14

## III. LEGAL STANDARDS

"The construction of a patent, including terms of art within its claim, is exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "[T]he words of a claim are generally given their ordinary and customary meaning," where "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc).

"Where this ordinary and customary meaning is not immediately clear, courts must primarily look to intrinsic evidence (*i.e.*, the claims, the specification, and the prosecution history) to determine the meaning." *Netflix, Inc. v. Blockbuster, Inc.*, 477 F. Supp. 2d 1063, 1066 (N.D. Cal. 2007). A court must distinguish "between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Phillips*, 415 F.3d at 1323.

"Although courts have the discretion to consider extrinsic evidence, including expert and inventor testimony, dictionaries and scientific treatises, such evidence is 'less significant than the *intrinsic* record in determining the legally operative meaning of claim language.'" *Netflix*, 477 F. Supp. 2d at 1066 (quoting *Phillips*, 415 F.3d at 1317). "The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1315.

Riverbed believes that the Court only needs to consider the intrinsic evidence, with particular emphasis on the plain claim language, in construing the terms "reference label" and "back-end storage system."

## IV. DISPUTED CLAIM TERMS AND PHRASES

The parties have isolated two phrases from the '249 patent for the claim-construction hearing, "reference label" and "back-end storage system."

### A. "Reference Label"

The parties' constructions for this term are as follows:

| Riverbed's Construction[2] | Quantum's Construction[3] |
|---|---|
| data used to identify a segment | globally unique data used to identify a segment |

The parties agree that a reference label is "data used to identify a segment." The difference in the constructions is whether a reference label must be "globally unique." As explained below, Riverbed's construction is supported by the plain claim language and the specification whereas Quantum attempts to improperly import the "globally unique" language from a single occurrence of that language in the specification of the '249 patent.

Quantum did not add its "globally unique" limitation to its construction until hours before the parties filed their Joint Claim Construction Statement with the Court. Until that time, Quantum stated that reference label should be construed as "data representing a segment used to locate bindings of segment data and segment references."[4] And according to Quantum, its expert was prepared to testify that "one of ordinary skill in the art would understand the term reference label to be defined in the specification to mean data representing a segment used to locate bindings of segment data and segment references."[5] Neither Quantum's nor its expert's constructions before their eleventh hour shift included the limitation "globally unique."

---

[2] Exhibit A to Joint Claim Construction And Prehearing Statement at 4 (Document 107-2).
[3] *Id.* at 16.
[4] *See* page 5 of Exhibit 1 to Quantum Corporation's Preliminary Claim Constructions And Extrinsic Evidence (Briggs Decl., Ex. C).
[5] *Id.*

### 1. Both the Plain and Ordinary Meaning and the Specification Support Construing "Reference Label" to Mean "Data Used to Identify a Segment."

The plain and ordinary meaning of the term "reference label" suggests it is data that identifies something else. The claims make clear that the something else identified by a reference label is a segment. Claim 1 states that "a segment . . . has an assigned reference label." The fact that reference labels are assigned to segments makes clear that a reference label is "data used to identify a segment."

Riverbed's construction is further supported by the specification. For example, the '249 specification explains how "encoder 140 would process input data, identify segments of data, replace the segment's data with a reference, provide the segment data and a segment reference to PSS [persistent segment store] 142 in the form of a binding and output the encoded data." *Id.* col. 6:38-42. The '249 patent also explains that, after a reference label has been assigned to a segment, that reference label "can be used to identify the repeated sequence later on in the input stream." *Id.* col. 13:63-67.

### 2. Quantum's Proposed Construction Would Import "Globally Unique" from One Embodiment Described in the Specification into the Claims.

