quinn emanuel trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: (650) 801-5000 FAX: (650) 801-5100

June 3, 2008

Honorable William Alsup
450 Golden Gate Ave., Courtroom 9, 19th Floor
San Francisco, CA 94102

Re: *Quantum Corporation v. Riverbed Technology, Inc.* (No. C 07-4161 WHA)

Dear Judge Alsup:

As counsel for Riverbed, we write to Your Honor about what we believe is an abuse of the discovery process by Quantum. Because we have been unable to resolve this issue with Quantum's counsel, we seek the Court's assistance.

This is a relatively straightforward patent infringement action with a discrete number of accused products and issues. Riverbed propounded specific document requests to Quantum and reasonably expected to obtain a set of responsive documents from Quantum. Instead, Quantum has produced an astounding *1.75 million pages* to date.

Quantum's production appears to be a classic "document dump." The production is a disorganized mass of information – the equivalent of approximately 500 boxes of documents. Compounding the problem further (and demonstrating that Quantum's production is indeed a "dump"), Quantum has produced large quantities of non-responsive and irrelevant documents. Although Quantum's motivation for producing a disorganized mass of documents that includes non-responsive and irrelevant information is not known, the circumstances suggest Quantum is attempting to harass and impose significant burdens and costs on Riverbed.

Riverbed should not be required to spend hundreds of thousands of dollars (if not more) organizing Quantum's mammoth production and weeding out the irrelevant information. Accordingly, Riverbed respectfully requests that the Court order Quantum to comply with Rule 34(b), to remove the unresponsive and irrelevant documents from its production, and to pay for all fees and costs Riverbed has incurred in reviewing Quantum's production as explained below.

**Quantum Should be Ordered to Identify Which Documents it Produced are Responsive to Each Specific Riverbed Document Request Pursuant to Rule 34(b)**

Under Rule 34(b)(2)(E), Quantum "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in [Riverbed's document] request[s]." When it became clear that Quantum's production was becoming excessive[1] and failed to meet the requirements of Rule 34(b), Riverbed contacted Quantum and requested that it comply with that rule. (Ex. A at 1.) Quantum did not dispute that its production failed to meet the requirements of Rule 34(b), but claimed it did not have to comply with the rule based on a stipulation the parties reached early in the case. (Ex. B at 3.)

---

[1] Riverbed is concerned that Quantum is burying key documents within its production. *See* Fed. R. Civ. P. 34, Advisory notes, 1980 Amendment ("It is apparently not rare for parties deliberately to mix critical documents with others in the hope of obscuring significance.").

Honorable William Alsup
June 3, 2008

Quantum's attempt to avoid its obligations under Rule 34(b) is baseless. Quantum knows full well that the parties simply agreed to "produce electronically-stored information . . . in single-page TIFF format" having certain metadata fields. (Joint Case Management Statement, Docket No. 21, ¶ 6.) This agreement did nothing more than clarify the form in which electronic documents would be produced. It did not alter Quantum's obligation to comply with Rule 34(b).

Given the size of Quantum's production, Riverbed respectfully requests that the Court order Quantum to comply with Rule 34(b). *See Residential Constructors, LLC v. ACE Property & Cas. Ins. Co.*, 2006 WL 1582122, at *2 (D. Nev. 2006) ("The Court does not endorse a method of document production that merely gives the requesting party access to a 'document dump,' with an instruction to the party to 'go fish[.]'") (citations omitted).[2]

**Quantum Should be Ordered To Remove Unresponsive Documents From Its Production**

When Riverbed informed Quantum that its production did not comply with Rule 34(b), it also informed Quantum that its production contained large amounts of irrelevant information. (Ex. A.) In response, Quantum claimed that its production is justified because Riverbed's document requests are "broad" and "sweeping" in scope and that Riverbed is getting "what [it] has asked for." (Ex. B.) This is not correct.

