# EXHIBIT B



Suite 200 | 12275 El Camino Real | San Diego, CA 92130-2006
858-720-8900 *office* | 858-509-3691 *fax* | **www.sheppardmullin.com**

Writer's Direct Line: 858-720-7413
rhanovice@sheppardmullin.com

May 6, 2008

Our File Number: 16HC-132982

*VIA E-MAIL*

David Wei, Jr., Esq.
Quinn Emanuel LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Direct: (650) 801-5000
Fax: (650) 801-5100

      Re:    *Quantum Corporation v. Riverbed Technology, Inc, C07-04161-WHA*
              Letter regarding Quantum's Production of Documents

Dear David:

      This is in response to your letter of April 30 regarding Quantum's document production to date. Riverbed's Requests for Production ("RFP") are extremely broad. They are directed at two separate patents, seek information about a number of international corporations, and encompass a technology that has been under development for over a decade. Notwithstanding Rocksoft or ADIC, Quantum alone is a billion dollar global corporation with thousands of employees. As I noted in my email of April 30, Quantum has spent an enormous amount of time and money sorting through literally ***millions*** of documents in its possession, custody, and control in a good faith attempt to produce all documents requested under Riverbed's broad discovery requests. As such, your characterization of Quantum's production as "monolithic" and "abusive" is both inflammatory and inaccurate. Riverbed's remaining complaints are also inappropriate, as explained in greater detail below.

    **I.    Riverbed's Document Requests Have an Enormous Scope**

      Quantum has put a great deal of effort into searching for and producing relevant documentation that is responsive to Riverbed's requests. It is absurd to suggest that 45,000 documents, or even 100,000, is an unreasonably large production given the broad delimiters of the categories of documents sought by Riverbed in its 179 RFPs, the millions of documents in Quantum's possession, custody, or control, and the complexity of this litigation. Riverbed's dissatisfaction with Quantum's production is rooted in its own broad requests, which encompass a massive amount of material.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

David Wei, Jr., Esq.
May 6, 2008
Page 2

Nearly all of Riverbed's discovery requests are directed towards documents which "refer or relate" to materials relevant to this litigation. In fact, Riverbed repeatedly requests all documents "discussing, referring or relating," all documents that "show, indicate, or suggest," all documents that "constitute, comprise, discuss, describe, refer or relate," and all documents that "evidence, mention, describe, discuss, refer or relate to in any way" to classes of relevant materials. *See, e.g.,* RFPs 31, 39, 93, and 100. Riverbed specifically defines "relate" and "refer" to apply "if the document directly or indirectly evidences, mentions, discusses, constitutes, concerns, supports, contradicts, refers to, or in any other way deals with the subject matter described in the request in which the term appears." Riverbed Technology, Inc.'s First and Second Sets of Requests for Production of Documents and Things, Definition "G."

RFP 53 is an excellent example of an RFP with sweeping scope. This request seeks "all documents discussing, referring or relating to any product or device which uses the invention disclosed, described or claimed in the '810 Patent." The breadth of this single request is immense, as it incorporates virtually any document dealing with or even mentioning products or devices from *any source* that use an invention disclosed, described, or claimed in the '810 patent. Please note that documents that Riverbed believes relate to products that are not "accused in this action" were produced because they refer to a product or device that uses an invention disclosed, described, or claimed in the '810 patent, and thus are responsive to RFP 53, among others.

Riverbed bases its claim that its requests are "narrow in their scope" on its definitions of "Patented Product" and "Accused Product." Riverbed does not mention the fact that these terms are defined broadly. For example, in Riverbed's First Set of RFPs, Riverbed defined "Patented Product" to include any product from Quantum, ADIC, Rocksoft or Data Domain that practice at least one claim of the '810 patent. Riverbed's Second Set of RFPs defines "Accused Product" as "each and every Quantum, ADIC, or Rocksoft product that uses Deduplication Technology, including but not necessarily limited to the DXi Series and StorNext Software." Furthermore, these definitions are effectively further broadened by Riverbed's request for all documents referring or relating to predecessor and successor technologies to Quantum's "data de-duplication" technology and "any and all iterations or versions" of Quantum's "data de-duplication" technology. *See* RFPs 94 and 95. Riverbed asked for all versions of products using de-duplication technology.

Relevant evidence, as defined by FRE 401, is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Your letter accuses Quantum of producing "massive amounts of irrelevant material." The only way for Quantum to determine in good faith what Riverbed considers relevant to its claims and defenses is to examine the substantive scope of Riverbed's document requests, which Quantum has done. Riverbed's failure to anticipate that such broad discovery requests made to a corporation of Quantum's size would

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

David Wei, Jr., Esq.
May 6, 2008
Page 3

encompass a substantial amount of relevant, responsive materials is no reason to denigrate Quantum's production for having provided the information responsive to Riverbed's requests. Quantum has gone to great lengths to produce relevant materials responsive to Riverbed's requests and to meet its discovery obligations. Riverbed cannot fault Quantum for producing what Riverbed has asked for.

## II.  Quantum's Production Organization Complies With The Federal Rules

Quantum is not attempting to bury important documents in its production. As explained above, Quantum is simply producing the relevant documents requested by Riverbed in its RFPs. Quantum is not obligated under the Federal Rules to identify documents for Riverbed that Riverbed should think are important. Riverbed apparently wants to shift its own review to Quantum and make Quantum do Riverbed's work. That is a patently unreasonable demand.

