

17th Floor | Four Embarcadero Center | San Francisco, CA  94111-4109
415-434-9100 *office* | 415-434-3947 *fax* | **www.sheppardmullin.com**

Writer's Direct Line: 415-774-2984
nbruno@sheppardmullin.com

June 9, 2008

Our File Number:  16HC-132982

Honorable William Alsup
450 Golden Gate Ave.
Courtroom 9, 19th Floor
San Francisco, CA 94102

Re: *Quantum Corporation v. Riverbed Technology, Inc*. (No. C 07-4161 WHA) Riverbed's 6/3/2008 Discovery Dispute Letter

Dear Judge Alsup:

On June 3, 2008, counsel for Riverbed wrote to Your Honor regarding a discovery dispute between Quantum and Riverbed.  Riverbed has no basis for its allegations of discovery abuse, and its allegations of prejudice are unreasonable given the fact that Riverbed waited nearly three months after Quantum began its rolling production of documents before complaining to Quantum about its production [*see* D.N. 118-2], and another month after receiving Quantum's response [*see* D.N. 118-3] before bringing this issue to the Court's attention.  Nor has Riverbed's counsel bothered to contact Quantum's attorneys directly to have a telephonic meet and confer discussion, as required by the Local Rules.

Quantum's Production Complies with Rule 34

Pursuant to Rule 34(b)(2)(E), Quantum organized its documents as they were maintained in the usual course of business on its custodians' hard drives.  Quantum segregated and produced the documents per custodian (as this court ordered), produced a .TIF copy of the native file as it is kept in the usual course, and produced copies of the attachments to these documents immediately following the parent document itself.[1]

Unless an electronic document is produced natively, including the folder and directory structure in which it is originally compiled, information regarding organization such as folder pathway, author, and document date is preserved via the metadata associated with each file.  Without such metadata, the organization of a production will be dictated by the order in which retrieval occurs from the custodians' databases.  It appears that this is the same manner in which Riverbed maintained documents produced from its own custodians' databases.[2]

---

[1] The cases cited by Riverbed in its letter complaint (*Stiller v. Arnold* and  *T.N. Taube Corp. v. Marine Midland Mortg. Corp.*) are inapposite because they do not deal with the particular difficulties of e-discovery or metadata.  Furthermore, the respondents in these cases did not produced documents as kept in the usual course of business.

[2] Despite being an international, multi-million dollar corporation with years of technological development, Riverbed has produced fewer than 4,000 documents.  This production is largely composed of duplicative presentations and documents from "publicly available sources."

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Honorable William Alsup
June 9, 2008
Page 2

At the outset of this case, Quantum offered to provide Riverbed with the metadata associated with its document production. ***Riverbed declined this offer*** with the excuse that such an exchange "seems impossible." **Exhibit A** at 1. Thereafter, at Riverbed's insistence, the parties agreed only to produce metadata indicating the beginning and endpoints of the documents, *without* other data which might be used to organize an electronic production. ***Id.***

Quantum's Document Production is Responsive to Riverbed's Broad Requests

Riverbed misrepresents the scope of Riverbed's requests by stating that its document requests are "expressly limited" and "narrow" because they request documents relate solely to the "Patented Product[s]" or "Accused Product[s]." In reality, its requests encompass an enormous scope of documents well beyond this subset. For example, though Riverbed's definitions of "Accused Product" include products that use Deduplication Technology, they also specifically include the entire "DXi Series and StorNext Software" lines. **Exhibit B** at 3.

The requests themselves are extremely broad. For example, Riverbed's Request for Production 53 demands production of "all documents discussing, referring or relating to any product or device which uses the invention disclosed, described or claimed in the '810 Patent." Riverbed also explicitly requested documents pertaining to previous versions of the accused products: Riverbed's Request for Production No. 50 requests all documents relating to any "engineering changes, modifications, revisions, alternations, updates, improvements or other changes" made to these products; Riverbed's Requests for Production 94 and 95 encompass all documents related to predecessor and successor technologies to Quantum's "data de-duplication" technology; and Riverbed's Request for Production 97 asks for all documents related to products which Quantum is "considering" to include de-duplication technology. Finally, virtually all of Riverbed's discovery requests also demand documents which "refer or relate to" or "evidence" the subject matter of each request. Riverbed's definitions broadly define these terms. *Id*. at 2.

Riverbed has asked for all documents related to all versions of all products using de-duplication technology or to which Quantum is considering adding this technology. As such, Riverbed's complaints about the documents listed in its Exhibit C are without merit. Quantum also wishes to note that ***this is the first time Riverbed has complained about these documents*** - Riverbed does not mention the original set of documents identified in its April 30, 2008, letter to Quantum, because Quantum established their responsiveness in its response.

In effect, Riverbed's letter complaint demands that this Court extend the Rule 34 relevancy limits on discovery requests to the responses engendered by those requests. Logically, the only way in which Quantum could have produced responsive but irrelevant documents is if Riverbed's own requests did not comply with the relevancy limits of Rule 34. Quantum was required to respond fully to these requests, as Paragraph 16 of Your Honor's supplemental order is explicit in stating that "[a] burden or overbreadth or similar objection shall not be a valid reason for withholding requested materials actually known to counsel or a party representative responsible for the conduct of the litigation." [D.N. 14]. If Riverbed wished to receive documents from a particular time period or relating to a particular version of a product, it should have limited its requests accordingly. Quantum should not be penalized for Riverbed's shortsightedness in preparing its requests.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Honorable William Alsup
June 9, 2008
Page 3

The Size of Quantum's Production is Proportionate to Riverbed's Requests

      As discussed above, Riverbed has requested an incredibly broad range of documents through its 179 requests. The requests seek documents from several large international corporations regarding a technology in development for over a decade. Quantum identified in its Rule 26(a)(1) Initial Disclosures certain custodians that it believed possessed documents that would support its claims, and searched those custodians' files. Quantum then identified additional custodians in its response to Riverbed's Interrogatory No. 11, which requested that Quantum identify individuals involved with product development, design, etc., and, consistent with its discovery obligations, searched their files for responsive documents. Quantum's search of these custodians' files resulted in *more than one million potentially responsive documents*. Quantum engaged over a dozen attorneys full time for several months to review and analyze each of the documents culled from the initial filtration and perform a quality control review. As a result of these efforts, Quantum was able to weed out nearly ninety percent of the documents as non-responsive. Given the scope of Riverbed's requests and the size of Quantum and its subsidiaries, Quantum's production of approximately 100,000 responsive is entirely reasonable.

Quantum Offered Dr. Williams' Documents to Riverbed Immediately Upon Receiving Them

      Riverbed's complaint regarding prejudice is meritless. As Riverbed is fully aware, Dr. Williams is a third party to this lawsuit who was only recently served with a document subpoena. On March 24, 2008, Quantum produced documents from the files of Dr. Williams. This production constituted responsive documents received from Dr. Williams at that date. Subsequently Quantum learned that Dr. Williams had additional materials and expended great effort and expense to obtain this documentation for Riverbed. Immediately upon receiving these materials, Quantum offered to allow Riverbed full access to Dr. Williams' native electronic data via a "quick peek" agreement. **Exhibit C** at 4-5. *Riverbed declined this offer*. *Id.* at 1.

      Quantum subsequently agreed to make Dr. Williams available for two depositions and to focus its review on documentation most likely to be relevant to claim construction in advance of his May 21, 2008, deposition. Quantum also agreed to produce these documents with their associated metadata and OCR. Quantum then performed an expedited review of Dr. Williams' data per Riverbed's request and produced this data on a rolling basis. Quantum did everything it could to ensure that Riverbed received the information it needed for Dr. Williams' deposition.

Quantum is Willing to Compromise and Provide Riverbed with Metadata

      Quantum believes that Riverbed's complaints are without merit and should be disregarded. Nevertheless, Quantum remains willing to provide Riverbed with metadata associated with its production to date if Riverbed will do the same.

                                       Very truly yours,
                                       /s/ Nathaniel Bruno
                                       Nathaniel P. Bruno

W02-WEST:\400884117.1