

17th Floor | Four Embarcadero Center | San Francisco, CA 94111-4109
415-434-9100 *office* | 415-434-3947 *fax* | **www.sheppardmullin.com**

Writer's Direct Line: 415-774-2984
nbruno@sheppardmullin.com

Our File Number: 16HC-132982

June 16, 2008

Honorable William H. Alsup
450 Golden Gate Ave.
Courtroom 9, 19th Floor
San Francisco, CA 94102

Re: *Riverbed Technology, Inc*. v. Quantum Corporation (C-07-4161-WHA)
Motion to Compel Production of Riverbed's Source Code in New York

Dear Judge Alsup:

Quantum proposed two reasonable, confidential methods by which its New York-area-based expert may review, in New York, source code produced by Riverbed. Riverbed refuses to agree that Quantum's expert may review Riverbed's source code in New York, and insists upon unduly burdening Quantum and its expert by demanding the expert fly to Northern California to review source code. Quantum requests the Court order that Quantum's expert may review Riverbed's source code in New York pursuant to one of the reasonable methods proposed by Quantum.

Stipulated Protective Order Provisions

The Stipulated Protective Order ("PO") [Docket No. 31] sets forth a default method for the parties to produce source code. Riverbed must produce source code on a computer terminal at its outside counsel's Palo Alto office, and Quantum must produce source code on a computer terminal at its outside counsel's San Francisco office. (PO, Ex. A, ¶ 7.6(b).) When Quantum wants to review Riverbed's source code, it must provide two business days' notice to Riverbed of its plan to inspect the source code at the Palo Alto office of Riverbed's counsel. (*Id.*)

Additionally, the PO allows Quantum to print relevant pages of Riverbed's source code when Quantum's expert is on site reviewing it at the Palo Alto office of Riverbed's counsel. (Ex. A, ¶ 7.6(d).) Riverbed must stamp those pages with Bates numbers, endorse them with the designation of "Highly Confidential – Attorneys' Eyes Only – Source Code," and provide a hard copy set to Quantum's outside counsel on non-white paper. (*Id.*) The PO provides that these hard copies of Riverbed's source code must be kept in a locked room or cabinet "at the office" of Quantum's outside counsel, but does not specify any specific geographical city or office location at which Quantum's outside counsel must store the hard copies of Riverbed's source code. (*Id.*)

The PO also provides that Quantum's counsel may make one additional set of hard copies of Riverbed's source code on non-white paper. (Ex. A, ¶ 7.6(d).) The hard copies of Riverbed's source code may be reviewed by Quantum's outside counsel or its experts in preparing Quantum's case so long as the copies are kept in a locked room or cabinet "at the office" of

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Honorable William H. Alsup
June 16, 2008
Page 2

Quantum's outside counsel when not in use. (*Id.*) There is nothing in the PO preventing Quantum's outside counsel from keeping one set of copies of Riverbed's source code at its San Francisco office and the second set at its New York office. (*See id.*)

Quantum's Review of Riverbed's Source Code, Past and Future

Quantum has utilized the source code review provisions of the PO twice thus far. Quantum's Santa Cruz-based expert (Dr. Ethan Miller) has twice traveled to the Palo Alto office of Riverbed's outside counsel to review Riverbed's source code. Dr. Miller has printed out relevant pages of Riverbed's source code, and Riverbed's counsel has produced hard copies of those pages to Quantum's counsel with Bates numbers. (*See e.g.* Ex. B.)

Quantum has also engaged Dr. Sergio Verdú as an expert in this action. Dr. Verdú lives in Princeton, New Jersey and is a Princeton University professor. Dr. Verdú is in very high demand. His schedule is so impacted that Quantum was forced to withdraw him as a testifying expert on claim construction issues because the only date he was available for a deposition was June 12, 2008 and Riverbed refused to cooperate with that date. Nevertheless, Dr. Verdú remains an expert engaged by Quantum in this case because his expertise on the relevant issues is so unique and dynamic. It would be an undue and unnecessary time burden on Dr. Verdú and financial burden on Quantum to force Dr. Verdú to travel to the Palo Alto office of Riverbed's outside counsel to review Riverbed's source code. Further, review by both Dr. Miller and Dr. Verdú is not duplicative, because their background, expertise, and duties in this case do not completely overlap.

Quantum's Reasonable Requests that Dr. Verdú Review Riverbed's Source Code in NY

Following a court hearing between the parties in a separate action on May 29, 2008, Quantum's counsel spoke to Riverbed's counsel and asked that Riverbed make its source code available on a computer terminal in the New York office of Riverbed's counsel to accommodate review by Dr. Verdú. Riverbed's counsel agreed to consider the request and report back.

Having heard nothing, Quantum's counsel e-mailed Riverbed's counsel on June 4, 2008, requesting that Riverbed make its source code available electronically at the New York office of Riverbed's counsel for review by Dr. Verdú on June 12. (Ex. C.) Alternatively, Quantum's counsel requested confirmation they could send one of their two sets of hard copy print-outs of Riverbed's source code to their own New York office, where the copy set would be maintained according to the PO. (*Id.*) In that way, Dr. Verdú could simply review the hard copies at the New York office of Quantum's counsel without troubling Riverbed's counsel or jeopardizing the confidentiality of Riverbed's source code in any way. Quantum's counsel believes they have the right under the PO to send hard copies of Riverbed's source code to the New York office of Quantum's counsel without Riverbed's permission, but to be safe, requested confirmation because the cover letters sent by Riverbed's counsel with copies of Riverbed's source code

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Honorable William H. Alsup
June 16, 2008
Page 3

indicated Riverbed's mistaken understanding that Quantum's counsel is required to keep Riverbed's source code hard copy print-outs at its San Francisco office only.  (*See e.g.* Ex. B.)

Riverbed's counsel responded via e-mail on June 6, 2008, refusing to agree to either of Quantum's proposals for review of Riverbed's source code in New York.  (Ex. C.)  The refusal demonstrated total inflexibility.  It was based on the curious argument that an electronic version of Riverbed's source code would not be secure enough in the hands of Riverbed's *own outside counsel* in New York, as well as the faulty premise that Quantum's counsel is forbidden by the PO from sending a hard copy set of Riverbed's source code print-outs to Quantum's counsel's office in New York.  (*Id.*)

Quantum's counsel responded via e-mail on June 9, 2008 with a detailed analysis of the PO, demonstrating it is proper under any circumstances for Quantum's counsel to send a hard copy set of Riverbed's source code print-outs to Quantum's counsel's New York office for Dr. Verdú to review subject to the obligations of the PO.  (Ex. C.)  Quantum's counsel also explained that, based on personal knowledge from a prior inspection, Riverbed's counsel apparently stores Riverbed's source code on a CD, which Riverbed's counsel inserts into an offline laptop for Quantum's expert, Dr. Miller, to review when he visits the Palo Alto office of Riverbed's counsel.  (*Id.*)  There can be no reasonable objection to Riverbed's counsel simply sending a copy of that CD to its *own office* in New York so that Dr. Verdú can review its contents on an offline computer where Riverbed's counsel maintains complete control over the environment.  (*Id.*)

Riverbed's counsel responded on June 9 to Quantum's detailed explanation with a terse, unexplained refusal to cooperate.  (Ex. C.)  Riverbed has never responded to the substantive logic and PO analysis set forth by Quantum supporting its two reasonable alternatives for review of Riverbed's source code in New York.  Instead, Riverbed's counsel has refused to negotiate verbally with Quantum's counsel in the future based on a disagreement over their recollections of their prior May 29 discussion.  (*Id.*)  Quantum had no choice but to file this motion to compel.

Quantum's Request for Relief

For the reasons stated above, Quantum respectfully requests the Court order either or both of the following:  1) that Riverbed's counsel make Riverbed's source code available for review electronically by Dr. Verdú at the New York office of Riverbed's counsel on two business days' notice by Quantum; and/or 2) that the Court clarify Quantum's counsel is allowed to keep a hard copy set of any print-outs of Riverbed's source code at the New York office of Quantum's counsel for review by Dr. Verdú at his convenience, subject to the other obligations of the Stipulated Protective Order.

Respectfully submitted,

W02-WEST:6NB1\400899271.1              */s/ Nathaniel Bruno* (Counsel for Quantum)