# EXHIBIT C

## Nate Bruno

**From:**    Claude M. Stern [claudestern@quinnemanuel.com]

**Sent:**    Monday, June 09, 2008 4:57 PM

**To:**    Nate Bruno; Todd Briggs

**Cc:**    Sandra Nichols; Cristina Herrera; Andrew Bramhall; Benjamin Koodrich; Cornelius Bonner; Rene Unger; David Wei, Jr.; Craig Wendland; Amar Thakur; Mauricio Flores; Jane Gorsi; Donna Grimes; David Heisey; Elizabeth Balfour; Michelle Cepeda; Rebecca Hanovice; Claude M. Stern

**Subject:** RE: Review of Source Code by Dr. Sergio Verdú

Nate-
  Your statement attributed to me is a bald face falsehood. I told you I would consider your request. I told you we wanted to discuss this with our client. We have. Your request has been rejected. I agreed to do nothing more than consider your request.
  From here on, if you are looking for a stipulation on _any_ other subject, submit it to us in writing. We have no interest in giving you and your team the opportunity for fabricating further "agreements" in the future.
  Claude

---

**From:** Nate Bruno [mailto:NBruno@sheppardmullin.com]
**Sent:** Monday, June 09, 2008 4:34 PM
**To:** Todd Briggs
**Cc:** Claude M. Stern; Sandra Nichols; Cristina Herrera; Andrew Bramhall; Benjamin Koodrich; Cornelius Bonner; Rene Unger; David Wei, Jr.; Craig Wendland; Amar Thakur; Mauricio Flores; Jane Gorsi; Donna Grimes; David Heisey; Elizabeth Balfour; Michelle Cepeda; Rebecca Hanovice
**Subject:** RE: Review of Source Code by Dr. Sergio Verdú

Todd:

When Mr. Thakur and I spoke with you and Mr. Stern on May 29 following the CMC for the '164 action about this issue and explained Dr. Verdú's impacted schedule (which, as you know, is the reason we ultimately agreed to not offer his testimony at the claim construction stage in the '810/'249 action given his limited availability for a deposition), Mr. Stern indicated it would not be a problem for Dr. Verdu to review Riverbed's source code electronically at Quinn Emanuel's New York office. Mr. Stern's only hesitation was how the review could be accomplished from a structural systems standpoint. He stated he would look into it and let us know whether it was technically possible from a structural systems standpoint. Mr. Stern specifically stated he was not concerned that attorneys in Quinn Emanuel's own New York office would be careless with Riverbed's source code. I know from my visit to Quinn Emanuel's Palo Alto office that Quinn Emanuel is apparently keeping Riverbed's source code on a CD or CDs that it simply inserts into an offline laptop when Quantum's experts visit for source code reviews. It should not be a concern for Riverbed to send a copy of the source code CD or CDs to its own brethren in its New York office to make the source code available on an offline laptop at that location. Quinn Emanuel would be maintaining complete systems control over the information.

Nevertheless, we never heard anything back, so on June 4, I sent you the e-mail below, seeking to confirm that Dr. Verdú can review source code at Quinn's New York office on June 12, or offering the alternative that we simply send copies of source code print-outs made by Dr. Miller to our New York office for Dr. Verdú's review pursuant to the restrictions of the Stipulated Protective Order.

These are both entirely reasonable suggestions. Mr. Stern already indicated the first suggestion is not a problem, particularly given the ease with which Quinn Emanuel could make the source code available in its New York office from a structural systems standpoint (as I have explained above).

Further, our second suggestion is already allowed under the Stipulated Protective Order. The Stipulated Protective Order does not require that the designated print-outs of Riverbed's source code be confined

to Sheppard Mullin's San Francisco office.  Paragraph 7.6(d) of the Stipulated Protective Order merely states that print-outs of source code be maintained and reviewed at the "office of Outside Counsel of the Receiving Party when not in use."  It does not specify a particular city or geographical "office."  The only time Sheppard Mullin's San Francisco office is mentioned is when it is designated as the place where Riverbed's counsel must review the electronic repository of Quantum's source code, *not* where Quantum's counsel must review print-outs of Riverbed's source code.  Sheppard Mullin's New York office constitutes an "office of Outside Counsel of the Receiving Party," and therefore, it is appropriate under the Stipulated Protective Order for Sheppard Mullin to make a copy of the print-outs on non-white paper, keep the copy set under lock and key at our New York office, and allow Dr. Verdú to review it there.  We were simply seeking clarification on that point because the cover letters sent with the copies of Riverbed's source code have expressed the mistaken understanding that the Stipulated Protective Order requires all copies to be kept in our San Francisco office, and we did not want to open ourselves up to potential unwarranted outrage from your firm based on your firm's mistaken reading of the Stipulated Protective Order.  We are trying to act completely in good faith to anticipate potential problems and avoid them with reasonable agreements and clarifications.  It seems now that your e-mail below commits to a mistaken understanding of the Stipulated Protective Order, which is what we are trying to resolve.

In any event, we are confident Judge Alsup will 1) agree with our interpretation of the Stipulated Protective Order regarding print-outs, and 2) consider it unnecessary gamesmanship on a practical level for Quinn Emanuel to refuse to either make Riverbed's source code available in its New York office electronically or to confirm an agreement that it will not complain of a Protective Order violation should Dr. Verdú review print-outs in Sheppard Mullin's New York office.

If Quinn Emanuel will not agree to one of our two suggestions as set forth below by 6:00 p.m. today, we will not hesitate to use the opportunity of tomorrow's discovery hearing to bring this issue to the Court's attention and seek relief.  Please let us know your response.

Regards, Nate

---

**From:** Todd Briggs [mailto:toddbriggs@quinnemanuel.com]
**Sent:** Friday, June 06, 2008 5:19 PM
**To:** Nate Bruno
**Cc:** Claude M. Stern; Sandra Nichols; Cristina Herrera; Andrew Bramhall; Benjamin Koodrich; Cornelius Bonner; Rene Unger; David Wei, Jr.; Craig Wendland; Amar Thakur; Mauricio Flores; Jane Gorsi; Donna Grimes; David Heisey; Elizabeth Balfour; Michelle Cepeda; Rebecca Hanovice
**Subject:** RE: Review of Source Code by Dr. Sergio Verdú

Nate:

As you know, Riverbed's source code contains highly sensitive trade secrets.  To adequately protect Riverbed's code, the parties reached agreements in December 2007 concerning access to Riverbed's source code.  These agreements were memorialized in the Stipulated Protective Order entered by the Court on December 12, 2007.  Quantum agreed to review Riverbed's source code at Quinn Emanuel's Redwood Shores office so that the Quinn Emanuel attorneys working on this matter could directly supervise Riverbed's source code and any review by Quantum's attorneys and experts.  The parties also agreed that any portions of Riverbed's source code that were printed out would be delivered one Sheppard Mullin office and that the printed copies would not be removed from that office (except in connection with Court proceedings and depositions).  Quantum elected to have Sheppard Mullin's San Francisco office be the repository for the printed copies.

Although it may be more convenient for Dr. Verdu to review Riverbed's source code in New York, we do not believe convenience to Dr. Verdu in any way justifies sacrificing the security of Riverbed's source code.  We also note that Quantum has had ample opportunity to review Riverbed's source code under the parties' agreement.  Indeed, Quantum's expert, Dr. Ethan Miller, has already reviewed Riverbed's source code on several occasions.  If Dr. Verdu would like to review Riverbed's source code,

we would be happy to make it available under the terms of the protective order.

Should you have any questions, please let me know.

Thanks, Todd

---

**From:** Nate Bruno [mailto:NBruno@sheppardmullin.com]
**Sent:** Wednesday, June 04, 2008 2:06 PM
**To:** Todd Briggs
**Cc:** Claude M. Stern; Sandra Nichols; Cristina Herrera; Andrew Bramhall; Benjamin Koodrich; Cornelius Bonner; Rene Unger; David Wei, Jr.; Craig Wendland; Amar Thakur; Mauricio Flores; Jane Gorsi; Donna Grimes; David Heisey; Elizabeth Balfour; Michelle Cepeda; Rebecca Hanovice
**Subject:** Review of Source Code by Dr. Sergio Verdú

Todd:

Following up on Ms. Hanovice's e-mail below, please confirm by this Friday, June 6 that Riverbed agrees Dr. Verdú may either: 1) visit Quinn Emanuel's New York office on June 12, 2008 to review the source code Riverbed has made available in the '810/'249 action on a terminal set up at Quinn Emanuel's New York office; or 2) that we may send a copy set (on non-white paper) of the pages of Riverbed's source code that Dr. Ethan Miller has printed out thus far (and which your office has Bates numbered and sent to me on pink paper) to our New York office to be kept under lock and key in accordance with the Stipulated Protective Order, which copy set Dr. Verdú will review in our New York office.

Mr. Stern expressed his amenability to the first option during our conversation following the CMC in the '164 action. Either option is acceptable to us.

Regards, Nate



Sheppard Mullin

Four Embarcadero Center
17th Floor
San Francisco, CA 94111-4109
415.434.9100 *office*
415.434.3947 *fax*
**www.sheppardmullin.com**

**Nathaniel Bruno**
*Attorney*
415.774.2984 *direct* | 415.403.6095 *direct fax*
NBruno@sheppardmullin.com | *Bio*

Circular 230 Notice: In accordance with Treasury Regulations we notify you that any tax advice given herein (or in any attachments) is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of (i) avoiding tax penalties or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein (or in any attachments).

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any

attachments.

---

**From:**   Rebecca Hanovice

**Sent:**   Wednesday, June 04, 2008 1:18 PM

**To:**   Todd Briggs

**Cc:**   Claude M. Stern; Sandra Nichols; Cristina Herrera; Andrew Bramhall; Benjamin Koodrich; Cornelius Bonner; Rene Unger; David Wei, Jr.; Craig Wendland; Amar Thakur; Mauricio Flores; Jane Gorsi; Donna Grimes; David Heisey; Nate Bruno; Elizabeth Balfour; Michelle Cepeda

**Subject:**   '810/'249 Quantum Expert - Dr. Sergio Verdú

Dear Todd,

Pursuant to section 7.5 of the Stipulated Protective Order, Quantum discloses Dr. Sergio Verdú, a resident of Princeton, NJ, as an expert in this case.  Dr. Verdú is a Professor in the Department of Electrical Engineering of the School of Engineering and Applied Science at Princeton University.  Dr. Verdú's CV is attached, and sets forth the persons or entities from whom he has received compensation for work in his area of expertise or to whom he has provided professional services during the preceding five years.

During the preceding five years, Dr. Verdú provided consulting services for the law firm of McDermott Will & Emery, which represented Qualcomm in the following case:

*Qualcomm Inc. v. Nokia,* 337-TA-578 (ITC), complaint filed in June 2006.

Dr. Verdú has read the Stipulated Protective Order and signed Exhibit A.  We will send you a copy of the signed Exhibit shortly.

We would like Dr. Verdú to review Riverbed's source code on Thursday, June 12, in New York City.  Dr. Verdú may be accompanied by one or more Sheppard Mullin attorneys.

Best regards,

Rebecca Hanovice
<< File: SVresume.pdf >>