

17th Floor  |  Four Embarcadero Center  |  San Francisco, CA  94111-4109
415-434-9100 *office*  |  415-434-3947 *fax*  |  **www.sheppardmullin.com**

Writer's Direct Line: 415-774-2984
nbruno@sheppardmullin.com

June 17, 2008

Our File Number:  16HC-132982

Honorable William Alsup
450 Golden Gate Ave.
Courtroom 9, 19th Floor
San Francisco, CA 94102

Re:  *Quantum Corporation v. Riverbed Technology, Inc.* (C-07-04161-WHA) – Motion to Compel Production of Documents and Special Rule 30(b)(6) Deposition from Riverbed

Dear Judge Alsup:

Riverbed failed to produce critical documents requested by Quantum.  Quantum has met and conferred with Riverbed on several occasions, but Riverbed's continuous stonewalling has forced Quantum to seek relief from the Court.

Riverbed has not complied with the letter and spirit of Paragraph 13 of Your Honor's Supplemental Order regarding discovery, which requires that "all parties shall *affirmatively state* in a written response the full extent to which they will produce materials and shall, promptly after the production, confirm in writing that they have produced *all* such materials so described that are locatable after a diligent search of *all* locations such materials might plausibly exist."  Rather, Riverbed's written responses on the substance of their production pointedly avoid such a statement.

Background of the Dispute

In March of 2008, after several months of discovery, it became apparent that Riverbed's production was inadequate.  Quantum attempted to resolve this issue with a letter detailing the shortcomings of Riverbed's production.  **Exh. A**, excerpts from Quantum's 25-page meet and confer letter.  Quantum has since telephonically conferred with Riverbed several times on these issues, and has sent multiple correspondence discussing representative areas of deficiency.  *See* **Exh. A, B**.  Riverbed continuously rebuffed Quantum, at one point stating that approximately 3,500 documents represented the "lion's share" of its production.  **Exh. B** at 1.  But in its most recent missive, Riverbed now (ten months into this action) states that although it has produced "several" documents for each specific area addressed by Quantum, it "will look for additional documents and will get back to [Quantum] as soon as possible."  **Exh. C**.  Riverbed is strategically and unfairly delaying its document production.  Riverbed refuses to discuss the extent of its search or the anticipated completion of its production, and has not amended its responses to state that no documents exist.

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

Honorable William Alsup
June 17, 2008
Page 2

Riverbed's production is markedly deficient in the following areas:[1]

Internal Product Specifications and Design Documents

Quantum's Requests for Production 26, 27, 39-42, 54-55, and 71-73 seek documents regarding the operation and design of Riverbed's RiOS and Steelhead lines. **Exh. A** at 22-23. During the first meet and confer teleconference between the parties, Quantum indicated that Riverbed could satisfy these RFPs by producing its internal technical specifications for each model of the Steelhead appliance and each version of RiOS. These documents are highly relevant to any infringement analysis. Yet Riverbed failed to produce internal product design documents or specifications that describe, in detail, how the RiOS and Steelhead products operate. Riverbed does not deny that it possesses this type of material. In fact, after repeated prodding, Riverbed produced three documents relating to a network protocol specification specifically requested by Quantum's expert, Dr. Ethan Miller. While meager and unfairly difficult to obtain, this miniscule production indicates Riverbed does indeed possess internal specifications. Riverbed has no basis for withholding them.

Documents Relating to Operation and Development of the Infringing Products

Riverbed also failed to produce significant documentation from its engineers regarding the operation and development of its products. Aside from Steven McCanne, Riverbed produced documents from only three custodians involved in the technical side of its business: Dr. Steven Smoot, who produced 117 documents, Vivasvat Keswani, who produced 15 documents, and David Wu, who produced only 61 documents despite the fact he is Riverbed's Vice President of Software Development. It defies credulity that these custodians are the only employees who managed the design and development of the RiOS and Steelhead products, and that they have so few responsive documents. Where are documents from Chief Scientist Mark Day and Andrew Swan, both named in Riverbed's own initial disclosures as knowledgeable regarding the structure and operation of the RiOS and Steelhead (i.e., infringing) products?

Development Agreements

In an April 8 meet and confer teleconference and a letter dated June 3, Quantum informed Riverbed it was willing to narrow its RFP 47 (which seeks development agreements) to development agreements relating to the deduplication capabilities of Riverbed's infringing RiOS and Steelhead products, and documents relating to those development agreements. **Exh. B** at 3. Riverbed indicated that this compromise was acceptable and indicated that it would produce responsive documents. Quantum has still not received any such documents, and after nearly two months Riverbed now claims, for the first time, that it does not understand the meaning of this request. **Exh. C** at 2.

---

[1] Riverbed has produced fewer than 70 documents relating to damages. Quantum is continuing its extensive meet and confer efforts, but is concerned Riverbed will continue to stonewall production on damages as well, and may need to seek separate relief.

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**

Honorable William Alsup
June 17, 2008
Page 3

Documents and Communications Referring to the '810 Patent and This Lawsuit

   Riverbed produced a mere handful of documents and emails that discuss this lawsuit and the '810 patent. It is highly suspect that a diligent search would reveal no additional communications regarding the '810 patent without the involvement of counsel, particularly as the '810 patent is the subject of this litigation and is referenced in several of Riverbed's patents, including the '249 patent asserted against Quantum.

Communications Regarding the '249 Patent

   Riverbed's production does not contain correspondence regarding the '249 patent, particularly internal communications. Riverbed agreed to produce most documents relating to the '249 patent, including communications or meetings between Riverbed, Dr. McCanne, Michael Demmer and any other person relating to the '249 patent, as well as "all documents relating to any communication by any inventor to any other person regarding the ['249] application or the ['249] patent," as requested in Quantum's RFPs 88-90 and 96. Riverbed has not affirmatively stated that no such documents exist, so Quantum can only conclude that Riverbed is withholding responsive materials.

**Relief Sought:  Document Production and Special Rule 30(b)(6) Deposition**

   Riverbed is either withholding responsive documents or is not conducting a good faith search. Indeed, Riverbed has not produced a <u>single</u> document from two of the seven Riverbed employees disclosed in its own initial disclosures, Andrew Swan and Mark Day, and has only produced <u>one</u> document from its CEO, Jerry Kennelly. Quantum deserves an opportunity to investigate, but should not be required to use its Rule 30(b)(6) deposition of Riverbed on an investigation of Riverbed's discovery procedures made necessary by Riverbed's stonewalling. As such, Quantum respectfully requests the Court:

   **(1)** compel Riverbed to produce <u>all</u> documents responsive to the substantive categories and specific requests for production described herein after a diligent search of all locations such materials might plausibly exist (*see* Suppl. Order [Docket No. 14, ¶ 13]);

   **(2)** require Riverbed to complete its production within 15 days; and

   **(3)** order Riverbed to produce a special Rule 30(b)(6) witness (or witnesses) within ten calendar days for a deposition regarding Riverbed's document retention and litigation hold policies, search and collection efforts, and production of documents to Quantum in this action, to be in addition to Quantum's preexisting Rule 30(b)(6) deposition rights in this action.

          Respectfully submitted,
          */s/ Nathaniel Bruno*
          Counsel for Quantum