# EXHIBIT A




Suite 200 | 12275 El Camino Real | San Diego, CA 92130-2006
858-720-8900 *office* | 858-509-3691 *fax* | ***www.sheppardmullin.com***

Writer's Direct Line: 858-720-7413
rhanovice@sheppardmullin.com

March 26, 2008

Our File Number: 16HC-132982

***VIA E-MAIL AND U.S. MAIL***

Todd M. Briggs
Quinn Emanuel Urquhart Oliver & Hedges LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
E-Mail: toddbriggs@quinnemanuel.com

Re: *Quantum Corporation v. Riverbed Technology, Inc.* (No. C 07-4161 WHA) - Riverbed's Inadequate Responses to Quantum's Discovery Requests

Dear Mr. Briggs:

I write in an attempt to resolve the disputes between the parties regarding Interrogatory No. 7 and Quantum's Requests for Production ("RFP"). This letter addresses all of Quantum's requests except for those that focus exclusively on the parties' damages, which shall be addressed in a separate correspondence. I would appreciate a response to this letter no later than April 4, 2008.

I. The '700 Patent

The '700 patent is a grandparent of the '249 patent, which Riverbed accused Quantum of infringing. Riverbed has demonstrated on several occasions that it considers the '700 patent to be relevant to both patent actions. For example, in your email of January 16, 2008, you admitted that the '700 patent is relevant because it provides a priority date for the '249 patent. *See E-mail from Todd Briggs dated January 16, 2008* ("We agree that some information relating to the '700 patent is relevant to this case because the '249 claims priority to the '700 patent…"). Riverbed itself requested information regarding the '700 patent in its Interrogatory No. 13 and its RFPs 77-90.[1] Quantum responded to all of these discovery requests. Riverbed has also implicitly conceded the relevance of the '700 patent to the '810 dispute by responding to certain RFPs, including RFP 23, which asks for documents reflecting Riverbed's organizational

[1] These RFPs ask for documents regarding the '249 patent or any "Related Riverbed Patent," which Riverbed defines as including the '700 patent.

**C. RFPs 33-36 and 38: Riverbed's Knowledge of its Infringement of the '810 Patent**

Similarly, though RFPs 33-36 and 38 ask for all documents regarding Riverbed's knowledge that its products may infringe the '810 patent, and its reaction to that knowledge (redesigns, etc.), Riverbed limited its production to documents that "refer to the '810 patent." This limitation would exclude materials that, while not referring directly to the '810 patent, were prepared in view of it, and thus deprives Quantum of information that may demonstrate willful infringement.

**D. RFP 37: Riverbed's Defenses to Quantum's Willful Infringement Allegations**

Riverbed also attempts to deprive Quantum of information regarding willful infringement by limiting its response to RFP 37 to "technical documents and things," when the request actually seeks all documents regarding Riverbed's defenses to willful infringement. These could include communications, memoranda, and other materials that discuss the operation of the infringing products but are not considered "technical documents."

**E. RFP 68: Documents Related to Quantum**

Riverbed appears unwilling to produce its complete collection of unprivileged documents responsive to RFP 68, which seeks all documents related to Quantum, including Riverbed's competition with Quantum. Riverbed limited its response to "documents relating to the '810 patent and this action." This response is unacceptable because it excludes materials regarding Riverbed's competition with Quantum and any documents that deal specifically with Quantum's products, all of which go to Quantum's willfulness claim. Such documents are also relevant to Quantum's claim for damages; if, for example, Riverbed discussed the merits of Quantum's products in the context of competitive analysis, this information could be used to determine a reasonable royalty rate.

**F. RFPs 26, 27, 39-42, 54-55, and 71-73: Documents Regarding Infringing Products**

Riverbed's responses to RFPs 26 and 39-42 are particularly narrow. Quantum asked for all documents regarding, among other things, the development of, changes to, operation of, and sales of Riverbed's Infringing Products. Riverbed agreed to produce only documents "sufficient to show" the operation of and modifications to the "accused aspects of the accused Riverbed products." Similarly, Riverbed limited its production to "representative customer case studies, user guides, specifications, white papers, and general marketing materials related to the accused Riverbed products" in response to RFPs 27, 54-55, and 71-73, which ask

for all documents relating to third party feedback regarding any Infringing Product, marketing documents for Riverbed's Infringing Products, documents related to any trade shows at which Riverbed displayed its Infringing Products, documents presented to customers or potential customers about the Infringing Products, and documents regarding products that Riverbed believes compete with or substitute for its Infringing Products since 11/23/99. There is no basis for these limitations, which give Riverbed *carte blanche* to pick and choose documents it considers "representative" or "sufficient to show," and by doing so withhold non-privileged documents that relate to Quantum's infringement claims. For example, were Riverbed permitted to employ these limitations, it could easily justify withholding a document that proved willful infringement of the '810 patent.

V. RFPs relevant to the '249 Patent Case

**A. RFPs 103, 107, and 108: Documents Relating to the Subject Matter of the '249 Patent**

Quantum's RFPs 103, 107, and 108 seek documents that "relate to any of the alleged inventions disclosed, described, or claimed in the '249 patent" and documents authored or received by the inventors of the '249 relating to that patent or the subject thereof. This information will enable Quantum to analyze the scope and validity of the '249 patent claims. The requests are not limited as to time because a document created in 2005, for example, could refer to a piece of prior art that has not yet been identified by the parties, thus leading to the discovery of admissible evidence. Yet Riverbed continues to claim that responsive documents created after October 30, 2002, the ostensible priority date of this patent, are somehow irrelevant. This position is particularly unreasonable given the fact that Riverbed presented Quantum with nearly identical requests, namely RFP 29 and RFP 33, to which Quantum agreed to produce responsive documents regardless of the date on which they were created.[3]

As you know, my colleague Mauricio Flores objected to Riverbed's arbitrary limitation twice, once in an email dated February 27 and again in a letter dated March 12. Your March 13, 2008, letter does not justify the October 30, 2002, limitation beyond the conclusive statement that RFPs 103, 107, and 108 are "overbroad as to time." Furthermore, your claim that the term "relate to" makes the request "hopelessly overbroad, vague and ambiguous," is not well taken. Riverbed's RFPs are peppered with the term "relate to," yet Quantum has not had any

[3] RFP 29 seeks "all textbooks, articles, journals, patents or other publications of any kind which refer or relate to any of the alleged inventions disclosed, described or claimed in the '810 patent."

RFP 33 seeks "all articles, papers, communications, or documents authored by or received by Ross Williams relating to data compression or the '810 patent."