# EXHIBIT B



Suite 200 | 12275 El Camino Real | San Diego, CA 92130-2006
858-720-8900 *office* | 858-509-3691 *fax* | **www.sheppardmullin.com**

Writer's Direct Line: 858-720-7413
rhanovice@sheppardmullin.com

June 3, 2008

Our File Number: 16HC-132982

*VIA E-MAIL*

Todd Briggs, Esq.
Quinn Emanuel LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Direct: (650) 801-5020
Fax: (650) 801-5100

       Re:    *Quantum Corporation v. Riverbed Technology, Inc, C07-04161-WHA*
              Riverbed's Inadequate Document Production

Dear Todd:

      This letter addresses Riverbed's inadequate document production to date, as well as certain statements you made during our meet and confer teleconferences. I would appreciate a response to this letter by the close of business on Friday, June 6.

**I.**    **Riverbed's Document Production is Inadequate**

      During our teleconference on Monday, April 14, you stated that Riverbed has produced the "lion's share" of its documents in this case, and your letter of April 21 makes reference to Riverbed's production of "thousands of pages" of documents. Since that conference, Riverbed has produced only a handful of additional documents. As of today, Riverbed has produced only 3,908 documents in total, including all documents produced by third party Michael Demmer and individually-subpoenaed employee Steven McCanne.

      The vast majority of this production relates to Riverbed's product marketing efforts. Indeed, much of Riverbed's production is composed of multiple copies of PowerPoint presentations and press releases designed to attract customers, partners, and investors. A significant percentage of Riverbed's total production is made up of printouts from Quantum's website and other "publicly available sources." And Riverbed's CEO, Jerry Kennelly, has produced a grand total of one document, an email instructing employees of Riverbed not to discuss the '810 Patent infringement action.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs, Esq.
June 3, 2008
Page 2

It is difficult to believe that a multi-million dollar, international company such as Riverbed possesses less than 4,000 documents that are relevant to this litigation and responsive to Quantum's extensive discovery requests. We are concerned that Riverbed is either withholding responsive, non-privileged information, or is not conducting a good faith review of its documents.

### Internal Product Specifications and Design Documents

Riverbed has failed to produce any internal product design documents or specifications that describe, in detail, how the RiOS and Steelhead products operate. Riverbed does not deny that it possesses this critical information. In fact, Riverbed produced three documents relating to a network protocol specification requested by Dr. Ethan Miller, indicating that Riverbed does indeed possess such documents. Riverbed has no reasonable basis for withholding such documents, especially in view of Quantum's Requests for Production ("RFP") 26 and 41-42. Quantum requires this documentation so it can compare the products' operations with the '810 patent claims.

As you note in your April 21 letter, we raised this issue in our meet and confer teleconference on April 8. Please produce all internal technical specifications for each model of the Steelhead appliance and each version of RiOS immediately, as called for by RFPs 26, 27, 39-42, 54-55, and 71-73. If we do not receive the requested documents by the close of business on June 13, we will take this matter up with the Court.

### Damages-Related Documents

Despite Quantum's numerous requests for production relating to damages (*see, e.g.,* RFP 45, 48, 51, 52, 57, 58, and 59), Riverbed has produced only a few documents containing revenue reports and financial information, and a handful of press releases and documents that mention product pricing. These documents do not come close to providing a complete picture of Riverbed's product valuations, sales revenues, costs of goods sold, or profits.

Please produce the following financial documents immediately: internal justifications for R&D budget requests, sales predictions, cost schedules for each model of Steelhead and version of RiOS, and annual and monthly financial summaries from 2002 to the present.

### Communications and Documents Relating to Operation and Development of the Infringing Products

Riverbed has also failed to produce significant documentation from its engineers and inventors regarding the operation and development of its products. Riverbed produced documents from only three custodians other than Steven McCanne involved in the technical side

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs, Esq.
June 3, 2008
Page 3

of the business: Dr. Steven Smoot, who produced 117 documents, Vivasvat Keswani, who produced 15 documents, and David Wu, who produced only 61 documents despite the fact that he is Riverbed's Vice President of Software Development. It is difficult to believe that these custodians are the only people who managed the design and development of the RiOS and Steelhead products, and that this is the extent of their responsive documents. Please let me know if Riverbed will supplement its production with documents from other engineers who managed the design and development of these products, and/or whether Riverbed will supplement its production from the above-mentioned engineering personnel. If you do not intend to supplement your production with documents you originally agreed to produce, please amend your responses to the RFPs that request these documents to state that no such documents exist.

### Development Agreements

As we discussed during our April 8 teleconference, Quantum is willing to narrow its RFP 47 to development agreements relating to the deduplication capabilities of Riverbed's infringing RiOS and Steelhead products and documents relating to those development agreements. You stated that this compromise would be acceptable and agreed to produce responsive documents. Please let me know when we can expect production of these development agreements and related documents.

### Documents and Communications Referring to the '810 Patent and This Lawsuit

Riverbed has produced approximately ten emails and a handful of documents that discuss this lawsuit and the '810 patent. We find it hard to believe that, aside from a few emails produced by David Wu and Jerry Kennelly, none of Riverbed's employees had internal discussions about this patent without the involvement of counsel, despite the fact that the '810 patent is referenced in several of Riverbed's patents and is now the subject of this litigation. Your April 21 letter states that Riverbed will produce "non-privileged documents relating to the '810 patent and not those that explicitly reference it." Please let me know whether Riverbed will produce additional documents responsive to Quantum's requests. If no such documents exist, please amend your responses to the RFPs that request these documents to state this fact.

### Communications Regarding the '249 patent

Riverbed's production does not contain correspondence regarding the '249 patent, particularly internal communications. Riverbed agreed to produce most documents relating to the '249 patent, including communications or meetings between Riverbed, Dr. McCanne, or Michael Demmer and any other person relating to the '249 patent, as well as "all documents relating to any communication by any inventor to any other person regarding the ['249] application or the ['249] patent." *See* RFPs 88-90, 96. Please supplement Riverbed's production immediately. If you do not intend to supplement your production with the documents you have

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs, Esq.
June 3, 2008
Page 4

agreed to produce, please amend your responses to the RFPs that request these documents to state that no documents exist.

Riverbed's Document Collection and Production Procedures

In addition to supplementing Riverbed's production as requested above, please provide us with a detailed explanation as to how Riverbed has identified and collected responsive documents in this case, and include with it Riverbed's list of search terms. You represented in your letter of December 20, 2007, that Riverbed "prepared its list of search terms based on Quantum's document requests and the scope of information Riverbed agreed to produce in response to Quantum's document requests." The scope of Riverbed's response to Quantum's document requests has changed as a result of our meet and confer efforts, however. Furthermore, Riverbed's meager production belies its claim that it conducted a thorough and reasonable document search. We have no choice but to test Riverbed's production to determine whether it is, in fact, reasonable, and we expect the Court will do the same if we raise this issue in a motion to compel.

## II.     Response to Riverbed's April 21 Meet and Confer Letter

Certain points in Riverbed's April 21 letter demand a response. First, there is nothing untimely about Quantum's complaints. There is no time limit on challenging discovery responses or filing a motion to compel in Fed. R. Civ. P. 34 and 37. Discovery is ongoing, and Riverbed has not been prejudiced by the alleged delay.

With regard to RFP 23, Quantum agrees to produce an updated organization chart if one exists.

With regard to Quantum's general objections, Quantum's General Objection Number 5 states that "Quantum will provide [confidential and proprietary] documents only after the entry of an appropriate Protective Order." Quantum is not withholding any documents based on this general objection.

Finally, Riverbed again has studiously avoided stating that it will produce *all* responsive, non-privileged documents as required by Paragraph 13 of Judge Alsup's Supplemental Order. Please assure us, in writing, that Riverbed will produce *all* responsive documents as required by Judge Alsup's Order. Otherwise, please identify in writing each RFP to which no responsive documents exist and amend Riverbed's responses to these RFPs accordingly. Your letter also does not state whether Riverbed will supplement its production in response to RFPs 91, 92, and 98. Please let me know if Riverbed will do so.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Todd Briggs, Esq.
June 3, 2008
Page 5

    We look forward to your response to this letter by June 6, 2008.  If we do not receive a response by that time, we will move to compel the documents requested above and will seek sanctions from the Court.

          Sincerely,

          /s/ Rebecca L. Hanovice

          Rebecca L. Hanovice

        for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

W02-WEST:6RLH1\400871541.1