1  AMAR L. THAKUR, Cal. Bar No. 194025
   MAURICIO A. FLORES, Cal. Bar No. 93304
2  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
3  Including Professional Corporations
   12275 El Camino Real, Suite 200
4  San Diego, California  92130-2006
   Telephone:     858-720-8900
5  Facsimile:     858-509-3691
   Email:    athakur@sheppardmullin.com
6            mflores@sheppardmullin.com

7  NATHANIEL BRUNO, Cal. Bar No. 228118
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
8  A Limited Liability Partnership
   Including Professional Corporations
9  Four Embarcadero Center, 17th Floor
   San Francisco, California  94111
10 Telephone:     415-434-9100
   Facsimile:     415-434-3947
11 Email:    nbruno@sheppardmullin.com

12 Attorneys for
   QUANTUM CORPORATION

13

14            UNITED STATES DISTRICT COURT

15         NORTHERN DISTRICT OF CALIFORNIA,

16             SAN FRANCISCO DIVISION

17 RIVERBED    TECHNOLOGY,    INC.,    a      Case No. C 07-04161 WHA
   Delaware corporation,
18                                            The Hon. William H. Alsup
                   Counterclaimant,
19
         v.                                   QUANTUM'S REPLY CLAIM
20                                            CONSTRUCTION BRIEF ON TERMS
   QUANTUM CORPORATION,                       FROM U.S. PATENT NO. 5,990,810
21
                   Counterdefendant.
22 _____        Claim Construction Hearing: July 23, 2008
   QUANTUM    CORPORATION,    a    Delaware   Time:  10:00 AM
23 corporation,                               Crtrm:  Courtroom 9, 19th Floor

24                 Counterclaimant,

25       v.

26 RIVERBED    TECHNOLOGY,    INC.,    a
   Delaware corporation,
27
                   Counterdefendant.
28

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. CONSTRUCTION OF "PRE-DETERMINED CONSTRAINT" ................................ 2

III. CONSTRUCTION OF "SUBBLOCK" .................................................................. 9

IV. CONSTRUCTION OF "AN ADDITIONAL HIERARCHY OF SUBBLOCKS IS
     FORMED FROM AT LEAST ONE GROUP OF CONTIGUOUS SUBBLOCKS" ......... 10

V. CONCLUSION ................................................................................................. 13

W02-WEST:\400906858.1
Case No. C 07-04161 WHA

QUANTUM'S REPLY CLAIM CONSTRUCTION BRIEF ON
TERMS FROM U.S. PATENT NO. 5,990,810

**TABLE OF AUTHORITIES**

**Federal Cases**

Bancorp Servs., L.L.C., v. Hartford Life Insur. Co.,
  No. 4:00-CV-70, 2002 U.S. Dist. LEXIS 27200 (E.D. Mo. Feb. 13, 2002) ............................ 3

Brown v. 3M,
  265 F.3d 1349 (Fed. Cir. 2001) ............................................................................................. 4

Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.,
  257 F.3d 1364 (Fed. Cir. 2001) ............................................................................................. 8

Honeywell Inc. v. Victor Co. of Japan, Ltd.,
  298 F.3d 1317 (Fed. Cir. 2002) ........................................................................................... 12

K-2 Corp. v. Salomon S.A.,
  191 F.3d 1356 (Fed. Cir. 1999) .................................................................................. 4, 5, 7, 13

Keithley v. The Homestore.com, Inc.,
  No. C03-04447, 2007 U.S. Dist. LEXIS 71126 (N.D. Cal. Sept. 12, 2007) ............................ 8

Liebel-Flarsheim Co. v. Medrad, Inc.,
  358 F.3d 898 (Fed. Cir. 2004) ................................................................................... 5, 7, 8, 13

Markman v. Westview Instruments, Inc.,
  52 F.3d 967 (Fed. Cir. 1995) ................................................................................................. 2

Masco Corp. v. U.S.,
  303 F.3d 1316 (Fed. Cir. 2002) ............................................................................................. 4

Oakley, Inc. v. Sunglass Hut Int'l,
  316 F.3d 1331 (Fed. Cir. 2003) ............................................................................................. 2

Phillips v. AWH Corp.,
  415 F.3d 1303 (Fed. Cir. 2005) ......................................................................................... 4, 13

Rhine v. Casio,
  183 F.3d 1342 (Fed. Cir. 1999) ............................................................................................. 5

Seachange Int'l, Inc. v. C-COR Inc.,
  413 F.3d 1361 (Fed. Cir. 2005) ............................................................................................. 8

Solomon v. Kimberley-Clark Corp.,
  216 F.3d 1372 (Fed. Cir. 2000) ............................................................................................. 2

Verizon Servs. Corp. v. Vonage Holdings Corp.,
  503 F.3d 1295 (Fed. Cir. 2007) ............................................................................................. 5

Vitronics Corp. v. Conceptronic, Inc.,
  90 F.3d 1576 (Fed. Cir. 1996) ............................................................................................... 2

-ii-

QUANTUM'S REPLY CLAIM CONSTRUCTION BRIEF
ON TERMS FROM U.S. PATENT NO. 5,990,810

Voice Techs. Group, Inc. v VMC Sys., Inc.,
    164 F.3d 605 (Fed. Cir. 1999) .......................................................................... 2, 3

Watts v. XL Systems, Inc.,
    232 F.3d 877 (Fed. Cir. 2000) .............................................................................. 4

# I.    __INTRODUCTION__

The concept of locality, discussed at length in the Background section of Riverbed's Claim Construction Brief regarding the '810 patent, is precisely defined in claim 1 as positions "b[k-A+1 . . . k+B]." This concept needs no further clarification. Riverbed's core contention is that "local data," which is best understood as a shorthand reference to this precise definition, is restricted to "bytes and bits," and does not include information about position relative to other partitions in this data. The '810 patent specification, however, expressly states otherwise. It discloses the use of predetermined constraints that consider not only the bits and bytes at position b[k-A+1 . . . k+B], but also consider position in relation to "some other partitioning."

Riverbed's Background section also asserts that Dr. Williams was not the first to invent his method for partitioning blocks of data. This discussion is pointless as well as unfounded. It has no bearing on the issue at hand, which is the construction of specific claim terms. Quantum is confident the validity of the patents at issue before this Court will be decided on careful and expert analysis, not double hearsay thrown against the wall for effect.

Riverbed's recitation of its prior art references is also pointless. It suffices for Quantum to reply that none of Riverbed's references, either alone or in combination, disclose the use of variable-length subblocks of data partitioned in accordance with a predetermined constraint applied to a sliding fixed-length window run along that data.

W02-WEST:\400906858.1

Case No. C 07-04161 WHA

## II. <u>CONSTRUCTION OF "PRE-DETERMINED CONSTRAINT"</u>

| '810 Patent Term | Quantum's Proposed Construction | Riverbed's Proposed Construction |
|---|---|---|
| predetermined constraint | Criteria for identifying a subblock boundary. | A function that accepts a window of bytes of length A+B and returns a boolean value to indicate whether a boundary should be placed between the A and B parts of the window. Only the bytes in the window of bytes of length A + B can effect the decision of whether a boundary should be placed at position k\|k+1. |

Riverbed's construction of "predetermined constraint" consists of two sentences plucked from a memorandum written as a marketing tool by inventor Dr. Ross Williams more than 10 years after he filed his priority application for patent. Riverbed's argument boils down to the proposition that Dr. Williams' characterization of his invention in that memo must be true, and therefore should be adopted as the Court's construction. This simplistic approach is nothing more than a prescription for error. The construction adopted by the Court must be based on the intrinsic evidence, not an after-the-fact memo that was never intended to address the specific issues posed in this case.

The fact is that Dr. Williams' memo merely sets out his own subjective understanding of the claims at issue. Riverbed ignored without comment the cases Quantum cited as authority for the well-established principle that subjective opinions of this kind are of little value.[1] Instead Riverbed relies on *Voice Techs. Group, Inc. v VMC Sys., Inc.* 164 F.3d 605, 610-

---

[1] *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1342 n.2 (Fed. Cir. 2003) (decided after *Voice Techs.*, and stating: "Sunglass Hut argues that [the inventor] admitted during his deposition that the terms 'vivid' and 'strong' are synonymous. We consider that testimony to be of little value in the definiteness analysis or claim construction."); *Vitronics Corp. v.*

11, 615-16 (Fed. Cir. 1999), which is clearly distinguishable from the present case, because there the inventor provided testimony for the litigation that was expressly directed to the meaning of claim terms. In contrast, Dr. Williams' memorandum is presented as his explanation of what the claims cover from a marketing perspective, rather than an explanation of what claim terms mean to those skilled in the art. *See Bancorp Servs., L.L.C., v. Hartford Life Insur. Co*., No. 4:00-CV-70, 2002 U.S. Dist. LEXIS 27200, at **23-27 (E.D. Mo. Feb. 13, 2002) (distinguishing *Voice Techs*. and disregarding expert testimony because it was not offered to help explain the technology and what was invented and claimed, as in *Voice Techs*., but instead to what the patentee subjectively intended the claims to mean).

Quantum's proposed construction correctly captures the breadth of the term "predetermined constraint." The words "predetermined" and "constraint" need no construction because they are used in their ordinary meaning. The same is true of the word "satisfies" which is used to describe the application of the predetermined constraint. Read in conjunction with the words of the pertinent claims, Quantum's proposed construction is clear and unambiguous. As discussed below, the only additional information provided by Riverbed's proposed construction is either erroneous or confusing and unnecessary.

Riverbed argues that "Quantum's proposed construction is improper because it would give the claims the breadth of a functional limitation without the tradeoff of being limited to structure described in the specification and equivalents thereof." Riverbed '810 Patent Brief [Docket No. 128] at 16:1-3. This argument is a red herring. A means-plus-function or step-plus-

*Conceptronic, Inc.,* 90 F.3d 1576, 1584-85 (Fed. Cir. 1996) ("Nor may the inventor's subjective intent as to claim scope, when unexpressed in the patent documents, have any effect. Such testimony cannot guide the court to a proper interpretation when the patent documents themselves do so clearly."); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) (en banc) ("The subjective intent of the inventor is of little or no probative weight in determining the scope of a claim (except as documented in the prosecution history)."); s*ee also Solomon v. Kimberley-Clark Corp.*, 216 F.3d 1372, 1379-80 (Fed. Cir. 2000) (citing *Voice Techs.*, and noting that the Federal Circuit had "reasoned" in *Markman* "that an inventor is not competent to construe patent claims").

1  function analysis has not been invoked by express language, and is inapplicable because the

2  limitation, "predetermined constraint," is recited in terms of performing a specific act, i.e.,

3  applying a predetermined constraint in order to partition a block into a plurality of subblocks.

4  *Watts v. XL Systems, Inc.*, 232 F.3d 877, 881 (Fed. Cir. 2000) (the absence of the term "means"

5  raised the presumption that limitations were not in means-plus-function form); *see also Masco*

6  *Corp. v. U.S.*, 303 F.3d 1316, 1327 (Fed. Cir. 2002) ("[W]here a method claim does not contain

7  the 'step[s] for,' a limitation of that claim cannot be construed as a step-plus-function limitation

8  without a showing that the limitation contains no act.").  Riverbed has not even attempted to rebut

9  the presumption that means-plus-function or step-plus-function analysis is inapplicable here, and

10  indeed cannot do so.

11

12  Riverbed contends that Quantum's proposed construction "does not give meaning to

13  the word 'predetermined' in 'predetermined constraint.'"  Riverbed '810 Patent Brief [Docket No.

14  128] at 16:15-16.  This argument ignores the fact that Quantum's proposed construction will be

15  used in conjunction with the words of the claims.  It is neither useful nor appropriate to rephrase

16  plain and unambiguous claim language.  "Claim terms, in general, mean what they say," and the

17  ordinary and accustomed meaning is generally presumed to be the correct one.  *K-2 Corp. v.*

18  *Salomon S.A.,* 191 F.3d 1356, 1362-63, 1370 (Fed. Cir. 1999).

19

20  The words "predetermined," "constraint" and "satisfies" are commonly used and

21  understood in everyday discourse.  They need no construction.  *See Phillips v. AWH Corp.*, 415

22  F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("In some cases, the ordinary meaning of claim

23  language as understood by a person of skill in the art may be readily apparent …, and claim

24  construction … involves little more than the application of the widely accepted meaning of

25  commonly understood words."); *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) ("We agree

26  with this construction of the claim, for it is the plain reading of the claim text.  These are not

27  technical terms of art, and do not require elaborate interpretation."); *K-2 Corp.,* 191 F.3d at 1365

28  ("But a dispute over the ordinary and accustomed meaning does not imply that such a meaning

-4-

1   does not exist. … [C]laim construction is not philosophy; we need not wring our hands when

2   considering the implications of a metaphysical analysis of claim terms."); *see also Verizon Servs.*

3   *Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1304-05 (Fed. Cir. 2007) (holding district court

4   did not err in refusing to construe the term "destination," and citing ordinary meaning of the term).

5

6            The first sentence of Riverbed's proposed construction vividly illustrates the

7   dangers of unnecessary and confusing claim constructions.   Riverbed would have the Court

8   instruct the jury that predetermined constraint means a "function that accepts a window of bytes of

9   length A + B and returns a boolean value to indicate whether a boundary should be placed

10  between the A and B parts of the window."   Quantum does not object to this sentence because it is

11  wrong in the sense that it conveys misinformation — Quantum objects because for the most part it

12  merely restates information that is already provided in the claim and does so in a way that is

13  confusing rather than clarifying.

14

15           As pointed out in Quantum's opening brief on the '810 patent terms, the term

16  "accepts a window" does nothing to explain the meaning of predetermined constraint.   Quantum's

17  Opening '810 Patent Brief [Docket No. 114] at 10:3-9.   It merely inserts an additional phrase

18  which is not in the claims and would serve only to confuse.   The Court and the jury would be

19  better served by relying on the claim language itself, which states "for which b[k-A+1 . . . k+B]

20  satisfies a predetermined constraint."   It would be both incorrect and dangerous to construe

21  "satisfies," which is a common word requiring no construction, to mean "accepts."   *See K-2 Corp.*,

22  191 F.3d at 1364-65 ("Courts do not rewrite claims; instead, we give effect to the terms chosen by

23  the patentee."); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004) (while it

24  is true that claims should be construed, if possible, to sustain their validity, "the court has

25  'admonished against judicial rewriting of claims to preserve validity.'" (quoting *Rhine v. Casio*,

26  183 F.3d 1342, 1345 (Fed. Cir. 1999)).   The only result would be to raise a danger that the jury

27  will ignore the plain words of the claim and give effect to a different meaning based on a different

28  word pulled by Riverbed out of a memorandum by inventor Dr. Williams more than 10 years after

1    the fact.  Riverbed's brief pointedly ignores these well-founded objections.

2

3         Riverbed's brief also ignores the substance of Quantum's objection to the phrase "a

4    window of bytes of length A + B."  *See* Quantum's Opening '810 Patent Brief [Docket No. 114] at

5    10:10-18.  The term "window" may be a useful explanatory aid in referring to a portion of the

6    claim, but in no event should this term be substituted for the claim language.  The claim language

7    itself clearly and unambiguously states that the predetermined constraint applies to the positions

8    b[k-A+1 . . . k+B].  No more explanation is required.  Riverbed's reference to "of length A + B" is

9    also a rewording of what is already in the claim language as b[k-A+1 . . . k+B].  The claim

10   language states that the subject matter which must satisfy the predetermined constraint is the

11   position between point k-A+1 and point k+B, where k is any position.  Rewriting this language as

12   A + B does nothing to construe the meaning of the claim.  It simply injects a potential for

13   confusion and error by interposing an unnecessary barrier between the claim language and the jury

14   charged with applying it.

15

16        The first sentence of Riverbed's proposed construction also refers to the window as

17   being composed "of bytes."  Even with Riverbed's agreement to add "bits," this language should

18   also be rejected as unnecessary and potentially leading to confusion and error.  Claim 1 refers to

19   "position" k|k+1, and the reference to b[k-A+1 . . . k+B] similarly refers to positions rather than

20   bytes or bits.  Riverbed argues that the "of bits or bytes" language should be adopted simply

21   because Dr. Williams wrote it in a marketing memo.  Yet Riverbed otherwise fails to explain why

22   the term "bytes and bits" should be substituted for the reference to "position" in the claims, a term

23   which is used in its ordinary meaning and requires no construction.  Nor can there be such an

24   explanation.  It is beyond dispute that the claim terms "position" and "bytes and bits" have

25   different meanings.  "Bytes and bits" is not a construction of the meaning of position.  Adoption of

26   this phrase in the Court's claim construction order would be a wholesale strikeout of the claim

27   language and substitution of different words altogether.  That is not permissible under any

28   circumstances.  *See K-2 Corp.*, 191 F.3d at 1364-65; *Liebel-Flarsheim*, 358 F.3d at 911.

The second sentence of Riverbed's proposed construction is not just unnecessary and confusing — it is manifestly wrong. Riverbed proposes to instruct the jury that "Only the bytes in the window of bytes of length A + B can effect the decision of whether a boundary should be placed at position k|k+1." Quantum pointed out in its opening brief that this sentence directly conflicts with claim 4, which provides for boundaries to be placed at positions other than those at which the predetermined constraint is satisfied. Conceding this point, Riverbed defends the second sentence of its proposed construction by arguing that, read in context with the first sentence, it merely describes the operation of the predetermined constraint. Riverbed '810 Patent Brief [Docket No. 128] at 14:6-11. However, the language of Riverbed's proposed construction is inconsistent with this defense. It does not state that only the bytes in the window can effect the decision whether the predetermined constraint is satisfied. Rather, it plainly states that only the bytes in the window can effect the decision "of whether a boundary should be placed." This language cannot be reconciled with either claim 4 or with Riverbed's attempted defense.

There is another, more fundamental reason why the second sentence of Riverbed's proposed construction is wrong. The specification clearly discloses that information other than the content of the bytes and bits at positions $b[k-A+1 \ldots k+B]$ may be considered by the predetermined constraint. In the section entitled "The Use of Multiple Partitionings," the '810 patent specification states that more than one predetermined constraint may be applied. Col. 15, lines 26-30. The use of more than one predetermined constraint would result in multiple partitionings "useful simply to provide a wider pool of subblocks to compare." Col. 15, lines 52-53. Specifically, the specification states that the multiple predetermined constraints may result in "the same subblock sizes, but at different positions within the block." Col. 15, lines 53-57. As an example, the specification describes the use of a "fractal algorithm" to "partition a block based on some other partitioning provided by Function F." Col. 15, lines 60-62.

These passages in the '810 patent specification disclose the use of predetermined constraints that consider not only the bits and bytes at position $b[k-A+1 \ldots k+B]$, but also

-7-

consider position in relation to "some other partitioning." *Id*. These disclosures refute Riverbed's proposed instruction that "Only the bytes in the window of bytes of length A + B can effect the decision of whether a boundary should be placed at position k k+1." It is not only the bytes, but also their location in relation to other partitions may be considered by the predetermined constraint.

Riverbed's reliance on Dr. Williams' memo to exclude consideration of relative location from the scope of claim 1 and its progeny is improper because an inventor cannot rewrite the disclosures in his specification ten years after it is submitted. Moreover, Dr. Williams did not intend his memo to be a precise demarcation of the metes and bounds of the '810 patent claims. *See* Briggs Decl. [Docket No. 129], Ex. B, at 162-163 ("This document was prepared, you know, to help people, who were having trouble with the patent, understand it. So it necessarily abbreviates, simplifies, and it's not – it's not a precise document. "). It was a marketing document that sought to convey the main outlines of his invention in an accurate but necessarily less than perfectly precise fashion. It is not surprising that Dr. Williams' characterization of his invention ten years later did not specifically take into consideration all of the aspects of his invention that were disclosed in his specification. Nor is that proper grounds to exclude embodiments specifically described in the '810 patent specification from the scope of the claims. *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364, 1378-80 (Fed. Cir. 2001) (reversing summary judgment for "improperly import[ing] a limitation not supported by the claim language or the specification," and noting in the context of another proposed construction that it is "well established that a claim construction that excludes a preferred embodiment is '*rarely, if ever, correct*.'" (quoting *Vitronics*, 90 F.3d at 1583)); *Keithley v. The Homestore.com, Inc.*, No. C03-04447, 2007 U.S. Dist. LEXIS 71126, at *21 (N.D. Cal. Sept. 12, 2007) ("Because neither the claim language, the specification, nor the prosecution history include such a specific limitation, the Court shall not impose one."); *see also Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005) (declining patentee's "plea for the import of a limitation to help preserve the validity of the asserted claims" because "[t]he limitation finds no support in the claims, written

1    description, prosecution history, or technical dictionary.").

2

3         One last error in Riverbed's briefing of predetermined constraint should be pointed

4    out, if only to illustrate Riverbed's propensity to ignore claim language that is plain and

5    unambiguous.  Riverbed argues that claim 1 requires that a boundary be placed at every point

6    satisfied by the predetermined constraint.  Riverbed '810 Patent Brief [Docket No. 128] at 13:14-

7    25.  In support of that contention, Riverbed points to a statement by counsel in the prosecution of

8    the Patent Cooperation Treaty application that led up to the '810 patent.  *See* Briggs Decl. [Docket

9    No. 129], Ex. J, at 1.  However, claim 1 on its face requires only that there be "a plurality of

10   subblocks at least one position k|k+1 within said block, for which b[k-A+1 . . . k+B] satisfies a

11   predetermined constraint . . . ."  This language cannot be reconciled with a requirement that a

12   boundary be placed at every position that satisfies a predetermined constraint.  Nor could a

13   reasonable examiner have believed that it did.   In fact, the letter relied on by Riverbed does not

14   refer to any claim using the same language as claim 1.  *Id.*, Ex. J, at QU00882991.  It is utterly

15   immaterial to the issues at bar.

16

17        **III.    CONSTRUCTION OF "SUBBLOCK"**

18

19   | '810 Patent Term | Quantum's Proposed Construction | Riverbed's Proposed Construction |
     | --- | --- | --- |
20   | subblock | A part of a block. | A part of a block consisting of a series of bits or bytes of the digital data from the block. |

23        Riverbed seeks a construction that limits the contents of "subblock" to "a series of

24   bits and bytes."  It relies on the statement in the '810 patent specification that the "term block and

25   subblock both refer, without limitation, to finite blocks or infinite blocks (sometimes called

26   streams) of zero or more bits or bytes of digital data."  Col. 2, lines 52-54, cited in Riverbed '810

27   Patent Brief [Docket No. 128] at 17:12-13.   However, this disclosure provides no support

-9-

1   whatsoever for Riverbed's contention that subblocks are composed solely of bits and bytes of

2   digital data.  To the contrary, the specification expressly states that this definition is "without

3   limitation;" i.e., is not intended to be restrictive.  Riverbed's proposed construction conflicts with

4   that plain and unambiguous statement.

5

6          Surprisingly, Riverbed takes issue with Quantum's objection to a restrictive

7   construction of the term "subblock" on purely technical grounds.  Riverbed asserts, without basis,

8   that "Quantum's argument that there could be digital data that consists of anything other than bits

9   or bytes is nonsensical and technically impossible."  Riverbed '810 Patent Brief [Docket No. 128]

10  at 17:22-24.  If that is so, then a claim construction restricting the meaning of subblock to bits and

11  bytes would be unnecessary.  However, Riverbed is wrong.  As noted in the discussion of

12  predetermined constraint above, the specification of the '810 patent expressly discloses

13  predetermined constraints that consider not only the bits and bytes at position b[k-A+1 . . . k+B],

14  but also consider position in relation to "some other partitioning."  Col. 15, lines 60-61.  Clearly

15  subblocks may contain position information in addition to the bytes and bits.  There is no basis for

16  excluding blocks of data containing such information from the scope of claim 1 and its progeny.

17

18  **IV.    CONSTRUCTION OF "AN ADDITIONAL HIERARCHY OF SUBBLOCKS IS**
        **FORMED FROM AT LEAST ONE GROUP OF CONTIGUOUS SUBBLOCKS"**

19

20
21
22
23
24
25
26
27

| '810 Patent Term | Quantum's Proposed Construction | Riverbed's Proposed Construction |
|---|---|---|
| Hierarchy | A system or series of terms of successive rank. | |
| An additional hierarchy of subblocks is formed from at least one group of contiguous subblocks | | Multiple layers of subblocks are constructed from one or more initially contiguous subblocks by progressively restricting a constraint function to |

28

| | | generate the multiple layers of subblocks, where the boundaries of the higher layer subblocks are aligned with the subblock boundaries of all the subblock layers below it. |
| --- | --- | --- |

Quantum objected to Riverbed's proposed construction of claim 6 on the ground that it is unnecessary, and so complex as to raise the danger of confusion and error. This danger exists to a degree that even Quantum failed to appreciate. Because it is so convoluted, Quantum was unable to appreciate that Riverbed's proposed construction contains a serious error. It was only upon reading Riverbed's opposition brief that this error became apparent.

Riverbed's error relates to the word "contiguous." In its opposition brief, Riverbed states that its proposed construction gives meaning to the word "contiguous" by "requiring that 'the boundaries of the higher layer subblocks are aligned with the subblock boundaries of all the subblock layers below it.'" Riverbed '810 Patent Brief [Docket No. 128] at 19:24-27. This proposed construction would erroneously instruct the jury that "contiguous" requires vertical alignment between lower and higher layer subblocks. The specification of the '810 patent describes "a group of values that have contiguous values" as "(e.g. 6, 7, 8, 9)." Col. 10, lines 3-4. "Contiguous" therefore refers to a horizontal relationship among entities at the same level. There is nothing in the specification to indicate that "contiguous" refers to a vertical relationship between different levels of hierarchy. Nor does the ordinary meaning of that word suggest the vertical relationship that Riverbed asks the Court to adopt.

Further, the vertical definition of "contiguous" proffered by Riverbed conflicts with the language of claim 6, which requires an additional hierarchy of subblocks "formed from at least one group of contiguous subblocks." Col. 25, lines 15-16. It is the initial group of subblocks that is required to be contiguous. There is no requirement that that the higher level subblocks be contiguous to the lower. Claim 6 is simply not susceptible to the construction Riverbed wishes to

-11-

1    impose upon it.

2

3          Riverbed argues that a "construction that does not require the boundaries of higher

4    layer subblocks to be aligned with the subblock boundaries of all the subblock layers below them

5    could allow for 'intervening' subblocks within the group of subblocks from which the additional

6    hierarchy of subblocks is formed."  Riverbed '810 Patent Brief [Docket No. 128] at 19:27-20:2.  In

7    other words, Riverbed argues that the requirement of vertical contiguousness is necessary in order

8    to ensure that there is horizontal contiguousness.  That is not so.  The limitation that the additional

9    hierarchy be formed "from at least one group of contiguous subblocks" simply does not require the

10   imposition of additional limitations in order to be properly construed.

11

12          Riverbed errs in relying on *Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d

13   1317 (Fed. Cir. 2002) for the proposition that "'the absence of intervening structure is inherent

14   even in the broad definition of "contiguous."'"  Riverbed '810 Patent Brief [Docket No. 128] at

15   20:3-5 (citing *Honeywell*, 298 F.3d at 1324).   The invention at issue in *Honeywell* is of a

16   completely different nature from the '810 Patent.   *Honeywell* dealt with a physical chip with

17   distinct layers placed on top of each other.  *Honeywell*, 298 F.3d at 1320-1322.  This is totally

18   unlike the software invention at bar.  The court's construction of the word contiguous in that case

19   has no application to the invention at hand, which involves a requirement of contiguous side-by-

20   side subblocks.

21

22          Riverbed complains that Quantum has not proposed a construction that explains

23   how an additional hierarchy of subblocks is "formed."  Riverbed '810 Patent Brief [Docket No.

24   128] at 20:15-21:26.  Again, the Court is not expected to construe everyday words used in their

25   commonly understood meaning.  Indeed, although Riverbed claims to desire a construction for this

26   term, its own proposed construction fails to provide one.  Instead of the claim term "formed,"

27   Riverbed would substitute, without further explanation, the word "constructed."   That is not

28   clarification — it is simply a substitution of another word for the term used in the claim.  Such

-12-

1    substitutions are error.  *See K-2 Corp.*, 191 F.3d at 1364-65; *Liebel-Flarsheim*, 358 F.3d at 911.

2

3         Contrary to well-established rules of construction, Riverbed asks this Court to read

4    the embodiment depicted in Figure 9 into claim 6.  *See Phillips*, 415 F.3d 1303, 1323 ("For

5    instance, although the specification often describes very specific embodiments of the invention,

6    we have repeatedly warned against confining the claims to those embodiments.").  The '810 patent

7    specification states that Figure 9 shows how a hierarchy of subblocks "can be constructed by

8    progressively restricting a constraint F."  This language merely describes an embodiment.  It does

9    not impose a limitation on the claim.  Indeed, Riverbed does not and cannot provide any coherent

10   explanation why the description of this embodiment should be incorporated into the claims.  To do

11   so would be error.

12

13                    V.    **<u>CONCLUSION</u>**

14

15         For the foregoing reasons, the Court should adopt the constructions proposed by

16   Quantum and reject those proposed by Riverbed.

17

18   Dated:  June 19, 2008

19                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

20

21              By      /s/ Nathaniel Bruno

22                              AMAR L. THAKUR
                                MAURICIO A. FLORES
23                              NATHANIEL BRUNO

                                Attorneys for
24                              QUANTUM CORPORATION

25

26

27

28

-13-