QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  Todd M. Briggs (Bar No. 209282)
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100
Email:        claudestern@quinnemanuel.com
              toddbriggs@quinnemanuel.com

Attorneys for RIVERBED TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RIVERBED TECHNOLOGY, INC.,<br><br>　　　　Counterclaimant,<br><br>　vs.<br><br>QUANTUM CORPORATION,<br><br>　　　　Counterdefendant. | CASE NO. C 07-4161 WHA<br><br>**REPLY IN SUPPORT OF RIVERBED'S MOTION FOR SUMMARY JUDGMENT OF:**<br><br>**(1) VALIDITY OF CLAIMS 26 AND 27 OF U.S. PATENT 7,116,249 UNDER 35 U.S.C. § 102,** |
| QUANTUM CORPORATION,<br><br>　　　　Counterclaimant,<br><br>　vs.<br><br>RIVERBED TECHNOLOGY, INC.,<br><br>　　　　Counterdefendant. | **(2) VALIDITY OF ALL ASSERTED CLAIMS OF U.S. PATENT 7,116,249 UNDER 35 U.S.C. § 103, AND**<br><br>**(3) VALIDITY OF ALL ASSERTED CLAIMS OF U.S. PATENT 7,116,249 UNDER 35 U.S.C. § 112,**<br><br>**AND**<br><br>**OPPOSITION TO QUANTUM CORPORATION'S MOTION FOR LEAVE TO AMEND ITS PRELIMINARY INVALIDITY CONTENTIONS**<br><br>Date:　July 17, 2008<br>Time:　8:00 a.m.<br>Judge:　The Honorable William Alsup |

** REDACTED VERSION FOR PUBLIC FILING **

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ..................................................................................................................1

II.  SUMMARY JUDGMENT OF INVALIDITY SHOULD BE GRANTED ..........................3

    A.   Engagement Of An Expert Who Provides New Invalidity Theories After Invalidity Contentions Are Due Does Not Constitute "Good Cause" To Amend..........................................................................................................................3

    B.   The Cases Cited By Quantum Do Not Support Its Arguments ...................................6

    C.   Quantum's 15 Months Of Analysis Of The '249 Patent Provided It With More Than Adequate Time To Prepare Its Invalidity Case .........................................9

III. QUANTUM SHOULD BE SANCTIONED FOR ITS IMPROPER DOCUMENT PRODUCTION AND DEPOSITION TACTICS ..............................................................10

IV.  CONCLUSION....................................................................................................................12

## I. INTRODUCTION

Quantum effectively concedes all the facts showing that summary judgment for Riverbed is appropriate. Quantum does not and cannot dispute the following facts:

- Quantum's invalidity contentions do not challenge the validity of claims 26 and 27 of Riverbed's '249 patent under 35 U.S.C. § 102;

- Quantum's invalidity contentions do not challenge the validity of any of the asserted claims of the '249 patent under 35 U.S.C. § 103;

- Quantum's invalidity contentions do not challenge the validity of any of the asserted claims of the '249 patent under 35 U.S.C. § 112;

- Quantum closely analyzed Riverbed's '249 patent internally and with the assistance of outside patent counsel for a 15-month period before its invalidity contentions were due and began that analysis just two weeks after the '249 patent issued;

- Quantum had adequate time and opportunity to prepare its invalidity case on the '249 patent;

- Quantum did not file its motion for leave to amend until it filed its opposition to Riverbed's motion for summary judgment of validity of the '249 patent on June 12, 2008.

Moreover, Quantum admits the following facts:

- Quantum did not begin searching for technical experts to assist with the '249 patent until several weeks before its invalidity contentions were due;

- Quantum did not retain its technical expert for the '249 patent, Dr. David Mazieres, until after it served its invalidity contentions.

Quantum now claims for the first time that it has "good cause" to amend its invalidity contentions because the expert it retained after serving its invalidity contentions, Dr. Mazieres, provided a new reference[1] and opined that certain claims may be obvious. However, the facts show that Quantum was anything but diligent in its search for experts and in its retention of Dr.

---

[1] **REDACTED**

51198/2556295.4
Case No. C 07-04161 WHA

REPLY IN SUPPORT OF RIVERBED'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY

Mazieres: (1) Quantum did not even begin searching for experts for the '249 patent until *less than a month remained* before Quantum's invalidity contentions were due; (2) Quantum did not engage Dr. Mazeries until *after* its invalidity contentions had been served; (3) Quantum *never* informed Dr. Mazeries that they needed him to analyze the validity of the '249 patent before the deadline for serving its invalidity contentions; and (4) Quantum did not even conduct its initial interview with Dr. Mazieres until *the night before* its invalidity contentions were due. Quantum's lack of diligence is made even more apparent by the *12 months of analysis* it performed *before* Riverbed even asserted the '249 patent against Quantum.

Quantum's complete lack of diligence precludes a finding of "good cause" under Patent Local Rule 3-7. That Rule prevents defendants in patent infringement actions from simply hiring technical experts after the deadline for invalidity contentions and then claiming "good cause" to amend their contentions if those experts raise additional invalidity theories. As recognized by the Federal Circuit, defendants must be diligent in selecting and retaining their experts and in developing invalidity theories in advance of serving their invalidity contentions. *O2 Micro Int'l Lmtd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006). Defendants who choose to delay and hire experts after the deadline for preliminary invalidity contentions do so at their own peril. If this Court were to hold otherwise, defendants could simply hire new experts whenever they please and by doing so gain a free pass to assert new invalidity theories. This would set dangerous precedent and make a mockery of the Patent Local Rules. It would also reward defendants for their lack of diligence and, worse yet, encourage gamesmanship and strategic delay in asserting invalidity theories.

This Court has warned Quantum on several occasions that failure to comply with case deadlines may result in preclusion. During the Case Management Conference, this Court made clear that any failure to provide certain information in FRCP 26 initial disclosures may result in

**REDACTED**

preclusion. The Court repeated this warning to the parties in its Case Management Order.[2] Furthermore, in dismissing Quantum's patent infringement claim under the '810 patent for lack of standing several months ago, the Court admonished Quantum from that point forward to "measure twice and cut once."[3]

Despite the Court's repeated warnings, Quantum has once again failed to exercise the requisite amount of care and now seeks the Court's assistance to undo another failure to "measure twice." Quantum, however, has fallen far short of proving it was diligent and therefore has failed to show that it has the requisite "good cause" under Patent Local Rule 3-7 to amend. Consequently, the Court should grant Riverbed's motion for partial summary judgment of validity, and Quantum's motion for leave to amend should be denied.

## II.  SUMMARY JUDGMENT OF INVALIDITY SHOULD BE GRANTED

### A.  Engagement Of An Expert Who Provides New Invalidity Theories After Invalidity Contentions Are Due Does Not Constitute "Good Cause" To Amend

Quantum must show that it "acted with diligence" to satisfy the "good cause" requirement under Patent Local Rule 3-7. *O2 Micro Int'l Lmtd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006). As the Ninth Circuit recognized in *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992), "if the party [seeking amendment] was not diligent, the inquiry should end." *Id.* at 609.[4]

---

[2] *See* Case Management Order, Docket No. 23 ("All initial disclosures under FRCP 26 must be completed by DECEMBER 7, 2007, *on pain of preclusion*.").
[3] *See* Order Granting Defendant's Motion to Dismiss, Docket No. 73 (hearing held on January 31, 2008).
[4] Because Quantum has failed to show diligence, the Court's inquiry should end. Nevertheless, even if Riverbed needed to show prejudice to defeat Quantum's motion, which it does not, Riverbed can readily do so because Riverbed submitted claim constructions to the Court that are based on the invalidity theories Quantum disclosed in its preliminary invalidity contentions. *See Mass Eng'd Design, Inc. v. Ergotron, Inc.*, 2008 WL 2223036 (E.D. Tex. May 30, 2008). *See also LG Elecs. Inc. v. Q-Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (denying motion to amend where opposing party did not "frame [its] claim construction arguments with the [new] products in mind"). Riverbed did not frame its constructions of terms in the '249 patent based on Quantum's new invalidity theories because Quantum did not pursue its new theories and clearly did not have "good cause" to amend. Denying Riverbed of the opportunity to address Quantum's new theories during the claim construction process is clearly prejudicial to Riverbed and contrary to the Patent Local Rules.

Quantum's only evidence of diligence is set forth in the declaration of David Heisey, one of Quantum's outside attorneys. Rather than offering facts that support Quantum's claim of diligence, Mr. Heisey merely provides three paragraphs of vague and conclusory assertions regarding Quantum's purported diligence and interactions with Dr. Mazieres. Such assertions are not sufficient to establish good cause. *See, e.g., Berger v. Rossignol Ski Co. Inc.*, 2006 WL 1095914, at *10 (N.D. Cal. April 25, 2006) (finding no good cause, in part, because movant's supporting declaration omitted information relating to diligence); *Perf. Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys., Inc.*, No. H-05-4251, 2007 WL 836904 (S.D. Tex. March 15, 2007) (movant failed to establish diligence where it waited until after the deadline for serving preliminary invalidity contentions to request its expert to conduct a prior art search). Because Mr. Heisey's declaration did not provide facts to support his vague and conclusory assertions, Riverbed deposed Mr. Heisey and Dr. Mazieres.[5] These depositions, which have been submitted in their entireties with this Reply, confirm that Quantum was anything but diligent. (Briggs Supp. Dec., Ex. G (Mazieres Dep.), H (Heisey Dep.).)

**REDACTED**

---

[5] Notably, Quantum did not provide a declaration from Dr. Mazieres with its motion for leave to amend. *See, e.g., O2 Micro*, 467 F.3d at 1367 ("[N]or did O2 Micro offer a declaration from their expert explaining what he was doing during this time to develop the theory or supporting the need for additional time to develop the theory.")

Quantum has also failed to produce any documents to substantiate these claims despite Riverbed's requests for it to do so. *See* Section III, *infra*. For example, Quantum has not produced any documentary evidence that supports the existence REDACTED REDACTED, or that shows Quantum's counsel "traveled throughout the country" to meet with certain experts.[6] With respect to the alleged travel throughout the country, it is worth noting that the expert Quantum hired, Dr. Mazieres, lives in San Francisco, not far from Quantum's counsel's San Francisco office. (Mazieres Dep. at 4.)

When questioned about the circumstances surrounding his retention, Dr. Mazieres, testified that he was initially contacted by Quantum around January 9, 2008. After that, he did not meet with Quantum's counsel until 9:00 p.m. on January 30, 2008 in San Francisco. (Briggs Supp. Dec., Ex. I; Mazieres Dep. 19.) This initial interview took place the ***night before*** Quantum's invalidity contentions were due. Another two weeks passed before Dr. Mazieres was engaged by Quantum on February 13, 2008. (Briggs Supp. Dec., Ex. J; Mazieres Dep. at 26-27.)

Mr. Heisey's declaration suggests that Quantum did not retain Dr. Mazieres before the deadline for its invalidity contentions because he was "ill in January 2008." (Heisey Decl. ¶ 2.)

REDACTED

Indeed, Dr. Mazieres even expressed his willingness to meet with Quantum's counsel during the time he was sick. (Briggs Supp. Dec., Ex. K.)

---

[6] Quantum's production in connection with Dr. Mazieres' and Mr. Heisey's depositions has been both incomplete and untimely. Quantum has produced only 67 documents from Dr. Mazieres' files, 63 of which were produced *after he was deposed*, and Quantum has *not produced a single document* from Mr. Heisey's files or the files of any other Quantum attorney who purportedly                . *See* Section III, *infra*.

Rather than vindicate its position, Quantum's evidence demonstrates that it waited until the last minute to begin searching for experts for the '249 patent and as a result failed to retain an expert until *after* its invalidity contentions were due.[7] Under no definition can this constitute diligence. Moreover, Quantum's explanation for why Dr. Mazieres' retention was delayed is clearly inadequate. *See, e.g., O2 Micro*, 467 F.3d at 1367-68 (affirming finding of no diligence based, in part, on moving party's "lack of adequate explanation" for its delay in moving to amend); *Berger*, 2006 WL 1095914 at *10 (denying leave to amend where moving party "failed to adequately explain the delay"). Quantum has also not explained why, despite having a 12-month head start on analyzing the '249 patent before the patent was asserted, it waited until just a few weeks before its invalidity contentions were due to even begin searching for an expert. No explanation has been offered because Quantum simply has no excuse for its lack of diligence.

### B.  The Cases Cited By Quantum Do Not Support Its Arguments

The numerous cases Quantum relies on do not support its motion to amend. Significantly, Quantum does not cite a single example of a court granting leave to amend where the moving party hired an expert *after* preliminary contentions were due under the Patent Local Rules and then moved to amend based on theories that expert provided. Moreover, none of the cases cited by Quantum involve a situation where the moving party had been analyzing the opposing party's patent – internally and with the assistance of outside patent counsel – immediately following the date of issuance a patent and for more than 12 months before that patent was asserted.

Some cases cited by Quantum do not even involve a motion to amend under the relevant rule, Patent Local Rule 3-7. In *Ixys Corp. v Advanced Power Tech., Inc.*, 2004 U.S. Dist. LEXIS

---

[7] Once Dr. Mazieres had finally been retained, Quantum found only limited use for his expertise. Dr. Mazieres testified that he had only one substantive in-person meeting with Quantum's attorneys and that most of his email communications with Quantum concerned "administrative matters" relating to the fact that he "wasn't working very many hours." (Mazieres Dep. at 36.) He also testified that, of the "five to ten" phone calls he had with Quantum's attorneys, "maybe three" were substantive. (*Id.* at 37.) According to Dr. Mazieres, they did not discuss infringement issues or invalidity issues on those phone calls; rather, he was "helping people understand the technology and . . . maybe what some of the terms of the patent meant." (*Id.* at 38.) He further testified that he did not work on any drafts of Quantum's amended invalidity contentions and only recalled seeing one draft. (*Id.* at 40, 49.)

10934 (N.D. Cal. June 15, 2004), for example, the court was presented with a motion to amend final invalidity contentions under Patent Local Rule 3-6(b), which does not require a showing of good cause. *Id.* at *2-4; *see* P.L.R. 3-6(b). Similarly, in *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2005 U.S. Dist. LEXIS 44136, at *5-7 (N.D. Cal. Aug. 24, 2005), the plaintiff brought a motion to strike the defendant's final invalidity contentions, which were amended pursuant to Rule 3-6(b). *Id.* at *5-6.

With regard to the cases that do involve a motion to amend under Patent Local Rule 3-7, these cases are all readily distinguishable. First, the moving parties exhibited far more diligence than Quantum in seeking to amend with the Court. For example, the defendant in *Computer Acceleration Corp. v. Microsoft*, 481 F. Supp. 2d 620, 627 (E.D. Tex. 2007) "filed its motions for leave eleven days after discovering the [prior art]." *Id.* at 626. The plaintiff in *ZiLog, Inc. v. Quicklogic Corp.*, 2006 U.S. Dist. LEXIS 12844 (N.D. Cal. March 6, 2006) brought its motion to amend immediately after the only claim it had asserted was invalidated by the United States Patent Office in a reexamination proceeding initiated by the defendant. *Id.* at *2-4. By contrast, Quantum waited almost four months to move to amend after its expert disclosed the prior art and even then it only did so in response to Riverbed's motion for summary judgment.

Second, many of the cases involve findings of little or no prejudice to the opposing party. In *Lexar Media, Inc. v. Pretec Elec. Corp.*, 2007 U.S. Dist. LEXIS 32825 (N.D. Cal. April 16, 2007), for example, the Court noted that "there had been no particularized showing of prejudice by [the opposing party]." *Id.* at *3. In *Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 U.S. Dist. LEXIS 35957 (N.D. Cal. April 30, 2007) the Court also concluded that the amendments could be permitted "without causing any prejudice to plaintiff" in part because the "Defendants seek to amend their invalidity contentions well in adv[an]ce of . . . briefing on claim construction." *Id.* at *9-10. Indeed, some of the opposing parties incorporated the proposed theories into the case before the amending party moved for leave to amend, thereby reducing the potential prejudice. *See, e.g., Bd. of Trustees of Leeland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 2008 U.S. Dist. LEXIS 16556 (N.D. Cal. March 4, 2008) ("Roche's claim construction strategy clearly

took [the product movant sought to add to its infringement contentions] into account"); *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 U.S. Dist. LEXIS 90856, at *18 (N.D. Cal. May 15, 2006) ("most importantly, the parties have already extensively briefed this issue").

Third, the courts' decisions were motivated by factors not present here. Frequently the court was concerned with whether the movant had adequate time to perform an investigation prior to filing its preliminary contentions. For instance, in *Gen. Atomics v. Axis-Shield ASA*, 2006 U.S. Dist LEXIS 58939 (N.D. Cal. Aug. 9, 2006) and *Comcast Cable Comm'cns Corp. LLC v. Finisar Corp.* 2007 WL 716131 (N.D. Cal. March 2, 2007), the movant was the defendant in a declaratory judgment action. In such litigation, the party asserting the infringement claim is not expected "to have done as much infringement-analysis homework as . . . a patent owner who initiates and thus chooses the timing of the litigation." *Comcast*, 2006 WL 716131 at *1. This concern is clearly not present here because Quantum has been aware of the '249 virtually since its issuance in October 2006 and had been analyzing the patent for more than a year before it was asserted in this action.

The courts have also considered the difficulty encountered by the movant in discovering the new theories and prior art. For example, in *Alt v. Medtronic, Inc.*, 2006 U.S. dist. LEXIS 4435 (E.D. Tex. Feb. 1, 2006), the court granted the motion largely because the opposing party had "hindered [the movant's] ability to meet the" deadline for serving preliminary invalidity contentions by "fail[ing] to disclose information," including an earlier conception date for the patent-at-issue.[8] *Id.* at *11-12. Also, in *Yodlee, Inc. v. Cashedge, Inc.*, 2007 U.S. Dist. LEXIS 39564 (N.D. May 17, 2007), the court stated that the defendant's failure to identify the prior art, a website, in its preliminary invalidity contentions was "more understandable" because "there are no comprehensive sources for locating web-based prior art." *Id.* at *6-7. The court identified

---

[8] The court also faulted the opposing party for failing "to inform [the movant] that he objected to the addition of the prior art references" and instead "lay[ing] behind the log" in subsequent communications. *Alt v. Medtronic, Inc.*, 2006 U.S. Dist. LEXIS 4435, at *6 (E.D. Tex. Feb. 1, 2006). By contrast, Riverbed notified Quantum that it opposed the amendments shortly after Quantum served its proposed amended contentions and requested that Quantum demonstrate good cause. (Briggs Dec., Ex. D.)

51198/2556295.4
Case No. C 07-04161 WHA

-8-

REPLY IN SUPPORT OF RIVERBED'S
MOTION FOR SUMMARY JUDGMENT
OF VALIDITY

scholarly articles and published patent records – both sources that would lead to the prior art patent that Quantum now seeks to add – as more "easily searchable source[s]" for finding prior art. *Id.*

For all of these reasons, the cases cited provide further support for the conclusion that Quantum was not diligent and therefore cannot show "good cause" under Patent Local Rule 3-7.

### C. Quantum's 15 Months Of Analysis Of The '249 Patent Provided It With More Than Adequate Time To Prepare Its Invalidity Case

Not once in its opposition does Quantum deny that it had ample time to prepare its invalidity case on the '249 patent before its invalidity contentions were due under Patent Local Rule 3-3. Indeed, Quantum does not even mention its early awareness of the '249 patent or the extensive analysis it performed on the '249 patent before Riverbed's assertion of the patent. Critical facts that Quantum neglected to address include the following:

**REDACTED**

Quantum's silence is telling.

This massive head start on invalidity analysis differentiates Quantum from most patent infringement defendants. Not only did Quantum "choose[] the timing of the litigation" by bringing the '810 patent infringement suit against Riverbed, but it also conducted far more "analysis homework" on the '249 patent than even patentees investigating the actions of alleged infringers would typically accomplish. *Comcast*, 2007 WL 716131 at *1.

**REDACTED**

Quantum then had another three months under the Patent Local Rules to supplement its prior analysis and serve preliminary invalidity contentions. Quantum's opposition is silent on these damaging facts. Undoubtedly, Quantum does not address its many consecutive months of "invalidity-analysis homework" because it does not want to draw the Court's attention to facts that so clearly belie its claim of good cause.

### III. QUANTUM SHOULD BE SANCTIONED FOR ITS IMPROPER DOCUMENT PRODUCTION AND DEPOSITION TACTICS

As the Court may recall, Quantum recently produced a substantial number of documents potentially relevant to the deposition of Dr. Ross Williams – the inventor of Quantum's '810 patent – *after* Dr. Williams' deposition. The Court expressed concern about this during the June 10, 2008 hearing and ordered that Riverbed be allowed to depose Dr. Williams again and that Quantum pay a half-day of attorney's fees for this deposition.[9]

Quantum ignored this Court's admonishment and has again stonewalled discovery by gaming the document production related to its claim of diligence. After Quantum filed its opposition brief and the supporting declaration of Mr. Heisey, Riverbed noticed the depositions of Mr. Heisey and Dr. Mazieres. At the same time, Riverbed requested the production of all documents that support the assertions made in Mr. Heisey's declaration including but not limited to:

> 1. All documents and communications demonstrating that "Sheppard Mullin diligently and thoroughly researched and interviewed a number of experts relating to the '249 patent" including all evidence that Sheppard Mullin traveled "throughout the United States" in search of an expert for the '249 patent.
>
> 2. All documents and communications demonstrating that "Dr. Mazieres was ill in January 2008."
>
> 3. All documents and communications demonstrating that "Dr. Mazieres was formally engaged as an expert for Quantum on February 13, 2008."
>
> 4. All documents and communications demonstrating that "Sheppard Mullin attorneys including [Mr. Heisey] worked diligently to draft Quantum's Proposed amended Preliminary Invalidity Contentions."
>
> 5. All documents and communications supporting Mr. Heisey's assertion that there were "multiple drafts" of Quantum's proposed amended invalidity contentions and that there was "close and frequent interaction with Dr. Mazieres and Quantum employees."

(Briggs Supp. Dec., Ex. L.)

---

[9] *See* Transcript Hearing for Motion to Dismiss, at 17-23.

Riverbed informed Quantum that these requests were covered by several Riverbed document requests including one that specifically sought documents and communications that "relate to Quantum's communications or contacts with third parties, including but not limited to experts, regarding this litigation." (Briggs Supp. Dec., Ex. M.)

The day before Dr. Mazieres' deposition, which was six days after Riverbed requested these documents, Quantum had not produced *any* of the requested documents. By email, Riverbed again requested production of these documents and Quantum produced a token number of Dr. Mazieres' documents the evening before his deposition. (Briggs Supp. Dec., Ex. N.) Alarmingly, during the deposition, Riverbed learned that Dr. Mazeries had provided Quantum's counsel with 70 emails, the vast majority of which had not been produced to Riverbed before the deposition. (Mazieres Dep. at 16, 54-55.) These documents were clearly covered by Riverbed's document requests as they were communications with Quantum's expert Dr. Mazieres. After Riverbed called attention to this issue at the close of the deposition (*Id.* at 54-55), Quantum produced the remainder of the documents later that day as well as a privilege log the following day for the material it withheld. (Briggs Supp. Dec., Ex. O.)

Despite requesting documents that support the assertions in Mr. Heisey's declaration, Riverbed ***did not receive a single document*** from Mr. Heisey or any other attorney from the Sheppard Mullin firm. During his deposition, Riverbed learned that Mr. Heisey had not even been asked to collect any documents. (Heisey Dep. at 25.) Riverbed also never received *any* documents or communications between Quantum's counsel and the REDACTED (other than Dr. Mazieres' production). Nor did Quantum produce documents from any other custodian to substantiate Mr. Heisey's other claims. Quantum's minimal, untimely, and incomplete production stands in stark contrast with its general practice in this action of broadly reading Riverbed's document requests and producing all responsive documents regardless of relevance.

51198/2556295.4
Case No. C 07-04161 WHA

-11-

REPLY IN SUPPORT OF RIVERBED'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY

1   Quantum also prevented Riverbed from obtaining the factual bases that underlie Mr. Heisey's conclusory allegations of diligence in another way. During Mr. Heisey's deposition, Quantum's counsel repeatedly instructed him not to answer questions regarding the facts underlying his assertions, claiming that the information sought was protected by the attorney-work product doctrine. (Heisey Dep. at 18-19, 21, 26-27, 33.) Surely Mr. Heisey cannot claim Quantum was diligent without giving any factual support, hide behind the work product doctrine when Riverbed asks him to substantiate his claims, and by doing so meet Quantum's burden of showing it was diligent. *See O2 Micro*, 467 F.3d at 1367-68 (conclusory statements in movant's declaration were insufficient because they "[did] not explain the relationship between this work and the [new invalidity] theory"). If this were permissible, the only burden the "good cause" standard would impose upon the movant would be to submit a declaration from counsel containing a single statement that it has been "diligent." Clearly, this cannot be the rule.

## IV. CONCLUSION

For the reasons set forth above and in Riverbed's memorandum in support of its motion for summary judgment, partial summary judgment of validity of claims 26 and 27 of the '249 Patent under 35 U.S.C. § 102 and of claims 1-2, 7-8, 13, 19-22, and 25-28 of the '249 Patent under 35 U.S.C. § 103 and 35 U.S.C. § 112 should be granted. Riverbed acknowledges that Quantum may develop "theories not yet known" and request leave to amend its invalidity contentions under the Patent Local Rules to assert those theories. Accordingly, Riverbed does not seek summary judgment with respect to any prior art that Quantum may discover in the future. Riverbed's motion is limited to the prior art references and the arguments that Quantum has presented in its proposed amended contentions. Thus, a ruling precluding Quantum from relying on these arguments to invalidate the '249 patent is appropriate even if Quantum can later amend to add new invalidity defenses under the Patent Local Rules. In the alternative, Riverbed requests that the Court deny Quantum's motion for leave to amend.

-12-

51198/2556295.4
Case No. C 07-04161 WHA

REPLY IN SUPPORT OF RIVERBED'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY

1  Respectfully submitted,

2  July 2, 2008                    QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

3

4                                  /s/ Todd M. Briggs
                                   Todd M. Briggs
5                                  Attorneys for RIVERBED TECHNOLOGY, INC.