AMAR L. THAKUR, Cal. Bar No. 194025
MAURICIO A. FLORES, Cal. Bar No. 93304
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone:   858-720-8900
Facsimile:    858-509-3691
Email:   athakur@sheppardmullin.com
         mflores@sheppardmullin.com

NATHANIEL BRUNO, Cal. Bar No. 228118
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
Four Embarcadero Center, 17th Floor
San Francisco, California 94111
Telephone:   415-434-9100
Facsimile:    415-434-3947
Email: nbruno@sheppardmullin.com

Attorneys for QUANTUM CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN FRANCISCO DIVISION

| | |
|---|---|
| RIVERBED TECHNOLOGY, INC., a Delaware corporation,<br><br>            Counterclaimant,<br><br>      v.<br><br>QUANTUM CORPORATION,<br><br>            Counterdefendant.<br>_____<br>QUANTUM CORPORATION, a Delaware corporation,<br><br>            Counterclaimant,<br><br>      v.<br><br>RIVERBED TECHNOLOGY, INC., a Delaware corporation,<br><br>            Counterdefendant. | Case No. C 07-04161 WHA<br><br>The Hon. William H. Alsup<br><br>**REPLY IN SUPPORT OF QUANTUM CORPORATION'S MOTION FOR LEAVE TO AMEND ITS PRELIMINARY INVALIDITY CONTENTIONS**<br><br>Hearing Date: July 17, 2008<br>Hearing Time: 8:00 a.m.<br>Courtroom 9, 19th Floor<br><br>Complaint Filed: August 14, 2007<br>Trial Date: March 30, 2009 |

TABLE OF CONTENTS

Page

I.    Introductory Statement ................................................................................................ 1

II.    Factual Evidence of Quantum's Diligence ................................................................ 1

III.    Argument.................................................................................................................... 4

    A.    Riverbed Has Failed to Make the Required "Particularized Showing" of Prejudice. ....................................................................................................... 4

    B.    Quantum Has Exceeded the Diligence Requirement. ................................... 5

        1.    Quantum Was Not Required to Consult with a Technical Expert Prior to Serving Its Preliminary Invalidity Contentions................................ 6

        2.    Quantum's Pre-Litigation Analysis of Riverbed's '249 Patent Shows Extra Diligence and Supports Granting Quantum Leave to Amend. ............ 8

    C.    Riverbed Has Failed to Distinguish Quantum's Cases. ............................... 9

IV.    Riverbed's Improper Request for Sanctions Violates the Civil Local Rules and Is Meritless ................................................................................................................... 10

V.    Conclusion................................................................................................................ 13

# TABLE OF AUTHORITIES

**Federal Cases**

Alt v. Medtronic, Inc.,
   No. 2:04-CV-370, 2006 U.S. Dist. LEXIS 4435 (E.D. Tex., Feb. 1, 2006) ........................ 9, 10

Baker v. Gen'l Motors Corp.,
   209 F.3d 1051 (8th Cir. 2000) ............................................................................................... 12

Bd. of Trustees of Stanford v. Roche Molecular Sys., Inc., No. C 05-04158,
   2008 U.S. Dist. LEXIS 16556 (N.D. Cal., Mar. 4, 2008) ................................................ 5, 7, 9

Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc., No. C 03-1431,
   2006 U.S. Dist. LEXIS 90856 (N.D. Cal., May 15, 2006) ......................................... 6, 7, 9, 10

General Atomics v. Axis-Shield ASA, No. C 05-04074,
   2006 U.S. Dist. LEXIS 58939 (N.D. Cal., Aug. 9, 2006) ...................................................... 5, 8

IXYS Corp. v. Adv. Power Tech., Inc., No. C 02-03942,
   2004 U.S. Dist. LEXIS 10934 (N.D. Cal., June 16, 2004) ..................................................... 6, 7

Lexar Media, Inc. v. Pretex Elecs. Corp., No. C 00-04770,
   2007 U.S. Dist. LEXIS 32825 (N.D. Cal., Apr. 18, 2007).................................... 4, 5, 6, 7, 9,
   ................................................................................................................................................ 10

O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,
   467 F.3d 1355 (Fed. Cir. 2006) ............................................................................................. 6-7

Perf. Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys., Inc., No. H-05-4251,
   2007 WL. 836904 (S.D. Tex., March 15, 2007) ...................................................................... 7

Tessera, Inc. v. Adv. Micro Devices, Inc., No. C 05-4063,
   2007 U.S. Dist. LEXIS 35957 .............................................................................................. 8, 9

Upjohn Co. v. U.S.,
   449 U.S. 383 (1981) ............................................................................................................... 12

Yodlee, Inc. v. Cashedge, Inc., No. C 05-01550,
   2007 U.S. Dist. LEXIS 39564 (N.D. Cal., May 17, 2007) ............................................. 5, 9, 10

**Statutes**

Fed. R. Civ. P. 26(b)(3)                                                                                                                    12

Fed. R. Civ. P. 34                                                                                                                          10

N.D. Cal. Civil L.R. 7-2                                                                                                                    10

N.D. Cal. Civil L.R. 7-8                                                                                                                    10

-iii-

**Treatises**

William W. Schwarzer et al., *Federal Civil Procedure Before Trial*, § 11:877 (2008) ......... 12

## I. INTRODUCTORY STATEMENT

Riverbed has failed to establish that it would be prejudiced by amendment of Quantum's Preliminary Invalidity Contentions. Quantum served its proposed amendments a full month before the Joint Claim Construction and Prehearing Statement was due, a month-and-a-half before the opening of briefing on claim construction, and approximately seven months before discovery is set to close in this action. On this ground alone, Quantum's motion for leave to amend its Preliminary Invalidity Contentions should be granted.

Furthermore, Quantum acted with due diligence. It is undisputed that Quantum did not learn of a new reference (the "Venti article") until late February, 2008. That discovery led Quantum to a newly-discovered patent (the "'645 patent"). Quantum then developed, vetted, and finalized additional invalidity theories and actual contentions and claim charts based on the newly-discovered '645 patent, all of which flowed from the newly-discovered Venti article. Quantum then served its proposed Amended Invalidity Contentions on Riverbed on April 18, 2008, less than two months after learning of the Venti article and the accompanying new basis for additional invalidity arguments. Quantum's diligence provides it with good cause to amend.

It is also notable that, in the midst of this briefing, Riverbed asked Quantum for permission to amend Riverbed's Preliminary Invalidity Contentions regarding Quantum's '810 patent based on a new article it encountered during discovery. Because Quantum did not wish to burden the Court with additional motion practice, Quantum took the reasonable course and allowed Riverbed to amend. Quantum simultaneously renewed its request to Riverbed for a reciprocal agreement allowing Quantum to serve Quantum's Proposed First Amended Invalidity Contentions regarding Riverbed's '249 patent. Riverbed again refused, despite the very similar postures of the parties' requests to amend. But Riverbed's own behavior in requesting leave to amend based on a new article it found through discovery is tellingly indicative of how appropriate Quantum's similar request in this motion is.

## II. FACTUAL EVIDENCE OF QUANTUM'S DILIGENCE

Riverbed wrongly asserts that Quantum's "only evidence" of diligence in preparing amended invalidity contentions is set forth in Mr. Heisey's declaration. (Riverbed's Oppo.

-1-

1  [Docket No. 158] at 4:1-2.)  Quantum's evidence also consists of the deposition testimony of its
2  expert, Dr. Mazieres[1], and its outside counsel, Mr. Heisey, which Riverbed itself developed.  The
3  documents attached to Riverbed's declaration, including but not limited to the deposition
4  transcripts, fill in the details, support Mr. Heisey's declaration, and further demonstrate
5  Quantum's diligence.

6          Well before its Preliminary Invalidity Contentions were due on January 31, 2008,
7  Quantum's counsel developed a detailed list of potential experts by researching institutions of
8  higher learning with respect to engineering and computer science, and then identifying tenured
9  professors with Ph.D. degrees at select institutions.  (Heisey Depo. [Ex. H to Suppl. Briggs Decl.,
10 Docket No. 159] at 14:5-6, 14:20-15:3, 17:3-6.)  Counsel then analyzed the strengths of those
11 experts with regard to the technology at issue.  (*Id.* at 14:5-8.)  Quantum's initial list contained
12 approximately one hundred experts, and counsel contacted every expert on that list.  (*Id.* at 14:12-
13 15, 15:23-16:1.)  Counsel then traveled throughout the country interviewing a subset of those
14 experts in person.  (*Id.* at 14:5-10, 18:5-23.)  Counsel finally decided on Dr. Mazieres, who is one
15 of the foremost experts in the world on the '249 patent technology.  (Heisey Decl. [Docket No.
16 125] at ¶ 2; Mazieres Depo. [Ex. G to Suppl. Briggs Decl., Docket No. 159] at 46:8-23.)

17         Counsel for Quantum attempted to meet with Dr. Mazieres in person on January
18 10, 2008, which was three weeks before Quantum's original Preliminary Invalidity Contentions
19 were due on January 31.  (*See* Suppl. Briggs Decl. [Docket No. 159], Ex. K.)  However, Dr.
20 Mazieres responded that he was ill, and was thus unavailable at that time.[2]  (*Id.*)  Dr. Mazieres

---

[1] Riverbed's criticism that Quantum did not provide a declaration from Dr. Mazieres (Riverbed's Oppo. [Docket No. 158] at 4, n.5) is moot, as Dr. Mazieres provided sworn deposition testimony.

[2] Incredibly, Riverbed criticizes the fact that Dr. Mazieres did not see a doctor and continued lecturing at Stanford University.  Riverbed omits Dr. Mazieres's testimony that he "felt very, very sick," and that "[a]ll I could think about was how cold I was because I was running a very high fever." (Mazieres Depo. [Exhibit G to Suppl. Briggs Decl., Docket No. 159] at 12:12-14.)  Dr. Mazieres further testified that "unless [I was] dying or you physically can't make it to class, I wouldn't miss a lecture…[T]he consequences to…60 or 70 students if you miss a lecture are really high." (*Id.* at 12:21-13:5).  Further, Riverbed wrongly represents that, "Dr. Mazieres even expressed his willingness to meet with Quantum's counsel during the time he was sick." (Riverbed's Oppo. [Docket No. 158] at 5:21-22.)  Actually, Dr. Mazieres refused to meet on the date requested by Quantum's

1  testified at his deposition that he had to "make up" time in the "long run" due to his illness
2  (Mazieres Depo. [Ex. G to Suppl. Briggs Decl., Docket No. 159] at 15:11-16), and that he was
3  "sure the symptoms" lasted "over a longer period of time" than a week (12:17-18).

4         Quantum engaged Dr. Mazieres on February 13, 2008.  (Suppl. Briggs Decl.
5  [Docket No. 159] at Ex. J).  Dr. Mazieres actually forwarded a copy of a new prior art reference he
6  introduced to Quantum's counsel (the "Venti article") via e-mail on February 25, 2008, which was
7  on or about the same date he first informed Quantum's counsel of the Venti article during
8  discussions between them.[3]  (Flores Decl., Ex. G; Heisey Depo. [Ex. H to Suppl. Briggs Decl.,
9  Docket No. 159] at 12:7-24.)  It was this Venti article that caused Quantum's counsel to run a
10 search for patents by the same authors, which led Quantum's counsel to a new patent (the "the '645
11 patent"), which is the basis for Quantum's Proposed Amended Invalidity Contentions.  (Mazieres
12 Depo. [Exhibit G to Suppl. Briggs Decl., Docket No. 159] at 35:10-17 and 42:1-43:4; Heisey
13 Depo. [Ex. H to Suppl. Briggs Decl., Docket No. 159] at 12:5-13:16.)  It was through this process
14 and at this time that Quantum's counsel began developing new invalidity theories as the direct
15 result of insights from Dr. Mazieres regarding the new Venti article, and Dr. Mazieres's related
16 observations that Riverbed's '249 patent is invalid based on obviousness.  (Heisey Decl. [Docket
17 No. 125] at ¶ 3; Mazieres Depo. [Exhibit G to Suppl. Briggs Decl., Docket No. 159] at 36:3-14
18 and 49:3-50:11; Heisey Depo. [Ex. H to Suppl. Briggs Decl., Docket No. 159] at 28:7-15.)

19         Demonstrating further diligence, Mr. Heisey testified he participated in "at least"
20 "four or five" phone calls with Dr. Mazieres aimed at revising Quantum's Preliminary Invalidity
21 Contentions, some of which "were quite long."  (Heisey Depo. [Ex. H to Suppl. Briggs Decl.,
22 Docket No. 159] at 36:16-20 and 37:22-24).[4]  These calls were in addition to other prior contacts,

---

counsel because he was sick, and only offered to try to meet in the "future."  (Suppl Briggs Decl. [Docket No. 159], Ex. K (emphasis added).)

[3] Quantum produced this e-mail and the Venti article attached to it to Riverbed prior to the deposition of Dr. Mazieres, but Riverbed has chosen not to bring it to the Court's attention.

[4] Riverbed claims that Quantum "found only limited use" of Dr. Mazieries's expertise, and did not discuss infringement issues during phone calls with him, but only discussed the technology.  (*See* Riverbed's Oppo. [Docket No. 158] at 6 n.7.)  Riverbed strategically ignores Dr. Mazieres's testimony that he was "given information on a need-to-know basis.

-3-

1 such as an initial meeting that lasted about five to seven hours.  (Mazieres Depo. [Exhibit G to

2 Suppl. Briggs Decl., Docket No. 159] at 34:3-24.)  Mr. Heisey further testified that he went

3 through multiple iterations of the Proposed Amended Invalidity Contentions with Quantum

4 technical employees, making additional revisions, and then discussing them with Dr. Mazieres.

5 (Heisey Depo. [Ex. H to Suppl. Briggs Decl., Docket No. 159] at 34:6-16 and 38:4-10; *see also*

6 Heisey Decl. [Docket No. 125 at ¶ 4.)

7 Quantum then provided its Proposed Amended Invalidity Contentions to Riverbed

8 on April 18, 2008, a month <u>before</u> the Joint Claim Construction and Prehearing Statement was due

9 on May 15, nearly a month-and-a-half before opening claim construction briefs were due on May

10 29, and nearly seven months before discovery is due to close in this action on November 7.  (*See*

11 Bruno Decl. [Docket No. 124], Ex. B; Docket No. 92.)

12 **III.    ARGUMENT**

13      **A.    Riverbed Has Failed to Make the Required "Particularized Showing" of**
14           **Prejudice.**

15 Riverbed does not dispute that it bears the burden of making "a particularized

16 showing of prejudice."  *See Lexar Media, Inc. v. Pretex Elecs. Corp.*, No. C 00-04770, 2007 U.S.

17 Dist. LEXIS 32825, at *3 (N.D. Cal., Apr. 18, 2007); *see also generally* Riverbed's Oppo.

18 [Docket No. 158].  Riverbed has failed to carry its burden.

19 Riverbed's half-hearted attempt at showing prejudice is limited to one footnote in

20 its Opposition brief.  (Riverbed's Oppo. [Docket No. 158] at 3 n.4.)  In that footnote, Riverbed

21 asserts that it "did not frame its constructions of terms in the '249 patent based on Quantum's new

22 invalidity theories because Quantum did not pursue its new theories and clearly did not have 'good

23 cause' to amend."  (*Id*.)  Riverbed ignores the fact that Quantum pursued amendment and provided

24 Riverbed with Quantum's Proposed Amended Invalidity Contentions on April 18, 2008 a full

25

---

26   So it's possible that they were working on the invalidity contentions but didn't tell me
     that."  (Mazieres Depo. [Exhibit G to Suppl. Briggs Decl., Docket No. 159] at 51:11-14.)
27   Dr. Mazieres further testified that he saw at least one draft of the Proposed Amended
     Invalidity Contentions.  (*Id.* at 50:16-24.)

28

-4-

month prior to the May 15 deadline for the Joint Claim Construction and Prehearing Statement, a month-and-a-half prior to the deadline for opening claim construction briefs, and seven months prior to the current close of discovery in this case.  (*See* Suppl. Briggs Decl. [Docket No. 159], Ex. B; Docket No. 92.)  So Riverbed is feigning ignorance.  Riverbed had ample time to investigate Quantum's new invalidity contentions through discovery prior to claim construction.

Tellingly, Riverbed does not assert it will need to change any of its proposed claim constructions.  Riverbed has failed to make any showing, let alone a *particularized* showing, of prejudice.  *See Lexar Media*, 2007 U.S. Dist. LEXIS 32825, at *3; *Yodlee, Inc. v. Cashedge, Inc.*, No. C 05-01550, 2007 U.S. Dist. LEXIS 39564 at **6-7 (N.D. Cal., May 17, 2007) (granting motion to amend final invalidity contentions where "most importantly, [defendant] will not be substantially prejudiced by the proposed amendment" in part because, as here, there was ample time left to conduct discovery).

Further, even if the Court were to find that Riverbed will be prejudiced in some tangential way, Riverbed caused that prejudice by sticking its head in the sand and ignoring Quantum's Proposed Amended Invalidity Contentions prior to claim construction briefing.  *See General Atomics v. Axis-Shield ASA*, No. C 05-04074, 2006 U.S. Dist. LEXIS 58939 at **6-7 (N.D. Cal., Aug. 9, 2006).  And Riverbed still has ample time to conduct discovery on Quantum's new invalidity theories if it wishes prior to the November 7, 2008 deadline for discovery in this action.  (*See* Docket No. 92.)

**B.     Quantum Has Exceeded the Diligence Requirement.**

Even apart from the lack of prejudice to Riverbed, Quantum should be granted leave to amend because the diligence it showed in seeking to amend is sufficient to meet the "good cause" requirement of Patent L.R. 3-7.

Riverbed apparently does not dispute that:  (1) in evaluating diligence, Northern District courts look primarily to the date the movant provided the opposing party with notice of the proposed amendments, rather than the date the proposing party formally moved to amend; and (2) such courts have found that good cause existed for amendment even where the movant was *not* subsequently diligent in pursuing the matter with the court.  *Bd. of Trustees of Stanford v. Roche*

-5-

1  *Molecular Sys., Inc.*, No. C 05-04158, 2008 U.S. Dist. LEXIS 16556, at *9 (N.D. Cal., Mar. 4,
2  2008) ("[N]otice allowed defendant to argue real-time PCR issues during claim construction…this
3  court has held that notice can be sufficient for good cause."); *Lexar,* 2007 U.S. Dist. LEXIS
4  32825, at **2-3; *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C 03-1431, 2006
5  U.S. Dist. LEXIS 90856, at **21-22 (N.D. Cal., May 15, 2006); *IXYS Corp. v. Adv. Power Tech.,*
6  *Inc.*, No. C 02-03942, 2004 U.S. Dist. LEXIS 10934, at **3-4 (N.D. Cal., June 16, 2004).

7    In any event, as demonstrated by the factual timeline above, Quantum's Proposed Amended Invalidity Contentions were presented to Riverbed less than two months after Quantum learned of the basis for amendment as a result of its consultation with Dr. Mazieres, which is well within the typical timeline of diligence sufficient to meet the "good cause" standard, as demonstrated by the numerous cases previously cited by Quantum.  (*See* Quantum's Moving Brief [Docket No. 123] at 5:1-9:8.)  Quantum should be allowed to amend because it has been more than diligent and has good cause to amend.

   Riverbed's argument that Quantum has not diligently sought to amend further fails because it relies on two faulty propositions:  (1) a party must absolutely fully consult with a technical expert regarding its preliminary contentions prior to serving them, or be barred from later amending based on information imparted from an expert; and (2) Quantum, without interruption, spent fifteen full months analyzing the validity of the '249 patent, and was required to discover and finalize all its invalidity-related theories and references that it would assert in this litigation during that time.

### 1. Quantum Was Not Required to Consult with a Technical Expert Prior to Serving Its Preliminary Invalidity Contentions.

   Riverbed asserts that "defendants must be diligent in selecting and retaining their experts … *in advance of their invalidity contentions*."  (Riverbed's Oppo. [Docket No. 158] at 12-15 (emphasis added).)  There is no such requirement.

   The two cases upon which Riverbed relies do not stand for such a proposition. This requirement is nowhere to be found in *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467

-6-

F.3d 1355 (Fed. Cir. 2006).[5] The other case, *Perf. Aftermarket Parts Group*, is inapposite. There, the court denied Performance leave to amend its **Final** Invalidity Contentions where (1) Performance asked its expert to conduct a full-blown prior art search over two months *after the court issued its claim construction ruling*, and a year after the case was filed; (2) the additional references "were clearly available … early" in the litigation based on the patent history; (3) Performance failed to explain why it did not obtain other publicly-available documents "except to argue that it would have been more expensive and that it was [defendant's] responsibility to produce the documents." *See Perf. Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys., Inc.*, No. H-05-4251, 2007 WL 836904 at **1-2 (S.D. Tex., March 15, 2007).

In contrast to *Perf. Aftermarket Parts Group* here, Quantum worked diligently to interview potential experts and to ultimately engage Dr. Mazieres, and provided Riverbed with Proposed Amended Invalidity Contentions based on the new theories it learned through its consultation with Dr. Mazieres a month <u>before</u> the Joint Claim Construction and Prehearing Statement was due and nearly a month-and-a-half before opening claim construction briefs were due. (*See* Bruno Decl. [Docket No. 124], Ex. B; Docket No. 92.)

Moreover, contrary to Riverbed's assertion, it would be bad policy for the Court to deny leave to amend based on information imparted by an expert simply because a party was unable to retain and fully consult with a patent technology expert prior to filing its original preliminary invalidity contentions. Riverbed ignores the fact that courts consider the amount of time that passed between service of the original contentions and notice of the proposed amendments, as well as the posture of the case. *See e.g. Bd. of Trustees of Stanford*, 2008 U.S. Dist. LEXIS 16556, at *9; *Lexar,* 2007 U.S. Dist. LEXIS 32825, at **2-3; *Fresenius*, 2006 U.S. Dist. LEXIS 90856, at **21-22; *IXYS Corp.*, 2004 U.S. Dist. LEXIS 10934, at **3-4.

---

[5] It is telling that Riverbed does not provide a pin cite or a parenthetical explanation. Also frustratingly, Riverbed violated Civil L.R. 7-4(a)(2) by failing to provide a table of authorities with its Reply Brief [Docket No. 159].

## 2. Quantum's Pre-Litigation Analysis of Riverbed's '249 Patent Shows Extra Diligence and Supports Granting Quantum Leave to Amend.

Riverbed assumes, based on its review of Quantum's privilege logs, that Quantum conducted a full fifteen-month-long uninterrupted analysis of the validity of Riverbed's '249 patent. Riverbed then invents the conclusion Quantum should be barred from amending its Preliminary Invalidity Contentions based on further analysis Quantum conducted with the help of its expert after this action was filed against it. Riverbed's constructs are contrary to rulings in this District. *See General Atomics*, 2006 U.S. Dist. LEXIS 58939 at **4-5 (granting leave to amend preliminary infringement contentions where notice of intent to amend was given three months after original contentions and patentee "did not conceive of the infringement theory it [sought] to add until the parties exchanged preliminary claim construction statements"); *Tessera, Inc. v. Adv. Micro Devices, Inc.*, No. C 05-4063, 2007 U.S. Dist. LEXIS 35957 at **5-9 (granting leave to amend preliminary invalidity contentions where movant asserted that the materiality of two references had not previously been evident, even though the "case [wa]s not near the outset").

In truth, Quantum's examination of Riverbed's '249 patent fifteen months prior to the due date of its Preliminary Invalidity Contentions in this action demonstrates its diligence. Riverbed asks the Court to punish parties like Quantum that take the legal rights of their competitors seriously.

Furthermore, Riverbed wrongly asserts that Quantum chose the timing of the litigation regarding the '249 patent. The '249 patent was not asserted against Quantum until Riverbed filed its counterclaim for infringement of the '249 patent on November 13, 2007. (Docket No. 20.) So November 13, 2007 was the first date Quantum knew it would need to prepare actual invalidity contentions in a federal lawsuit. Quantum had only two-and-half-months from that date to focus on preparing its invalidity contentions (due on January 31, 2008, *see* Docket No. 28), while navigating the holidays and addressing Riverbed's gamesmanship with its motion to dismiss Quantum's '810 patent (*see* Docket No. 35), as well as conducting a national search for potential experts on the '249 patent technology as described above. (Heisey Depo. [Ex. H to Suppl. Briggs Decl., Docket No. 159] at 14:5-15, 14:20-15:3, 15:23-16:1, 17:3-6, and 18:5-

-8-

23.) It is reasonable that Quantum was not able to consult an expert prior to serving its Preliminary Invalidity Contentions on January 31, 2008, that it was able to engage Dr. Mazieres on February 13, and that after consulting with him, Quantum worked as diligently as possible to prepare its Proposed Amended Invalidity Contentions and provide them to Riverbed on April 18 based on the new reference and insights shared by Dr. Mazieres.

Finally, Riverbed points out that "courts have also considered the difficulty encountered by the movant in discovering the new theories and prior art." (Riverbed's Oppo. [Docket No. 158] at 8:15-16.) That assessment is true, and supports granting leave here. It is undisputed that neither Quantum's, or any of its counsels' previous analyses of the '249 patent uncovered the Venti article or the '645 patent to which the Venti article led (and which is the basis of Quantum's Proposed Amended Invalidity Contentions) without the help of Dr. Mazieres, despite having studied the '249 patent for fifteen months and identified other references and theories. This fact is further evidence that it was very difficult to discover the new Venti article and related prior art and theories, and that good cause to amend exists. *See Yodlee*, 2007 U.S. Dist. LEXIS 39564 at **6-7; *Alt v. Medtronic, Inc.*, No. 2:04-CV-370, 2006 U.S. Dist. LEXIS 4435 at **9-12 (E.D. Tex., Feb. 1, 2006).

### C.    Riverbed Has Failed to Distinguish Quantum's Cases.

Riverbed's sole attempt at distinguishing *Tessera*, *Bd. of Trustees*, *Fresenius*, and *Lexar Media* is to point out that they "involve findings of little or no prejudice to the opposing party." (Riverbed's Oppo. [Docket No. 158] at 7:17-8:3.) However, as explained above, Riverbed will not be prejudiced, or if it will, Riverbed caused its own prejudice. In effect, Riverbed has reinforced that these cases support Quantum's position. *See Tessera*, 2007 U.S. Dist. LEXIS 35957 at **5-6, 8 (granting leave to amend where defendant sought to amend approximately seven months after serving original contentions, did not formally move to amend for another month, and explained it had not previously located various references or their materiality had not been evident); *Bd. of Trustees*, 2008 U.S. Dist. LEXIS 16556 at **10-11 (granting leave to amend where five months passed between the time plaintiff provided notice of its new contentions to defendant and the time it moved to amend (much longer than the time here) because plaintiff had

-9-

1  moved quickly to serve amended contentions on defendant (as here), and distinguishing a case
2  premised not only on a three-month delay, but on the fact that movants' only explanation was that
3  they erred); *Fresenius*, 2006 U.S. Dist. LEXIS 90856, at **21-22 (denying patentee's motion to
4  strike accused infringer's anticipation defense even though it was "not apparent" why the accused
5  infringer did not formally request leave of court during discovery period to amend its final
6  invalidity contentions); *Lexar Media*, 2007 U.S. Dist. LEXIS 32825 at **2-3 (granting leave to
7  amend invalidity contentions based on good cause even where the invalidity defense was raised
8  for the first time in claim construction briefing, because to do otherwise "would elevate form over
9  substance, particularly where there has been no particularized showing of prejudice by Plaintiff.")

10  As to the various other cases cited by Quantum, Riverbed simply pointed out
11  differences in facts without explaining how those differences negate the propositions for which
12  Quantum cited the cases. And in fact, they do not.

13  Finally, as explained above, the fact that courts may consider the difficulty
14  encountered in discovering new theories and prior art <u>supports</u> rather than refutes granting leave.
15  *See Yodlee*, 2007 U.S. Dist. LEXIS 39564 at **6-7; *Alt*, 2006 U.S. Dist. LEXIS 4435 at **9-12.

### IV. RIVERBED'S IMPROPER REQUEST FOR SANCTIONS VIOLATES THE CIVIL LOCAL RULES AND IS MERITLESS

18  Northern District Local Rule 7-8 provides that "[a]ny motion for sanctions,
19  regardless of the sources of authority invoked, … must be separately filed and the date for the
20  hearing must be set in conformance with Civil L.R. 7-2," and "the form of the motion must
21  comply with Civil L.R. 7-2." Civil L.R. 7-8. Riverbed did not separately file a motion in
22  conformance with Local Rule 7-2. Nor did Riverbed bother citing any authority for granting
23  sanctions. Riverbed's improper request must be denied on this basis alone.

24  Additionally, Quantum conducted discovery properly. The "document requests"
25  re-printed in Riverbed's Opposition (Docket No. 158 at 10:13-26, *see also* Suppl. Briggs Decl.
26  [Docket No. 159], Ex. L) were nothing more than informal letter requests that did not comply with
27  Federal Rule of Civil Procedure 34. These letter requests went far beyond Riverbed's formal
28  discovery requests and sought privileged/work product information. (*See e.g.* Suppl. Briggs Decl.

-10-

1  [Docket No. 159], Ex. L ("5. All documents and communications supporting Mr. Heisey's
2  assertion that there were 'multiple drafts' of Quantum's proposed amended invalidity contentions
3  and there was 'close and frequent interaction with Dr. Mazieres and Quantum employees.'").)
4  Nevertheless, Quantum took Riverbed's informal requests seriously.  Quantum collected all
5  communications between Dr. Mazieres and Quantum's outside counsel when counsel met with Dr.
6  Mazieres the day before his deposition.  (Mazieres Depo. [Exhibit G to Suppl. Briggs Decl.,
7  Docket No. 159] at 9:5-11 and 17:5-18.)  That same day, Quantum then produced the documents
8  that fell within the reasonable scope of the five specific requests in Riverbed's letter, which was
9  the best indication Quantum had of what Riverbed truly wanted to obtain as discovery in
10 connection with the deposition of Dr. Mazieres.  (*See* Suppl. Briggs Decl. [Docket No. 159], Ex. O
11 at Docket No. 159-10 page 3 of 19.)  Quantum took a reasonably focused view of the documents
12 Riverbed was requesting, particularly in light of Riverbed's recent motion to compel arguing over-
13 production by Quantum.  (*See generally* Docket Nos. 118, 150.)
14         As to the additional prior catch-all requests for production to which Riverbed
15 referred Quantum, again, Quantum took a reasonably circumspect view of what Riverbed was
16 asking Quantum to provide, believing that the prior catch-all requests were more of the same
17 universal safety-net type requests debated in connection with Riverbed's motion to compel, and
18 that by responding to Riverbed's focused letter requests, Quantum was complying with Riverbed's
19 expectations.  Quantum produced the documents it reasonably believed were within the scope of
20 what Riverbed considered relevant prior to the deposition of Dr. Mazieres.  (*See* Suppl. Briggs
21 Decl. [Docket No. 159], Ex. O at Docket No. 159-10 page 3 of 19.)
22         It was only at the very end of Dr. Mazieres' deposition that Riverbed's counsel
23 expressed dismay at having not received additional communications Dr. Mazieres had testified he
24 gave to counsel.  (Mazieres Depo. [Exhibit G to Suppl. Briggs Decl., Docket No. 159] at 55:2-
25 56:5.)  Quantum's counsel stated that Quantum believed it had produced everything Riverbed had
26 requested, but nevertheless, agreed to immediately confer with Riverbed's counsel on the issue.
27 (*See id.*)  After getting clarification from Riverbed that, in this instance, Riverbed wanted
28 Quantum to produce everything regardless of tangential relevance to the issues for which Riverbed

-11-

1  was deposing Dr. Mazieres, Quantum's counsel retrieved the rest of the documents Dr. Mazieres
2  had collected, consisting of short scheduling and transmittal e-mails and administrative-related e-
3  mails. (*See* Flores Decl., Ex. H.) But when Quantum's counsel returned to present the documents
4  to Riverbed's counsel so Riverbed could review them and continue the deposition if it wished,
5  Riverbed's counsel had left the building. (*See id.*) Quantum's counsel immediately e-mailed
6  Riverbed's counsel and explained he had brought all the additional administrative-type documents
7  to produce them. (*See id.*) Riverbed's counsel replied he had a meeting that afternoon and had
8  left. (*See id.*) In good faith, Quantum's counsel then produced all of the remaining non-privileged
9  documents that same day via e-mail, and provided a privilege log the next day for the few
10 documents withheld on privilege grounds. (*See* Suppl. Briggs Decl. [Docket No. 159], Ex. O.)

11           Quantum acted reasonably. Riverbed's cavalier request for sanctions is
12 unsupported by any legal authority and is a red herring. Tellingly, Riverbed did not attempt to
13 introduce any of the additional documents at the deposition of David Heisey regarding the same
14 issues, which deposition occurred three days after the additional documents from Dr. Mazieres
15 were produced. (*See id.*; *see also generally* Heisey Depo. [Ex. H to Suppl. Briggs Decl., Docket
16 No. 159].) That fact demonstrates Quantum had accurately produced the relevant documents in
17 the first place. Also, it was made clear at the deposition of Mr. Heisey that there was no need for
18 Mr. Heisey to have searched for or produced any other responsive documents because they had all
19 been produced by Dr. Mazieres. (Heisey Depo. [Ex. H to Suppl. Briggs Decl., Docket No. 159] at
20 36:2-13.) There is no reason to contemplate sanctions against Quantum.

21           Moreover, Mr. Heisey's refusal to answer certain questions was appropriate
22 because Riverbed made improper inquiries asking various questions seeking privileged and/or
23 work product information beyond the scope of the issues at stake in this motion. *See* Fed. R. Civ.
24 P. 26(b)(3); William W. Schwarzer et al., *Federal Civil Procedure Before Trial*, § 11:877 (2008)
25 ("seeking the identity of witnesses who have been interviewed by opposing counsel or attempting
26 to obtain the attorney's notes of such interviews would involve protected work product" (citing
27 *Upjohn Co. v. U.S.*, 449 U.S. 383, 399 (1981) and *Baker v. Gen'l Motors Corp.*, 209 F.3d 1051,
28 1054 (8th Cir. 2000)). Such questions included but were not limited to the following:

-12-

1  - "Do you know the names of the experts that [Quantum's counsel] met with? (Heisey Depo. [Ex. H to Suppl. Briggs Decl., Docket No. 159] at 19:9-10.)
- So who are the experts or professors that you spoke with about Dr. Mazieres?  (*Id.* at 21:23-24.)
- Did you ask any other experts – did you or anybody else at Sheppard Mullin ask any of the – any experts to review Quantum's invalidity contentions before they were served on January 31, 2008?  (*Id.* at 27:9-12.)
- Who did you talk to at Quantum?  (*Id.* at 34:18.)

Riverbed's request for sanctions is meritless.

## V. CONCLUSION

Riverbed has not made any showing of prejudice it would suffer if Quantum is allowed to amend, much less the required "particularized showing."  Furthermore, Quantum invested more than the requisite diligence necessary to demonstrate good cause for leave to amend its Preliminary Invalidity Contentions in this action.  Quantum's discovery-related conduct in connection with this motion was reasonable and forthright, and Riverbed has no legal or factual grounds for sanctions.

Quantum respectfully requests the Court grant it leave to formally serve its First Amended Preliminary Invalidity Contentions.

Dated:  July 10, 2008

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By    /s/ Nathaniel Bruno
AMAR L. THAKUR
MAURICIO A. FLORES
NATHANIEL BRUNO

Attorneys for QUANTUM CORPORATION

-13-

W02-WEST:\400926337.3
Case No. C 07-04161 WHA

QUANTUM CORPORATION'S REPLY IN SUPPORT OF ITS MOTION TO AMEND ITS PRELIMINARY INVALIDITY CONTENTIONS