QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  Todd M. Briggs (Bar No. 209282)
  toddbriggs@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Attorneys for RIVERBED TECHNOLOGY, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| RIVERBED TECHNOLOGY, INC., a Delaware corporation<br><br>            Counterclaimant,<br><br>     vs.<br><br>QUANTUM CORPORATION, a Delaware corporation,<br><br>            Counterdefendant.<br><br>QUANTUM CORPORATION, a Delaware corporation,<br><br>            Counterclaimant,<br>     vs.<br><br>RIVERBED TECHNOLOGY, INC., a Delaware corporation,<br><br>            Counterdefendant. | CASE NO. C 07-04161 WHA<br><br>Honorable William H. Alsup<br><br>**RIVERBED'S STATEMENT IN RESPONSE TO QUANTUM'S NEW ARGUMENT AND CLARIFICATION RE JULY 23, 2008 CLAIM CONSTRUCTION HEARING** |

Riverbed Technology, Inc. ("Riverbed") respectfully submits this Statement in Response to Quantum's New Argument and Clarification regarding the claim construction hearing held on July 23, 2008. During the hearing, the parties focused argument on the terms "reference label" from Riverbed's U.S. Patent No. 7,116,249 ("'249 patent") and "predetermined constraint" from Quantum's U.S. Patent No. 5,990,810 ("'810 patent").

<u>Reference Label</u>: Quantum argued for the first time during the claim construction hearing that the specification of Riverbed's U.S. Patent No. 7,120,666 ("'666 patent") is "overturned or overruled" by the specification of the '249 patent with respect to the term "reference label" even though the '666 specification is expressly incorporated by reference into the '249 patent. (Hearing Tr. 43:4-7.)[1] Advancing this argument for the first time during argument is improper, and Riverbed respectfully requests the opportunity to respond. *See, e.g., Pieczenik v. Dyax Corp.*, 265 F.3d 1329, 1332-33 (Fed. Cir. 2001) (finding it improper to raise arguments for the first time at oral argument).

Under well-settled Federal Circuit law, it would be improper for the Court to disregard the '666 specification and its express teaching that hashes can be used as segment references/reference labels. *See Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1375-78 (Fed. Cir. 2006). In *Cook*, one patent (the '508 patent) contained a definition of the claim at issue in a different patent (the '389 patent). The '508 patent was incorporated by reference into the '389 patent, yet the district court ignored the '508 definition and based its construction of a claim term in the '389 patent on the specification of that patent. The Federal Circuit reversed, holding that the definitional language in the '508 patent was expressly incorporated by reference into the '389 patent and dispositive. *Id*.

Here, as in *Cook*, it would be error to disregard the definitional language in the '666 patent that is explicitly incorporated by reference into the '249 patent and explicitly states that hashes can constitute segment references/reference labels. Furthermore, the fact that the word "unique" might

---

[1] Excerpts to the July 23, 2008 hearing transcript are attached as Exhibit 1 to the Declaration of Todd M. Briggs filed herewith.

to some mean "perfectly unique" is not relevant because the inventor makes clear – in the specification of the '666 patent – that in rare cases the same "unique" reference label can refer to two different segments having different data.[2]  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (stating that "our cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor's lexicography governs.").

<u>Predetermined Constraint</u>:  With respect to "predetermined constraint," Riverbed is concerned that it may have inadvertently left the Court with the wrong impression that Riverbed's position is that claim 4 does not include all of the limitations of independent claim 1.  (Tr. 23:22-24:11.)  Riverbed apologizes for any confusion.  This is not Riverbed's position, and Riverbed acknowledges that claim 4 does include all of the limitations of independent claim 1.  Claims 1 and 4 state:

> 1. A method for organizing a block b of digital data for storage, communication, or comparison, comprising the step of:
>
> partitioning said block b into a plurality of subblocks at at least one position $k \mid k+1$ within said block,
>
> **for which b[k-A+1 . . . k+B] satisfies a predetermined constraint**, and
>
> wherein A and B are natural numbers.
>
> 4. The method of claim 1, **wherein at least one bound is imposed on the size of at least one of said plurality of subblocks**.

Claim 1 and claim 4 describe two separate and distinct ways to create a partition or boundary in a block of data.  Claim 1 is directed to a method for partitioning a block of data when the window of data b[k-A+1 . . . k+B] (*i.e.*, a window of data of length A + B) satisfies a "predetermined constraint."  In other words, *only* the data in the window can be considered by the predetermined constraint to create a partition or cut.

---

[2]  *See* '666 Patent, Col. 14:34-62.

1  In contrast, claim 4 is directed to a separate and distinct technique for creating an artificial "bound" on the size of a subblock *over and above* the partition or cut resulting from the predetermined constraint evaluation. This is described in the section of the '810 specification that discusses how to impose "artificial" lower or upper bounds on subblock size. ('810 Patent, Col. 14:52 - Col. 15:20.) The differences between the two distinct concepts are illustrated by the following examples:

*Example – Imposition of a Lower Bound*: In some cases, the sliding window of data of length A + B may satisfy the predetermined constraint too soon creating an undesirably small segment. In this case, the result of the predetermined constraint evaluation is superseded by the imposition of an artificial lower bound. Here, the size of the resulting segment imposed by the artificial lower bound will be longer than the size of the segment that would have been created by the predetermined constraint evaluation.

*Example – Imposition of an Upper Bound*: In other cases, the sliding window of data of length A + B may not satisfy the predetermined constraint until the window has shifted far into the block of data and therefore creates an undesirably large segment. In this case, the result of the predetermined constraint evaluation is superseded by the imposition an artificial upper bound. The size of the segment resulting from the artificial upper bound in this case will be shorter than the size of the segment that would have been created by the predetermined constraint evaluation.

Riverbed's proposed construction for "predetermined constraint" is entirely consistent with claims 1 and 4 and the specification. Riverbed's construction for "predetermined constraint" states in part that "[o]nly the bytes in the window of length A + B can affect the decision of whether a boundary should be placed at a position k│k+1." Riverbed's construction is directed only to the technique for creating a partition/boundary based on the "predetermined constraint." This construction is entirely consistent with and does not alter in any way the fact that an artificial partition/boundary can also be imposed on the size of a subblock without regard to the predetermined constraint evaluation as described in claim 4 and the specification.

Quantum, on the other hand, argues that data outside of the window of length A + B can be used when determining whether the predetermined constraint is satisfied. To reach this

conclusion, Quantum first argues that claim 1 does not require partitioning the input block at all when the predetermined constraint is "satisfied." (Hearing Tr. at 6:11-16.) This is contrary to the plain claim language, which requires "partitioning" (*i.e.* placing a cut) based only on the window of length A +B when the predetermined constraint is satisfied. (*See also* Riverbed's Opp. Br. at 13.) Quantum then argues that claim 4 and the portion of the specification discussing "artificial" bounds makes clear that "satisfying the predetermined constraint" may include considerations of data outside the window of length A + B. (Hearing Tr. 11:2-12:18.) Specifically, Quantum argues that the artificial "bound" on segment size claimed in claim 4 is data that is not within the window, and therefore is data outside the window of length A + B that can be considered when making a partition (or cut) based on the predetermined constraint. This is wrong. As explained above, claim 4 adds an additional limit of an artificial "bound" (*i.e.*, cut) when the data in the window that has otherwise satisfied the predetermined constraint yields an undesirable segment length (too long or too short). The determination of whether an artificial bound should be imposed is an entirely different process that is separate and distinct from the process of determining whether the window of length A + B "satisfies a predetermined constraint."

DATED: July 30, 2008                    Respectfully submitted,

                                        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


                                        By /s/ Claude M. Stern
                                           Claude M. Stern
                                           Attorneys RIVERBED TECHNOLOGY, INC.