Quantum seizes upon one sentence from the specification to support its argument that a reference label must be "globally unique." An embodiment described in the '249 patent shows how segmentation might be used in a client-server transport proxy. *See id.* col. 14:1-15:23. In describing how reference labels might be assigned in this embodiment, the '249 patent states: "As each TT [transaction transformer] creates bindings, it assigns globally unique reference labels so that a recipient of a reference label will always be able to replace it with unambiguous segment data." *Id.* col. 15:19-21. This is the only instance in which the words "globally unique" appear in the '249 patent. The '666 patent similarly only mentions "globally unique" references once in describing a preferred embodiment. *See* '666 patent, col. 14:19-37. By requiring that a reference label be "globally unique," Quantum's proposed construction does not clarify what a reference label is. Rather, Quantum's proposed construction seeks to import a stray limitation from the specification into the claims.

"[A] particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).  A court must "not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005)).  "[T]he written description is not a substitute for, nor can it be used to rewrite, the chosen claim language.  Though understanding the claim language may be aided by the explanations contained in the written description, it is important not to import into a claim limitations that are not a part of the claim." *Resonate Inc. v. Alteon Websystems, Inc.*, 338 F.3d 1360, 1364 (Fed. Cir. 2003).

"To quote an oft-repeated phrase:  'Specifications teach.  Claims claim.'" *PSC Computer Products, Inc. v. Foxconn Intern., Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004) (quoting *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985)); *see also McCarty v. Lehigh Val R Co.*, 160 U.S. 110, 116 (1895) ("[W]e know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement.").  As the Federal Circuit explained in *Philips*, "To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so.  One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case." *Phillips*, 415 F.3d at 1323.

### 3. The '249 Patent and Other Intrinsic Evidence Describe Reference Labels That Are Not "Globally Unique."

Quantum's attempt to import the "globally unique" limitation into the claims is undermined by the intrinsic evidence. The specification for the '249 patent repeatedly mentions reference labels, but only refers to them as being "globally unique" in one instance. Furthermore, the specification for the '666 patent, which is incorporated by reference into the '249 patent, explains that when it is desired that a reference label be "unique," the schemes by which data is segmented allow for the possibility that two different segments could have the same reference label:

> Several schemes are usable to ensure that each named segment has a unique name throughout the system at any given time (i.e., that no two segments with different data are erroneously assigned the same name). In one approach, every segment reference is generated as a large random number, where the number of unique references is much lower than the space of all possible large random numbers. This scheme is less than desirable because a small possibility exists that two segments will have the same segment reference but different segment data, which would cause a receiving TA [transaction accelerator] to erroneously reconstruct a message with the wrong data.
>
> Another scheme is to generate hashes from the segment data so that each segment reference is a hash of the segment data and different segment data will result in different hashes, except in very rare cases. Yet again, the rare cases will always be problematic, as long as two degenerate segments with the same reference but different segment data exist in the system. Unlike the random number case, this problem will recur every time that particular data pattern exists in the data stream.

'666 col. 14:42-62. Quantum may be arguing that a reference label is not "globally unique" if there is any possibility, however small, that two different segments could be assigned the same reference label. But Quantum ignores the fact that the specifications of the '249 and '666 patents specifically recognize that reference labels do not have to be "globally unique" and that two different segments could be assigned the same reference label in some cases. *SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (a particular embodiment "may not be read into a claim when the claim language is broader than the embodiment."). Quantum also ignores the simple fact that the claim language does not require that a reference label be "globally unique." The Court should adopt Riverbed's proposed construction of "reference label" as "data used to identify a segment."

B. **"Back-End Storage System"**

The parties' constructions for this term are as follows:

| Riverbed's Construction[6] | Quantum's Construction[7] |
|---|---|
| plain and ordinary meaning | a non-local, HCS-enabled storage system that accepts commands from a front-end file server to store and retrieves [sic] whole files |

As explained below, the terms "back-end" and "storage system" are simple and commonly-understood terms that do not require construction. Nevertheless, Quantum presents a tortured construction that imports every conceivable limitation it could identify from the specification. And as with its construction for "reference label," Quantum changed its construction for "back-end storage system" just hours before the parties filed their Joint Claim Construction Statement. Prior to that eleventh hour change, Quantum and its expert believed that "back-end storage system" should be construed as "a non-local, near-line storage system that only communicates with the front end file server."[8] Quantum's last minute change injected several additional limitations, including that the back-end storage system must be "HCS-enabled," that it must "accept commands from a front-end file server" and not just "communicate" with the front-end file server, and that it must "store and retrieves [sic] whole files." Quantum's last minute rush to add limitations is telling.

1. **"Back-End Storage System" Should Be Given Its Plain and Ordinary Meaning and Does Not Require Clarification.**

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005). "A district court need not

---

[6] *See* Exhibit A to Joint Claim Construction And Prehearing Statement at 7 (Document 107-2).
[7] *Id.* at 22.
[8] *See* page 11 of Exhibit 1 to Quantum Corporation's Preliminary Claim Constructions And Extrinsic Evidence (Briggs Decl., Ex. C).

construe every single disputed word." *Netflix, Inc. v. Blockbuster, Inc.*, 477 F. Supp. 2d 1063, 1068 (N.D. Cal. 2007) (holding that "movie" and "item" were commonly-understood English words that needed no clarification); *see also Paczonay v. American Recreation Products, Inc.*, No. C 06-03190 WHA, 2007 WL 295550, at *2 (N.D. Cal. Jan. 30, 2007) ("Because 'tubular' has a commonly-understood meaning and there is no basis on which to conclude that it was used in any specialized way, there is no need to give it further definition, with one minor exception."). The term "back-end storage system" has such a commonly understood meaning and therefore needs no clarification.

The term "back-end" is a common term that describes the relative position of an object. A juror, for example, would understand from everyday experience what the "back-end" of a car is or the "back-end" of a house is. Here, the claims refer to a "front-end file system" and a "back-end storage system." *See* '249 patent col. 19:27-36, 20:12-22. Thus, the file system is located in the front portion of the overall system and the storage system is located in the back portion of the overall system. Likewise, the term "storage system" is straightforward. Again a juror would understand that the storage system is simply a system that stores data.[9] Accordingly, "back-end" and "storage system" are commonly-understood English words that do not need clarification.

Quantum's proposed construction of "back-end *storage system*" is "a non-local, HCS-enabled *storage system* that accepts commands from a front-end file server to store and retrieves [sic] whole files." Because Quantum includes the term "storage system" in its proposed construction of "back-end storage system," Quantum essentially agrees with Riverbed at least that the term "storage system" needs no clarification. In other words, Quantum and Riverbed are both proposing that the term "storage system" should be given its plain and ordinary meaning.

---

[9] This is also consistent with the commonly-understood meanings for "storage" and "storage device." *Microsoft Press Computer Dictionary* (2d ed. 1994) (Briggs Decl., Ex. D) (defining "storage" as "In computing terms, any physical device in or on which computer information can be kept," and "storage device" as "Any apparatus for recording computer data in permanent or semipermanent form. A disk drive, along with the disks it records on, is a storage device.").

### 2. **Quantum's Proposed Construction of "Back-End Storage System" Would Improperly Import Three Separate Limitations from the Specification into the Claims.**

Quantum's proposed construction improperly imports into "back-end storage system" the following limitations: (1) "non-local," (2) "HCS-enabled," and (3) "that accepts commands from a front-end file server to store and retrieves [sic] whole files."

Quantum's "non-local" limitation finds no support in the claims or even the specification. Construing the term "back-end storage system" to be a "non-local" storage system, as proposed by Quantum, does not clarify the meaning of the term. As is discussed above, "back-end" is a commonly understood word that suggests relative position. While the term "non-local" may similarly suggest relative position, that term does not clarify what "back-end" means. Another reason that the Court should not construe "back-end" to mean "non-local" is that "local" is defined in the '249 patent but is not used in the claims. *See* '249 patent col. 4:48-54 ("As used herein, the terms 'near', 'far', 'local' and 'remote' might refer to physical distance, but more typically they refer to effective distance. The effective distance between two computers, computing devices, servers, clients, peripherals, etc. is, at least approximately, a measure of the difficulty of getting data between the two computers."). Quantum pulls the term "non-local" out of thin air. "Non-local" appears nowhere in the '249 patent. Quantum is thus trying to import a term that does not appear in the claims *or even the specification*. Further, it appears that Quantum may be trying to import a physical distance limitation into the claims when the claims only specify relative positions with "front-end" and "back-end."

The remaining parts of Quantum's proposed construction of "back-end storage system" reflect a transparent attempt to read specific embodiments described in the specification into the claims. Under Quantum's proposed construction, a back-end storage system must be "HCS-enabled" and must accept "commands from a front-end file server to store and retrieves [sic] whole files." While the specification of the '249 patent does include embodiments that are "HCS-enabled" with a "whole-file" interface, that is a preferred embodiment that should not be read into the claims. *See id.* col. 15:44-49 ("A better approach is to apply HCS to a file system that employs whole-file accesses rather than block-based accesses."); *see also Laitram Corp. v. Cambridge*

1   *Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such
2   as those often present in a specification, are not claim limitations."). The quoted statement
3   discussing "whole-file accesses" is by its own terms a preferred embodiment, and nothing in the
4   '249 patent suggests an intention to limit the claims to that embodiment. Quantum's attempt to
5   limit the claims to an "HCS-enabled" back-end storage system that stores and retrieves "whole
6   files" also ignores the parts of the specification that lack those limitations. With respect to
7   Quantum's "HCS-enabled" limitation, portions of the specification describe only one level of
8   references rather than the hierarchy of references used in HCS. *See, e.g.*, '249 patent col. 6:63-7:2
9   & FIG. 3. With respect to Quantum's storing and retrieving "whole files" limitation, the
10  specification discusses accessing files using other techniques, such as "block based" file accesses.
11  *See, e.g., id.* col. 15:40-45.

12      By requiring that a back-end storage system be "HCS-enabled" and must accept
13  "commands from a front-end file server to store and retrieves [sic] whole files," Quantum's
14  proposed construction also does not clarify what a back-end storage system is. Rather, Quantum's
15  proposed construction simply seeks to import limitations from embodiments into the claims. A
16  court must "not import limitations into claims from examples or embodiments appearing only in a
17  patent's written description, even when a specification describes very specific embodiments of the
18  invention or even describes only a single embodiment, unless the specification makes clear that
19  'the patentee . . . intends for the claims and the embodiments in the specification to be strictly
20  coextensive.'" *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir.
21  2005) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005)).

22      The term "back-end storage system" should be given its plain meaning and needs no
23  specialized construction. The Court should reject Quantum's attempt to read limitations from thin
24  air and the specification into the claims.

## V. PRECIS OF EVENTUAL SUMMARY JUDGMENT ISSUES

As requested in Paragraph 4 of the Case Management Order (Document 23), Riverbed includes the following precis of the eventual summary-judgment issues and how claim construction differences may affect summary judgment. Riverbed believes that Quantum is attempting to improperly narrow the scope of the claims with its proposed constructions to support a non-infringement argument. Riverbed also believes that summary judgment of infringement would be warranted should the Court adopt its proposed constructions.

## VI. CONCLUSION

For the reasons stated in this brief, the Court should adopt Riverbed's proposed constructions. "Reference label" should be construed as "data used to identify a segment." The term "back-end storage system" should be given its plain and ordinary meaning and does not require clarification.

DATED: May 29, 2008                     Respectfully submitted,

                                        QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP


                                        By /s/ Claude M. Stern
                                           Claude M. Stern
                                           Attorneys for RIVERBED TECHNOLOGY, INC.