Riverbed served two sets of document requests in November 2007. The first set sought documents relating to Quantum's '810 patent infringement claims. The second set sought documents relating to Riverbed's '249 patent infringement claims, including documents relating to a discrete set of accused Quantum products – DXi 3500/5500/7500 and StorNext products that incorporate Quantum's deduplication technology. Riverbed's requests were expressly limited to "Accused Products" and "Patented Products" that use Quantum's "Deduplication Technology," a technology that Quantum did not start incorporating into its products until 2006. Quantum ignored Riverbed's narrow requests and instead produced large volumes of documents relating to earlier versions of its DXi and StorNext products that *do not* incorporate deduplication technology as well as other irrelevant documents. Exhibit C provides examples of irrelevant documents produced by Quantum.[3]

The fact that Quantum is producing documents from numerous individuals who were not identified in its Rule 26(a)(1) disclosures provides further evidence that Quantum is dumping documents. By Riverbed's count, Quantum has produced emails and documents from many individuals who were *not identified* in Quantum's Rule 26(a)(1) disclosures as having information relevant to Quantum's claims or defenses. It is not clear why Quantum is producing large volumes of information from individuals who Quantum did not identify as having information relevant to this action, but such a production strongly suggests that Quantum is

---

[2] *See Stiller v. Arnold*, 167 F.R.D. 68, 70-71 (N.D. Ind. 1996) (production of 7,000 pages of documents which were unorganized and unlabeled violates Rule 34(b)); *Residential Constructors*, 2006 WL 1582122 at *3 (ordering producing party to provide index showing what categories of documents were contained in document dump); *T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, 136 F.R.D. 449, 456 (W.D.N.C. 1991) (ordering producing party to rectify document dump by identifying which documents are responsive to which requests for production).

[3] Upon the Court's request, Riverbed would be happy to provide exemplars of the irrelevant materials that have been produced by Quantum. Riverbed has not provided examples herewith because the Court's Supplemental Order only allows for 12 pages of attachments. (Docket No. 14, ¶ 26.)

51198/2524552.2

Honorable William Alsup
June 3, 2008

producing irrelevant information and/or it is producing documents in a manner that is abusive and designed to burden and harass Riverbed.

Riverbed also notes that, at this stage, it is likely that it has been prejudiced by Quantum's excessive and late production of documents. For example, in the week prior to the May 21 deposition of Dr. Ross Williams, the inventor of Quantum's '810 patent, Quantum dumped more than *100,000 pages* of potentially relevant documents, including approximately 25,000 pages from Dr. Williams' files. Quantum also waited until the day *after* Dr. Williams' deposition to produce an additional *292,000 pages* of potentially relevant documents.

There can be no excuse for Quantum's last minute production of documents from Dr. Williams. Quantum informed Riverbed more than five months earlier, on December 13, 2007, that it would be producing documents from Dr. Williams. (Ex. D.) Understandably, Riverbed did not have ample time and opportunity to review the nearly 400,000 pages before Dr. Williams' deposition. In the event Riverbed discovers it received documents that were important to Dr. Williams' deposition, Riverbed reserves the right to move the Court for an order allowing Riverbed additional time to examine Dr. Williams regarding those documents.

**Quantum Should be Ordered to Pay All Fees and Costs**

Quantum's practice of dumping documents on Riverbed also violates Rule 26(g), which requires that "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name . . . ." That signature certifies that "to the best of the person's knowledge, information, and belief" that the discovery response was, among other things, "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B)(ii)-(iii). By signing its responses to Riverbed's Requests for Production and then producing a mass of documents – including material that is clearly non-responsive and irrelevant – in a disorganized fashion, Quantum violated this rule. Quantum's tactics are harassing, cause unnecessary delay, and needlessly increase the cost of this litigation for Riverbed.

Riverbed has already incurred enormous expense reviewing Quantum's production and will be forced to incur even greater expense wading through the remainder of Quantum's production. Riverbed respectfully requests that, in addition to ordering the relief requested above, the Court order Quantum to pay for all fees and costs it has incurred as a result of Quantum's improper production.[4]

Respectfully submitted,

*/s/ Claude M. Stern*
Counsel for RIVERBED TECHNOLOGY, INC.

---

[4] Where a party violates FRCP 26(g)(3), the rule provides that the Court may "impose an appropriate sanction." The Rules expressly provide an award of attorney's fees as one example of such sanction. *Id*.