Riverbed's concern regarding Fed. R. Civ. P. 34(b)(2)(E) is remarkable given the fact that Riverbed has organized its own production in the same manner as Quantum. Please note that Fed. R. Civ. P. 34(b)(2)(E) is specifically qualified by the statement "unless otherwise stipulated or ordered by the court." The parties stipulated at the outset of this case that they would produce documents in single-page TIFF format. Joint Case Management Statement [ Docket No. 21] at ¶ 6. Quantum has complied with this agreement and ensured that each document produced is a copy of the native file as it is kept in the ordinary course of business. Quantum has also complied with Paragraph 14 of Judge Alsup's Supplemental Order and has dutifully identified the custodian of each document produced. Riverbed has no basis for its complaint.

## III.  Riverbed's Specific Examples Do Not Support its Accusations

Riverbed isolates 40 documents out of more than 45,000 produced to date which it feels indicate that non-responsive documents are "strewn" throughout Quantum's production. These examples were obviously considered the purported superior examples of Quantum's "improper" behavior. Riverbed's own examples fail to show Quantum's alleged lack of consideration.

### A.  Documents Related to Patented or Accused Products

Ten of the 40 examples provided by Riverbed deal with full copies of books "not responsive" to Riverbed's requests. However, these documents were associated with, and utilized as part of, a Blocklets demonstration tool. *See, e.g.,* QU00260882, a parent document preceding these copies. Not only is the Rocksoft Blockets technology responsive, but it is specifically named in your definition of "Deduplication Technology" and "Patented Product." There are numerous requests directed at this technology that would encompass these productions, including but not limited to Request No. 92 ("All documents or communications

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

David Wei, Jr., Esq.
May 6, 2008
Page 4

referring or relating to Deduplication Technology, including but not limited to any development, testing, optimization, modification, implementation, or utilization thereof"), Request No. 93 ("All documents that evidence, mention, describe, discuss, refer, or relate to in any way communications regarding Deduplication Technology"), and Request No. 94 ("All documents or communications referring or relating to any predecessor or successor technologies to Quantum's "data de-duplication" technology, including but not limited to Rocksoft's Blocklets technology"), among others.

        With regard to QU00714521, Riverbed complains that Quantum has produced irrelevant DX product literature ("not related to the accused DXi products"). However, QU00714521 was an attachment to an email entitled "FW: DXi Back plane issue," contemplating whether a DXi issue could be resolved by using the DX "service stock" contemplated in the document. *See* QU00714497, the parent document immediately preceding the document in question. The DXi series is a specifically-named Accused/Patented Product to which this information would be responsive under a number of Riverbed's requests.

        With regard to QU00236548 and QU00006400, Riverbed complains of "Fast Filesystem Restore documentation… Not responsive to Riverbed's Requests." However, both documents begin "this document is an overview of the Fast Filesystem Restore updates to StorNext." As noted above, StorNext is a specifically named and accused product, and RFPs 94 and 95 encompass all versions of StorNext.

        **B.    Documents that Directly Refer or Relate to Patented or Accused Technology**

        Riverbed complains of "technical support logs, unrelated to any technologies at issue in this action," citing QU00523798, QU00540409, QU00291262, QU00447748, QU00469975, QU00524736 and QU00524736 (sic) as examples. Yet, mere pages into these documents, each clearly deals with numerous customer issues and complaints regarding StorNext or DXi models. While, again, there are numerous RFPs under which these logs would be responsive, particularly on point are RFPs 46 ("All documents discussing, referring or relating to any complaints or problems with the performance of each Patented Product or prototype thereof") and RFP 123 ("All documents or communications referring or relating to integration or installation services, assistance, or support Quantum provides for each Accused Product"). It appears that Riverbed is questioning Quantum's review process without actually reviewing the production carefully.

        With regard to QU00117646, QU00478726, QU00645066, QU00691469, and QU00691575, Riverbed complains of "ADIC documentation for Penguin products, which are not accused or related to the technologies at issue in this litigation." However, these documents explicitly discuss the integration and use of StorNext software within these products. The

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

David Wei, Jr., Esq.
May 6, 2008
Page 5

StorNext software has been explicitly defined as an Accused Product, and has been identified as a Patented Product, implicating a number of RFPs.

With regard to QU00369274, Riverbed complains of a "General Technical Documentation by Oracle Corporation." However, this document discusses a prototype archival/backup solution using the Oracle database. Riverbed's RFP 115 requests "All documents or communications that constitute, comprise, discuss, describe, refer or relate to the backup applications that operate on Hosts…" Host is broadly defined as "a device that is capable of storing data and capable of running a backup application." In essence, Riverbed requests all documents for any device which operates a backup application such as that contemplated in the document.

With regard to QU00171365 and QU00152844, Riverbed complains of an "ADIC excel spreadsheet regarding testing for ADIC products not at issue in this litigation." However, after examining these spreadsheets it is apparent the document is a compatibility test matrix. Testing memorialized within the spreadsheet includes compatibility of StorNext on a variety of system configurations, including Scalar systems running Solaris and Red Hat Linux. RFP 120 requests, "All documents or communications relating to tests, test reports, studies, investigations, or analyses that relate to the interoperability of each Accused Product with file systems running on Hosts." Again, Host is broadly defined as "a device that is capable of storing data and capable of running a backup application." As such, these spreadsheets appear to contain responsive information within the scope of Riverbed's requests.

Ultimately, while random errors in production will inevitably occur for both parties, Quantum has made every effort to respond appropriately to Riverbed's extremely broad requests. Riverbed complains about a handful of documents out of 45,000 produced, which, as explained above, are responsive to Riverbed's own requests. Given the breadth of its requests. Riverbed cannot complain about Quantum's production of only 65,000 documents to date.

Sincerely,

/s/ Rebecca L. Hanovice

Rebecca L. Hanovice

for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP